# Exhibit A



# Case Information

## X Corp., Successor in Interest to Twitter, Inc vs. Mark Schobinger

23-1074-C395

🔄 Refresh    📁🔒    👁🔒    🖨    ⤴    | File Into |

| Location | Case Category | Case Type | Case Filed Date |
|---|---|---|---|
| Williamson County - District Clerk ⇄ | Civil - Contract | Debt/Contract - Other | 7/6/2023 |

| Judge | Case Status |
|---|---|
| Larson, Ryan D. ▾ | Closed (Disposed) |

## Parties ②

| Type | Name | Nickname/Alias | Attorneys |
|---|---|---|---|
| Plaintiff | X CORP., Successor In Interest To Twitter, Inc ▾ | | Stefanie R. Moll ▾ |
| Defendant | Mark Schobinger ▾ | | Drew N Herrmann ▾ |

## Hearings ⓪

No hearings found.

## Events ⑤

| Oldest | Search events | 🔍 | ❓ |

Select/Deselect All ☐          ☁ Download Selected

### Proposed Order
Temporary Restraining Order-EV# 77280820**Sent to que**

File Date
7/6/2023

⤴

| Name | Description | Security Description | Pages | Price | | Select |
|---|---|---|---|---|---|---|
| Proposed Temporary Restraining Order.pdf | | Does not contain sensitive data | 8 | Free | Owned ⋮ | ☐ |

### JURY DEMAND

File Date
7/6/2023

⤴

No Documents ⓘ

### (IV-D) Original Petition
X Corp's Verified Original Petition and Application for Temporary Restraining Order, Temporary Injunction and Permanent Injunction filed by Stefanie Moll atty EV# 77280820

File Date
7/6/2023

⤴

| Name | Description | Security Description | Pages | Price | | Select |
|---|---|---|---|---|---|---|
| XCorp's Original Petition & App for TRO, Temp Injunction & Permanent Injunction.pdf | | Does not contain sensitive data | 79 | Free | Owned ⋮ | ☐ |

### MFDISC
X Corp.'s Motion for Expedited Discovery, filed by Atty. Stefanie Moll, Env. #77291386

File Date
7/7/2023

⤴

| Name | Description | Security Description | Pages | Price | | Select |
|---|---|---|---|---|---|---|
| X Corp.'s Motion for Expedited Discovery.pdf | | Does not contain sensitive data | 18 | Free | Owned ⋮ | ☐ |

## Proposed Order

Proposed Order on Motion for Expediated Discovery, Env. #77291386

File Date
7/7/2023



| Name | Description | Security Description | Pages | Price | | Select |
|------|-------------|---------------------|-------|-------|--|--------|
| Proposed Order on Motion for Expediated Discovery.pdf | | Does not contain sensitive data | 2 | Free | Owned ⋮ | ☐ |

## Proposed Order

Proposed Temporary Restraining Order, Env. #77422970

File Date
7/11/2023

| Name | Description | Security Description | Pages | Price | | Select |
|------|-------------|---------------------|-------|-------|--|--------|
| Proposed Temporary Restraining Order.pdf | | Does not contain sensitive data | 9 | Free | Owned ⋮ | ☐ |

## NOTICE OF FILING RECORDS

Env# 77419577 Defendant Mark Schobinger's Notice of Filing for Removal of Action,, Filed and signed by atty / sent to BD Queue

File Date
7/11/2023

| Name | Description | Security Description | Pages | Price | | Select |
|------|-------------|---------------------|-------|-------|--|--------|
| Notice of Filing for Removal of Actions.pdf | | Does not contain sensitive data | 103 | Free | Owned ⋮ | ☐ |

## Affidavit

of Service - Mark Schobinger- Served- Env# 77532636

File Date
7/14/2023

| Name | Description | Security Description | Pages | Price | | Select |
|------|-------------|---------------------|-------|-------|--|--------|
| Affidavit of Service - Mark Schobinger- Served.pdf | | Does not contain sensitive data | 1 | Free | Owned ⋮ | ☐ |

© 2023 Tyler Technologies, Inc. | All Rights Reserved
Version: 2023.6.0.45

EMPOWERED BY
TYLER TECHNOLOGIES

7/6/2023 2:39 PM
Lisa David, District Clerk
Williamson County, Texas
Michele Darlene Rodriguez

23-1074-C395

CAUSE NO. _____

| | | |
|---|---|---|
| X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC. | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § § § | |
| v. | § § | WILLIAMSON COUNTY, TEXAS |
| MARK SCHOBINGER | § § | Williamson County - 395th Judicial District Court |
| *Defendant.* | § § | _____ JUDICIAL DISTRICT |

### X CORP.'S VERIFIED ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

Plaintiff X Corp., successor in interest to Twitter, Inc. ("Twitter"), files this Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction against Defendant Mark Schobinger ("Schobinger").

### INTRODUCTION

1.      Schobinger was Head of Compensation and Benefits at Twitter until his recent resignation on May 20, 2023.  In this role, Schobinger had access to Twitter's most sensitive and confidential information concerning its employees' compensation. Accordingly, at the outset of his employment with Twitter, Schobinger signed an Employee Invention Assignment and Confidentiality Agreement (the "Agreement"), under which he agreed to, among other things, refrain from using or disclosing Twitter's confidential information and to hold same in the strictest confidence, return all Twitter property (including documents and information) upon separating from Twitter or upon Twitter's request, prevent any unauthorized use or disclosure of Twitter's confidential information, and cooperate with Twitter, including by providing a sworn declaration, to confirm the return of property and information.  Despite his contractual and fiduciary

1

obligations, both before and shortly after announcing his resignation, Schobinger accessed Twitter documents containing confidential and sensitive information and sent or uploaded certain of such documents to his personal email and personal Google Drive accounts.  These documents include, among others, Twitter's Compensation Detail Report, which contains personal identifying and compensation information for **2,251** Twitter employees worldwide and triggered an investigation pursuant to regulatory requirements all over the world given the highly sensitive compensation data involved. In addition to containing numerous lines of personal and confidential data concerning Twitter's employees, the Compensation Detail Report also contains information regarding employees' participation in Twitter's Performance Bonus Plan ("PBP").[1]

2.      Because Schobinger has absolutely no legal right to retain Twitter's highly sensitive and confidential information and taking such information violates his Agreement and the privacy rights of Twitter employees, Twitter sent Schobinger a letter on June 13, 2023, reminding him of his nondisclosure obligations under the Agreement, demanding that he preserve and not delete evidence in light of this potential litigation, requesting that he identify all Twitter documents in his possession and the individuals and entities with whom he shared or disclosed any such documents, demanding the return all such documents to Twitter human resources, requesting that he provide a declaration stating that he returned all Twitter documents and information, and asking Schobinger to submit his personal devices to a forensic review to confirm that no further Twitter confidential information remains on those devices.  Schobinger responded that

---

[1] The Compensation Detail Report, among other things, also includes the following information on the 2,251 Twitter employees worldwide: names, employee IDs, work locations, length of service, manager names, leave of absence dates, email addresses, salary ranges, total and annualized base pay, restricted stock unit ("RSU") options information (total granted, total vested, total unvested, percentages unvested), year to date equity granted, bonus plan eligibility, and bonus plan target percentage.

same day, by letter and phone, informing Twitter that while he allegedly deleted Twitter's documents, which is a clear breach of his preservation obligations under applicable law and was also directly contrary to Twitter's request, he would nevertheless be "happy" to submit to a forensic review to confirm that he no longer possessed Twitter's documents.

3.      While working to coordinate this forensic review with Schobinger, Twitter received an email on June 16 from a lawyer representing Schobinger, informing Twitter that Schobinger would no longer submit to a forensic review despite his prior agreement to do so.  On June 20, just four days later, Schobinger filed a class action lawsuit in the US District Court for the Northern District of California, San Francisco Division, naming himself as the sole class representative (the "California Lawsuit").  In the California Lawsuit, Schobinger alleges that Twitter failed to properly pay him and a class of alleged former and current employees bonuses under Twitter's PBP. While Schobinger's allegations in the California Lawsuit are entirely baseless, as noted above, the Compensation Detail Report that Schobinger took from Twitter conveniently contains PBP information for all of the individuals whom he presumably now seeks to represent in the California Lawsuit.[2]

4.      Following Schobinger's refusal to submit to the forensic review to which he had previously agreed, Twitter continued to engage in reasonable efforts to ensure that its confidential information was protected.  As set forth in greater detail below, Twitter's counsel exchanged multiple emails and conferred over the phone with Schobinger's counsel about the confidential and sensitive nature of the information at issue and the

---

[2] To be clear, this lawsuit is not a response to the California Lawsuit, as evinced by the fact that Twitter actively sought the return of the highly sensitive and confidential information Schobinger took **before** he filed the California Lawsuit, and before Twitter even knew that Schobinger was retained by counsel.  That said, Schobinger cannot shield himself from his confidentiality obligations under the Agreement by filing a separate lawsuit.

need for Schobinger's cooperation to confirm its remediation from his accounts and devices.

5.     Twitter's counsel also provided Schobinger's counsel a draft protocol of a forensic review to ensure the remediation of Twitter documents from Schobinger's accounts and devices—to be paid for entirely by Twitter, to be completed by an independent, third-party forensic analyst agreed upon by both parties, and to entirely avoid any review by Twitter of Schobinger's personal documents.  Consistent with Schobinger's obligations under Section 8(d) of his Agreement, Twitter's counsel also proposed that Schobinger sign a declaration to confirm that he has not used or shared Twitter confidential information outside of his employment with Twitter.

6.     Schobinger's counsel, however, has rejected each of these proposals and failed to even provide a counter-proposal     for Twitter's consideration.  These rejections and the general resistance to Twitter's efforts to protect its information is particularly alarming given Twitter's obligations to report Schobinger's misconduct to various international regulatory agencies as it relates to the highly sensitive identifying and compensation information Schobinger has on 2,251 Twitter employees, many of whom reside outside the United States.

7.     By retaining documents and information after resigning from Twitter, by refusing to cooperate with Twitter's efforts to confirm that he no longer maintains such documents and information, and by refusing to provide any meaningful assurances that he has not disclosed and will not disclose Twitter's information, Schobinger has breached and is threatening to continue to breach the Agreement.  The threat that Schobinger may disclose Twitter's confidential information is too real and damaging to ignore.  Accordingly, Twitter files this lawsuit and injunction application, asking this Court to

narrowly enjoin Schobinger from improperly using or disclosing Twitter's confidential documents and information pending a trial on the merits.

## PARTIES

8.     X Corp., successor in interest to Twitter, Inc., is a Nevada corporation that does business in Texas.

9.     Schobinger is an individual residing in Texas whose last known address is 3354 De Coronado Trail, Round Rock, Texas 78665.  Schobinger may be served with process at his residence, through his counsel, or wherever he may be found.

## RELIEF REQUESTED

10.     Twitter seeks temporary and permanent injunctive relief because there is no adequate remedy at law for the imminent threat of irreparable harm described below.

11.     Pursuant to Texas Rule of Civil Procedure 47(c)(5), Twitter seeks only non-monetary relief but reserves the right to later amend its Petition to seek monetary relief within the jurisdictional limits of this Court.

12.     Pursuant to Texas Rule of Civil Procedure 47(d), Twitter demands a judgment for all other relief to which it is entitled.

## JURISDICTION AND VENUE

13.     Pursuant to Texas Civil Practice and Remedies Code § 65.023(a), venue is proper in Williamson County, Texas because this action seeks a writ of injunction and Schobinger is a resident of Williamson County, Texas.

14.     The Court has personal jurisdiction over Schobinger because he is a resident of Texas and is thus subject to the Court's general personal jurisdiction.

<u>**DISCOVERY CONTROL PLAN**</u>

15.     Under Texas Rule of Civil Procedure 190.3, Twitter intends to conduct discovery under Discovery Control Plan – Level 3.  Pursuant to its contemporaneously filed motion, Twitter seeks expedited discovery to prepare for its temporary injunction hearing against Schobinger.  Good cause exists.

<u>**FACTUAL BACKGROUND**</u>

**A.     Twitter**

16.     Based in San Francisco, California, Twitter is a leading social media platform that connects millions of people in a digital town square.  Twitter's primary business is to innovate, develop, and maintain an existing social media platform providing its users with the ability to "tweet" short, electronic microblogs on almost any conceivable subject.  Twitter's workforce consists of a variety of professionals, including technical engineers, software developers, product specialists, and, in the case of Mark Schobinger, compensation professionals.

**B.     Mark Schobinger**

17.     Twitter hired Schobinger in February 2019 as its Executive and Incentive Compensation Director.

18.     At the beginning of his employment, Schobinger signed his Agreement and assumed numerous covenants to protect Twitter's legitimate interests, including post-employment covenants to protect Twitter's interests in its confidential and sensitive information.[3]

19.     Under the Agreement, Schobinger "agree[d] that during and after [his]

---

[3] A true and correct copy of Schobinger's Agreement is attached as Ex. 1.

6

employment with [Twitter], [he] will hold in the strictest confidence and take all reasonable precautions to prevent any unauthorized use or disclosure of Confidential Information."[4]   The Agreement defines Confidential Information as "information (including, but not limited to, any and all combinations of individual items of information) that [Twitter] or any subsidiary or affiliate of [Twitter] ('Twitter Group') has or will develop, acquire, create, compile, discover or own, that has value in or to the Twitter Group's business which is not generally known and which [Twitter] wishes to maintain as confidential."[5]   Confidential Information includes Twitter "finances and related financial information,"[6] which includes the compensation information that Schobinger accessed and sent himself before his separation from Twitter.

20.     Schobinger also agreed to return to Twitter all Twitter property, including documents and information, upon separating from Twitter or upon Twitter's request at any time:

> **[U]pon separation from employment with [Twitter] or upon [Twitter]'s request at any other time, [Schobinger] will immediately deliver to [Twitter], and will not keep in [his] possession, recreate, or deliver to anyone else, any and all [Twitter] property including, but not limited to, Confidential Information**, Associated Third Party Confidential Information, all [Twitter] equipment including all [Twitter] Electronic Media Equipment, all tangible embodiments of the Inventions, all electronically stored information and passwords to access such information, [Twitter] credit cards, **records**, **data**, notes, notebooks, **reports**, **files**, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, photographs, charts, any other documents and property, and reproductions of any of the foregoing items including, without limitation, any and all records maintained for Inventions made or contributed by me.[7]

---

[4] *Id.* § 7(b).
[5] *Id.* § 7(a).
[6] *Id.*
[7] *Id.* § 8(b) (emphasis added).

21.     Schobinger agreed that if he used any personal electronic media device to create, receive, store, review, prepare or transmit Twitter information, as he did, "[he would] make a prompt and reasonable search for such information in good faith, including reviewing any personal Electronic Media Equipment or personal Electronic Media Systems to locate such information[.]"[8]  Schobinger further agreed that, "if [he] locate[d] such information, [he would] notify [Twitter] of that fact and then provide [Twitter] with a computer-useable copy of all such [Twitter] information from those equipment and systems."[9]  The Agreement does not contemplate that Schobinger may take it upon himself to delete any documents he kept from his employment with Twitter.[10] Critically, Schobinger "**agree[d] to cooperate reasonably with [Twitter] to verify that the necessary copying is completed (including upon request providing a sworn declaration confirming the return of property and deletion of information), and, upon confirmation of compliance by [Twitter], [to] agree to delete and expunge all [Twitter] information**[.]"[11]

22.     Schobinger acknowledged that, "in the event of a breach or threatened breach of this Agreement by [Schobinger,] [Twitter] may suffer irreparable harm which would be difficult to calculate in monetary terms and for which damages would be an inadequate remedy."[12]  Therefore, Schobinger agreed that "[Twitter] shall be entitled, in addition to remedies otherwise available at law or in equity, to obtain and enforce immediately temporary restraining orders, preliminary injunctions, and final injunctions,

---

[8] *Id.* § 8(d)
[9] *Id.*
[10] *See generally id.*
[11] *Id.* (emphasis added).
[12] *Id.* § 16.

without the posting of a bond enjoining such breach or threatened breach."[13]

## C. Schobinger Accessed and Sent Himself Documents Containing Twitter's Confidential and Sensitive Information.

23.     On May 20, 2023, Schobinger voluntarily resigned from his employment with Twitter, effective May 26.  Over the next several days, Schobinger refused to meet with Twitter employees and attorneys in connection with transitioning his responsibilities.   Given Schobinger's unusual and disconcerting conduct, Twitter launched a review of Schobinger's activities on Twitter's systems and learned that Schobinger was forwarding emails to his personal email address.   After ending Schobinger's access to Twitter's systems (and later ending Schobinger's employment with Twitter), Twitter continued examining Schobinger's activities on his Twitter computer and on Twitter's systems during the months, weeks, and days leading to his separation.

24.     Through its investigation, Twitter learned that Schobinger downloaded 120 documents in the final 20 days of his employment with Twitter.  While some of these documents included information that was likely personal to Schobinger, the vast majority of these documents included non-personal, confidential Twitter information.  As one example, on May 5 and then again on May 22, Schobinger downloaded Twitter's Compensation Detail Report, which contains, among many other things, the names, employee IDs, work locations, length of service, manager names, leave of absence dates, email addresses, salary ranges, total and annualized base pay, restricted stock unit ("RSU") options information (total granted, total vested, total unvested, percentages unvested), year to date equity granted, bonus plan eligibility, bonus plan target percentage, and other compensation information of 2,251 Twitter employees worldwide.

---

[13] *Id.*

25.     Through its investigation, Twitter also learned that Schobinger emailed documents to his personal email account.  One email Schobinger sent himself on March 3, 2023, attached the Compensation Detail Report, which, again, contains the identities, email addresses, and compensation information of every Twitter employee worldwide.[14] Another email Schobinger sent himself that same day contained a spreadsheet detailing information about RSU options for 401 Twitter employees worldwide.[15]  Schobinger did not have any legitimate reason to send these documents to his personal email during the months before his resignation.

26.     Through its investigation, Twitter also learned that Schobinger maintained a personal cloud-storage account on Google Drive and uploaded documents to that account—although it is unclear which documents he uploaded.  A screenshot taken during Twitter's investigation demonstrates that Schobinger maintained a folder in the account entitled "Work," which included numerous subfolders entitled "Comp Cmte Meetings," "Playbooks," "Projects," "Reports," "401(k)," and "2023 Payslips."[16]  The subfolders were last modified between November 2022 and May 19, 2023.  Schobinger did not have any legitimate reason to maintain a work folder on his personal Google Drive account.

**D.     Twitter Sends Schobinger a Letter Reminding Him of His Non-Disclosure and Preservation Obligations.**

27.     On June 13, 2023, Twitter sent Schobinger a letter advising that it was aware of his downloading, emailing, and uploading activities and reminding Schobinger of his obligations under the Agreement and to not disclose information that is sensitive or

---

[14] A true and correct copy of Schobinger's Mar. 3, 2023, email to his personal email address, attaching the Compensation Detail Report, is attached at Ex. 2.
[15] A true and correct copy of Schobinger's Mar. 3, 2023, email to his personal email address, attaching the 03.01.2023 Sharework_RSU Options_HR Review, is attached at Ex. 3.
[16] A true and correct copy of the screenshot of Schobinger's "Work" Folder is attached as Ex. 4.

confidential to Twitter.[17]   The letter also demanded that Schobinger "take reasonable steps to not delete or destroy any hard copies and electronically stored documents and communications related to [his] employment with Twitter, specifically including documents and communications related to the Twitter documents [he] accessed and transmitted in the months and weeks before [his] separation."[18]

### E.   Schobinger Agreed to a Forensic Protocol to Ensure He Does Not Possess Twitter Documents.

28.   Schobinger responded to Twitter's letter the same day, first through email and later through a phone call with a member of Twitter's in-house legal team, Adam Mehes.   During the phone conversation, Schobinger stated that he deleted all Twitter documents in his possession, noting that he made several of the deletions after receiving Twitter's letter—in disregard of Twitter's preservation demand.   Mehes informed Schobinger that Twitter must verify that no Twitter documents remain on his accounts and devices, either advertently or inadvertently, and that Twitter would send someone from Twitter's information security team to conduct a forensic review, which could be conducted at Schobinger's home for his convenience.   Mehes expressly informed Schobinger that he could oversee the review.   Schobinger responded that he would be "happy to have someone come to [his] house" and "pull up the file listing" and was "willing to sit there with [the information security team member]."   Schobinger stated that his only concern was ensuring that the analyst did not take his personal files, which Mehes confirmed would not occur.

29.   Twitter began coordinating its review after Mehes's conversation with

---

[17] A true and correct copy of Twitter's June 13, 2023, Letter to Schobinger is attached as Ex. 5.
[18] *Id.*

Schobinger.

**F.      Schobinger Reneges on the Forensic Review Agreement and Otherwise Resists Twitter's Efforts to Confirm the Safeguarding of Its Documents and Information.**

30.      On June 16, 2023, three days after Schobinger agreed to the forensic review, Schobinger's counsel, Shannon Liss-Riordan, contacted Mehes to inform him that Schobinger would not engage in the forensic review.[19]

31.      Since then, Twitter's counsel engaged in multiple communications with Schobinger's counsel (once learning she was retained) in a concerted effort to resolve the matter amicably to avoid the need to file the instant suit.  Twitter's counsel initially reached out to Schobinger's counsel to coordinate the forensic review to which Schobinger agreed on June 13.[20]  Schobinger's counsel denied that her client committed to "any such intrusive review."[21]  While Twitter's counsel disagreed both with respect to what Schobinger committed to and that the review proposed by Twitter was "intrusive," she suggested a call to "help resolve [the] dispute."[22]

32.      The lawyers spoke on the phone on June 21 after the Juneteenth holiday and Schobinger's counsel's court conflict.  During the call, Twitter's counsel stressed the goal of avoiding escalation by conducting the forensic review Schobinger agreed to before he retained counsel.  Twitter's counsel also provided background information regarding some of the information uploaded and emailed, including the Compensation Detail

---

[19] A true and correct copy of S. Liss-Riordan's June 16, 2023, email to A. Mehes is attached as Ex. 6.  In her email to Mehes, Riordan informed him of her representation, stated that her client "affirmed" that he is not in possession of Twitter's confidential information, and concluded, "I trust that this takes care of your concern."  *Id.*  To be clear, Schobinger did not state (and Twitter was not otherwise aware) that he was represented by counsel during Twitter's prior communications with him.

[20] A true and correct copy of the June 17, 2023, email exchange between S. Moll to S. Liss-Riordan is attached as Ex. 7.

[21] *Id.*

[22] *Id.*

Report containing compensation information for 2,251 employees worldwide. As a result of the highly sensitive and confidential information at play, as well as Twitter's obligations to report any misconduct concerning the information to various international regulatory agencies, Twitter simply could not and cannot take Schobinger's "word for it" and Twitter's counsel explained and reiterated the request for a forensic review and a declaration as a result. Twitter's counsel raised the possibility of entering into an agreed forensic protocol to govern the review. Schobinger's counsel agreed to have someone evaluate any forensic proposal provided.

33.    Twitter accordingly provided Schobinger a proposed forensic protocol through which (along with a declaration), Twitter could obtain all assurances necessary to avoid this litigation.[23]  Under its terms, the protocol proposed to employ a jointly-selected, independent forensic analyst—rather than a Twitter employee working on its information security team, as Schobinger previously agreed—to narrowly remediate from Schobinger's devices and accounts the confidential Twitter documents that Schobinger had retained in his possession, such as those he had emailed to his personal email account or maintained on his personal Google Drive account—excluding documents that are personal to Schobinger.[24]  Notably, Twitter offered to pay for the entire forensic examination.[25]

34.    In the email transmitting the proposed protocol, counsel for Twitter explained that the forensic review was narrowly tailored, necessary to complete Twitter's

---

[23] A true and correct copy of S. Moll's June 28, 2023, email to S. Liss-Riordan transmitting the protocol is attached as Ex. 8; *see also* Twitter's Proposed Protocol, a true and correct copy of which is attached as Ex. 9.
[24] Ex. 9, Proposed Protocol.
[25] *Id.*

regulatory requirements to investigate the matter, and would not involve Twitter accessing or viewing Schobinger's personal documents.[26]  Twitter also reiterated its need for a declaration from Schobinger attesting that he "has not shared any of Twitter's sensitive information either by transmitting hard copy documents or by word-of-mouth."[27]  Twitter's counsel noted that Twitter would be happy to draft the declaration for Schobinger to execute.[28]

35.    While Schobinger's counsel responded to the email transmitting the forensic protocol and proposing a declaration, she neither commented on the protocol's or declaration's contents or countered with alternative terms.[29]  Twitter's counsel asked that, by July 5, Schobinger confirm whether he will comply with the proposed protocol, noting that, if not, Twitter will proceed to court.[30]  Schobinger's counsel threatened to seek "costs and other available remedies" if Twitter filed suit—presumably based on the California Lawsuit, which post-dated Twitter's attempts to secure its information—and mentioned again that her client deleted Twitter documents (in contravention of Twitter's preservation letter).[31]

## G.    Schobinger Files the California Lawsuit Related to the Information He Accessed and Sent Himself.

36.    On June 20, seven days after Twitter first sent Schobinger its June 13 letter, Schobinger filed the California Lawsuit, naming himself as the sole class representative. In the California Lawsuit, Schobinger alleges that Twitter failed to properly pay him and

---

[26] Ex. 8, June 28, 2023, Email.
[27] *Id.*
[28] *Id.*
[29] A true and correct copy of the June 29, 2023, email exchange between S. Liss-Riordan and S. Moll is attached as Ex. 10.
[30] *Id.*
[31] *Id.*

a class of alleged similarly situated current and former employees bonuses under Twitter's PBP. Notably, information related to this allegation, including the identities of all PBP recipients, is included in the Compensation Detail Report that Schobinger emailed to himself on March 3, downloaded on May 5, and downloaded again on May 22—two days after submitting his resignation.

## CAUSE OF ACTION

37.     Twitter incorporates the above allegations as if fully set forth below.

38.     The Agreement between Twitter and Schobinger is valid and enforceable.

39.     Section 8(b) of the Agreement requires Schobinger to return Twitter's confidential and other information upon separating from Twitter or upon Twitter's request at any other time. Section 8(d) of the Agreement requires Schobinger to inform Twitter about Twitter information on his personal devices, provide Twitter with computer-usable copies of such information, and cooperate with Twitter to confirm copying is completed, "**including upon request providing a sworn declaration confirming the return of property and deletion of information**." Section 7(b) of the Agreement prohibits Schobinger from disclosing Twitter's Confidential Information, which includes the compensation information Schobinger promised to "hold in the strictest confidence" in his position as Head of Compensation and Benefits.

40.     Schobinger breached and is threatening to continue to breach the Agreement by refusing to cooperate with Twitter's efforts to confirm the safeguarding of its information. As an initial matter, Schobinger failed to return Twitter's confidential and other information upon separating from Twitter and upon request from Twitter. Schobinger also failed to provide Twitter with computer-usable copies of the information that remained in his possession after separating from Twitter. Instead, Schobinger

15

claimed to have deleted the information–despite receiving a letter from Twitter demanding his preservation of same and specifically instructing him not to delete–yet he was unwilling to cooperate reasonably with Twitter by, among other things, failing to submit to a forensic review of his devices and accounts to confirm such deletion or to provide a sworn declaration that he did not share the information with third parties prior to deletion (or orally before or after deletion).

41.     Moreover, upon information and belief, Schobinger has or soon will improperly disclose and use the confidential and sensitive information contained in the documents he downloaded, emailed, and uploaded before separating from Twitter, particularly the compensation information in the Compensation Detail Report, by filing the California Lawsuit.   Because Schobinger transmitted this confidential and sensitive information to himself, refused to provide Twitter with any meaningful assurances that he no longer possesses the information and has not shared it, and is the named plaintiff in a class action lawsuit where he and his counsel could use this information to their advantage and to Twitter's detriment, Schobinger is threatening to use this information in further breach of the Agreement.

42.     Schobinger's breaches and threatened breaches of the Agreement caused and threaten to cause Twitter with imminent and irreparable harm.   Twitter is therefore entitled to prospective injunctive relief, as detailed in the Agreement.   Twitter is also entitled to attorney's fees, plus additional sums in the event of an appeal, as further detailed in the Agreement and Chapter 38 of the Texas Civil Practice and Remedies Code.

### APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

43.     "A temporary injunction's purpose is to preserve the status quo of the

litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The "status quo" is defined as "the last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004). Temporary injunctive relief is appropriate where the applicant demonstrates (i) a cause of action against the defendant; (ii) a probable right to the relief sought; and (iii) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204.

44. Twitter adequately pleads a breach of contract claim against Schobinger through this Petition.

45. Twitter demonstrates a right to the relief sought on its breach of contract claim against Schobinger. "To show a probable right to recover, an applicant need not show that it will prevail at trial . . . . Instead, to show a probable right of recovery, the applicant must plead a cause of action and present some evidence that tends to sustain it." *Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citations omitted). Twitter presents evidence demonstrating a probable right to relief on its claim against Schobinger, namely: (i) Schobinger received access to Twitter's confidential and sensitive information during his employment with Twitter under numerous obligations detailed in his Agreement; (ii) Schobinger downloaded, emailed, and uploaded documents including Twitter's confidential and sensitive information during the months, weeks, and days leading to his resignation; (iii) when confronted, Schobinger admitted to deleting some of the documents he sent himself, even after receiving Twitter's preservation demand instructing him not to; (iv) Schobinger agreed to submit to a forensic review to confirm the remediation of Twitter's information from his devices and accounts; and (v) only after

17

obtaining counsel, Schobinger reneged on his forensic review agreement and has refused to provide Twitter with any means to confirm that he actually deleted and did not disclose its confidential and sensitive information.  Moreover, Schobinger has since brought the California Lawsuit and can benefit, and is threatening to benefit from the information he took from Twitter, by not providing the assurances required by the Agreement and that he promised to provide.  This verified evidence "tends to sustain" Twitter's breach of contract claim against Schobinger.  *See, e.g.*, *Universal Plant Services, Inc. v. Dresser-Rand Group, Inc.*, 571 S.W.3d 346, 359 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (finding "clear and specific" evidence of a breach of contract claim where the employer showed that the departing employees improperly accessed documents, downloaded those documents, and emailed themselves those documents before resigning from their employment); *Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881, 893-94 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (finding clear and specific evidence supporting its breach of contract claim against a departing employee after presenting an affidavit of a forensic expert and corporate representative detailing data that was improperly retained and used by the departing employee).

46.     Unless enjoined, Schobinger will cause probable, imminent, and irreparable injury to Twitter.  As Head of Compensation and Benefits, Schobinger had access to Twitter's most sensitive and confidential information concerning its employees' compensation.  As a result of his job duties and his promise to hold Twitter's information in the strictest confidence, Schobinger owed Twitter fiduciary obligations and a duty of loyalty.  Under similar facts, courts throughout Texas have consistently held that former employees and their agents should be enjoined from using or disclosing the company's information pending a trial on the merits.  *See, e.g.*, *Chevron U.S.A., Inc. v. Guajardo*, CV

H-17-1549, 2017 WL 2265694, at *1 (S.D. Tex. May 24, 2017) (issuing a temporary restraining order where defendant-employee downloaded and emailed to his personal email account confidential information and trade secrets); *Keurig Dr, Pepper Inc. v. Chenier*, 4:19-CV-505, 2019 WL 3958154, at *2 (E.D. Tex. Aug. 22, 2019) (issuing a temporary restraining order where defendant downloaded and emailed to himself confidential and trade secret information belonging to plaintiff); *Frisco Med. Ctr., LLP v. Bledsoe*, 4:12CV37, 2012 WL 12919154, at *1 (E.D. Tex. Feb. 24, 2012) (issuing a temporary restraining order where defendant transmitted plaintiff's confidential information and trade secrets to a personal email account and thumb drives, reasoning that there is material risk that confidential information could be used, disclosed, disseminated, altered, or destroyed).

47.     Moreover, Twitter comes to this equitable Court with clean hands.  *See In re Gamble*, 71 S.W.3d 313, 317 (Tex. 2002) (recognizing that an application for injunctive relief invokes the court's equity jurisdiction).  As noted, Twitter has made multiple, reasonable efforts to avoid this litigation by attempting to confirm two simple things: (i) that Schobinger no longer has the highly sensitive and confidential information that he accessed, uploaded, and emailed to his personal accounts and; (ii) that Schobinger has not disclosed this information.  These reasonable efforts include Twitter sending a letter to Schobinger to (among other things) request his cooperation in confirming that he no longer has Twitter documents and has not shared Twitter information; Twitter's counsel exchanging numerous emails and conferring over the phone with Schobinger's counsel detailing the confidential and sensitive nature of the information at issue and the need for Schobinger's cooperation to confirm its remediation from his accounts and devices; Twitter's counsel providing Schobinger's counsel a draft protocol of a forensic review to

ensure the remediation of Twitter information from Schobinger's accounts and devices—to be paid entirely by Twitter; and Twitter's counsel offering to draft a narrow declaration for Schobinger to confirm that he has not used or shared Twitter information outside of his employment with Twitter.  Tellingly, Schobinger's counsel has rejected each of these proposals and failed to counter.

48.    Twitter respectfully asks the Court to enter a temporary restraining order and, following a hearing, a temporary injunction restraining Schobinger and all others acting in concert with him from:

      a.    directly or indirectly possessing, using, or disclosing the documents and folders listed in Exhibits 11 and 12 to this Petition; and

      b.    directly or indirectly possessing, using, or disclosing information in the documents and folders listed in Exhibits 11 and 12 to this Petition.

49.    Twitter is willing to pay a reasonable bond.

## CONDITIONS PRECEDENT

50.    All conditions precedent for Twitter to recover for the relief requested has occurred.

## JURY DEMAND

51.    Twitter demands a jury trial.

## PRAYER FOR RELIEF

52.    Furthermore, Twitter respectfully requests that the Court:

      a.    Issue a temporary restraining order enjoining Schobinger in the manner detailed above;

      b.    Allow Twitter to engage in limited, expedited discovery in preparation for the hearing on its Temporary Injunction Application;

      c.    After notice and a hearing, issue a temporary injunction enjoining Schobinger in the manner detailed above;

      d.    After a trial on the merits, issue a permanent injunction enjoining

Schobinger in the manner detailed above;

e.  Award Twitter its attorneys' fees and costs associated with filing this lawsuit; and

f.  Grant Twitter all other relief, in law and in equity, to which it may be entitled.

Dated: July 6, 2023                          Respectfully submitted,


*/s/ Stefanie R. Moll*
**Stefanie R. Moll**
State Bar No. 24002870
Email: stefanie.moll@morganlewis.com
**T. Cullen Wallace**
State Bar No. 24072412
Email: cullen.wallace@morganlewis.com
**John P. Bramble**
State Bar No. 24101544
Email: john.bramble@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX  77002
T:  713.890.5000
F:  713.890.5001

CAUSE NO. _____

| | | |
|---|---|---|
| X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC. | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § § | |
| v. | § § | WILLIAMSON COUNTY, TEXAS |
| MARK SCHOBINGER | § § § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

**<u>VERIFICATION IN SUPPORT OF X CORP.'S VERIFIED PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION</u>**

  My name is Adam Mehes.  My date of birth is ▓REDACTED▓.  My address is ▓REDACTED▓.  I am Head of Litigation for X Corp., successor in interest to Twitter, Inc. ("Twitter").  I have reviewed Twitter's Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction ("Petition").  I have personal knowledge of the statements in paragraphs 16-22, 27, 28, and 30 of the Petition.  I declare under penalty of perjury that those statements are true and correct.

  Executed on July 6, 2023 in Travis County, State of Texas.

_____
Adam Mehes

CAUSE NO. _____

| | | |
|---|---|---|
| X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC. | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff*, | § § | |
| v. | § § | WILLIAMSON COUNTY, TEXAS |
| MARK SCHOBINGER | § § § | |
| *Defendant*. | § | _____ JUDICIAL DISTRICT |

**VERIFICATION IN SUPPORT OF X CORP.'S VERIFIED PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION**

My name is Bruce Applin.  My date of birth is ▮REDACTED▮.  My address is ▮REDACTED▮ ▮REDACTED▮.  I am a Director of Information Security for X Corp., successor in interest to Twitter, Inc. ("Twitter").  I have reviewed Twitter's Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction ("Petition").  I have personal knowledge of the statements in paragraphs 23-26 and 29 of the Petition.  I declare under penalty of perjury that those statements are true and correct.

Executed on July 6, 2023 in Coconino County, State of Arizona.

_____
Bruce Applin

CAUSE NO. _____

| | | |
|---|---|---|
| X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC. | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § § | |
| v. | § § | WILLIAMSON COUNTY, TEXAS |
| MARK SCHOBINGER | § § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

### VERIFICATION IN SUPPORT OF X CORP.'S VERIFIED PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

My name is Stefanie R. Moll. My date of birth is REDACTED. My work address is 1000 Louisiana Street, Suite 4000, Houston, Texas 77002, United States. I am a partner at the law firm Morgan, Lewis & Bockius LLP and am lead counsel in the above-referenced matter for X Corp., successor in interest to Twitter, Inc. ("Twitter"). I have reviewed Twitter's Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction ("Petition"). I have personal knowledge of the statements in paragraphs 31-36 of the Petition. I declare under penalty of perjury that those statements are true and correct.

Executed on July 6, 2023 in Harris County, State of Texas.

_____
Stefanie R. Moll

# EXHIBIT 1

## EMPLOYEE INVENTION ASSIGNMENT AND CONFIDENTIALITY AGREEMENT

In consideration of, and as a condition of my employment, continued employment, access to confidential and trade secret information, benefits, certain monies, bonuses, and/or other benefits with Twitter, Inc., a Delaware corporation (the "**Company**"), I hereby represent to, and agree with the Company as follows:

1.      **Purpose of Agreement.** I understand that the Company is engaged in a continuous program of research, development, production, and marketing in connection with its business and, furthermore, that it is critical for the Company to preserve and protect: (i) its "**Confidential Information**" (as defined in Section 7 below); (ii) its rights in "**Inventions**" (as defined in Section 2 below); and (iii) in any and all intellectual property rights related to (i) and/or (ii). Accordingly, I am entering into this Employee Invention Assignment and Confidentiality Agreement (this "**Agreement**") as a condition of my employment with the Company, whether or not I am expected to make, conceive, or reduce to practice Inventions for the Company.

2.      **Disclosure of Inventions.** I will promptly disclose in confidence to the Company any and all inventions, improvements, ideas, developments, designs, trademark, word mark, trade dress, service mark, logo, certification marks, original works of authorship, formulas, processes, compositions of matter, computer software programs, databases, mask works, and trade secrets that I make or conceive or first reduce to practice or create, either alone or jointly with others, during the period of my employment, whether or not in the course of my employment, and whether or not patentable, copyrightable, or protectable as trade secrets (the "**Inventions**").

**3.      Work for Hire; Assignment of Inventions.**

(a)      I acknowledge and hereby agree that any and all Inventions that are copyrightable works prepared by me within the scope of my employment are "works for hire" under the Copyright Act and, furthermore, that the Company will be considered the author and owner of such copyrightable works. To the extent I create, within the scope of my employment, copyrightable works that are not works for hire, I hereby agree to assign, and do hereby irrevocably transfer and assign, such copyrightable works to the Company.

(b)      I hereby agree that any and all Inventions that (i) are developed using equipment, supplies, facilities, or trade secrets of the Company; (ii) are developed on Company time; (iii) result from work performed by me for the Company; or (iv) are related to the Company's business or actual or demonstrably anticipated research and development (collectively (i) through (iv) the "**Assigned Inventions**"), will be the sole and exclusive property of the Company. I hereby agree to assign, and do hereby irrevocably transfer and assign, the Assigned Inventions to the Company. I agree that this assignment includes a present conveyance to the Company of ownership of Inventions that are not yet in existence. The foregoing assignment of Assigned Inventions includes, for example, the assignment of any and all rights I have or may have anywhere in the world for patents, patent applications, copyrights, mask works, trade secrets, databases or other stores of data (including, but not limited to data created or curated for training machine learning models), and trademarks, along with any registrations of or applications to register such rights anywhere in the world, to the full extent permitted by law.

(c)      Attached hereto as **Exhibit A** is a list describing all Inventions that were made by me prior to the date of this Agreement, which belong to me, and which are not assigned to the Company ("**Prior Inventions**"). If no such list is attached, I agree that it is because no such Prior Inventions exist. I acknowledge and agree that if I use any of my Prior Inventions in the scope of my employment, or include them in any product or service of the Company, I hereby grant to the Company a perpetual, irrevocable, non-exclusive, worldwide, royalty-free license to use, disclose, make, sell, copy, distribute, modify, and create works based on, perform, and/or display such Prior Inventions and, furthermore, to sublicense to third parties with the same rights.

**4.      State-specific Provisions.**

*For residents of Delaware, Illinois, Kansas or North Carolina, the following applies:*

No provision in this Agreement requires me to assign any of my rights to an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on my own time, unless (a) the invention relates (i) to the business of the Company or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by me for the Company. Delaware Code Title 19 Section 805; Illinois 765ILCS1060/1-3, "Employees Patent Act"; Kansas

Statutes Section 44-130; North Carolina General Statutes Article 10A, Chapter 66, Commerce and Business, Section 66-57.1.

*For residents of Minnesota, the following applies:*

No provision in this Agreement requires me to assign any of my rights to an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on my own time, and (a) which does not relate (i) directly to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) does not result from any work performed by me for the Company. Minnesota Statutes 13A Section 181.78.

*For residents of Utah, the following applies:*

No provision in this Agreement requires me to assign any of my rights to an invention which was created entirely on my own time, and which is not (a) conceived, developed, reduced to practice, or created by me (i) within the scope of my employment with the Company, (ii) on the Company's time, or (iii) with the aid, assistance, or use of any of the Company's property, equipment, facilities, supplies, resources, or patents, trade secrets, know-how, technology, confidential information, ideas, copyrights, trademarks and service marks and any and all rights, applications and registrations relating to them, (b) the result of any work, services, or duties performed by me for the Company, (c) related to the industry or trade of the Company, or (d) related to the current or demonstrably anticipated business, research, or development of the Company. Utah Code Sections 34-39-1 through 34-39-3, "Employee Inventions Act."

*For residents of Washington, the following applies:*

No provision in this Agreement requires me to assign any of my rights to an invention for which no equipment, supplies, facilities, or trade secret information of the Company was used and which was developed entirely on my own time, unless (a) the invention relates (i) directly to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by me for the Company. Washington Rev. Code, Title 49 RCW: Labor Regulations Chapter 49.44.140.

5.      **Assignment of Other Rights.** In addition to the foregoing assignment of Assigned Inventions to the Company, I hereby agree to assign, and do hereby irrevocably transfer and assign, to the Company any and all intellectual property beyond those specified in Section 3 that I create within the scope of my employment or are related to the Company's business or actual or demonstrably anticipated research and development, including, but not limited to any and all "Moral Rights" (as defined below) that I may have in or with respect to any and all Assigned Inventions. I also hereby forever waive and agree never to assert any and all Moral Rights I may have in or with respect to any Assigned Inventions, even after termination of my work on behalf of the Company. "*Moral Rights*" mean any rights to claim authorship of or credit on an Assigned Invention, to object to or prevent the modification or destruction of any Assigned Inventions or Prior Inventions licensed to Company under Section 3, or to withdraw from circulation or control the publication or distribution of any Assigned Inventions or Prior Inventions licensed to Company under Section 3, and any similar right, existing under judicial or statutory law of any country or subdivision thereof in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right." Notwithstanding the foregoing, I will have the right to claim participation in the development, creation, or modification of the Assigned Inventions on my resume or in my curriculum vitae, provided that I obtain the Company's advance approval for such disclosures before providing the disclosure to any third-party.

6.      **Assistance.** I agree to assist the Company in every proper way to obtain for the Company and enforce patents, copyrights, mask work rights, trade secret rights, and other legal protections for the Company's Assigned Inventions in any and all countries. I will execute any documents that the Company may reasonably request for use in obtaining or enforcing such patents, copyrights, mask work rights, trade secrets and other legal protections. My obligations under this paragraph will continue beyond the termination of my employment with the Company, provided that the Company will compensate me at a reasonable rate after such termination for time or expenses actually spent by me at the Company's request on such assistance. If the Company is unable for any reason, after reasonable effort, to secure my signature on any document needed in connection with the actions specified in the preceding paragraph, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and, where permitted by law, my attorney in fact, which appointment is coupled with an interest, to act for and in my behalf to execute, verify and file any such documents and to do all other lawfully permitted acts to further the purposes of the preceding paragraph with the same legal force and effect as if executed by me.

**7.    Confidential Information.**

(a)    *Definition of Confidential Information*. I understand that "Confidential Information" means information (including, but not limited to, any and all combinations of individual items of information) that the Company or any subsidiary or affiliate of the Company ("***Twitter Group***") has or will develop, acquire, create, compile, discover or own, that has value in or to the Twitter Group's business which is not generally known and which the Company wishes to maintain as confidential. Confidential Information includes both information disclosed by the Company to me, and information developed or learned by me during the course of my employment with the Company. Confidential Information also includes all information of which the unauthorized disclosure could be detrimental to the interests of any member of the Twitter Group, whether or not such information is identified as Confidential Information. By example, and without limitation, Confidential Information includes any and all non-public user data, any and all non-public information that relates to the actual or anticipated business and/or products, research or development of the Twitter Group, or to the Twitter Group's technical data, trade secrets, or know-how, including, but not limited to, research, product plans, marketing plans, business strategies, or other information regarding the Twitter Group's products or services and markets therefor, customer lists, customer data, and customers (including, but not limited to, customers of the Company on which I called or with which I may become acquainted during the term of my employment), domain names, Inventions (as defined above in Section 2), ideas, technology, drawings, engineering, hardware configuration information, finances and related financial information, forecasts, and other business information disclosed by the Company to me either directly or indirectly in writing, orally or by drawings or inspection of premises, parts, equipment, or other Company property. Notwithstanding the foregoing, Confidential Information shall not include any such information which I can establish (i) was publicly known or made generally available outside the Company prior to the time of disclosure by the Company to me; (ii) becomes publicly known or made generally available outside the Company after disclosure by the Company to me through no wrongful action or omission by me; or (iii) is in my rightful possession, without confidentiality obligations, at the time of disclosure by the Company as shown by my then-contemporaneous written records; provided that any combination of individual items of information shall not be deemed to be within any of the foregoing exceptions merely because one or more of the individual items are within such exception, unless the combination as a whole is within such exception. I understand that nothing in this Agreement is intended to limit employees' rights to discuss the terms, wages, and working conditions of their employment, as protected by applicable law.

(b)    *Nonuse and Nondisclosure*. I agree that during and after my employment with the Company, I will hold in the strictest confidence and take all reasonable precautions to prevent any unauthorized use or disclosure of Confidential Information. I will not (i) use Confidential Information for any purpose whatsoever other than for the benefit of the Company in the course of my employment, or (ii) disclose Confidential Information to any third party without the prior written authorization of the General Counsel of the Company, or his or her authorized representative. When compelled by applicable law to disclose Confidential Information, I shall provide written notice, prior to disclosure, to the General Counsel of the Company. I agree that I obtain no title to any Confidential Information, and that the Company retains all Confidential Information as the sole property of the Company. I understand that my unauthorized use or disclosure of Confidential Information during my employment may lead to disciplinary action, up to and including, but not limited to, immediate termination and legal action by the Company. I understand that my obligations under this Section shall continue after termination of my employment and also that nothing in this Agreement prevents me from engaging in protected activity, as described in Section 7(e) below.

(c)    *Permission to Publish.* I will obtain the prior written consent of the Company's General Counsel or his or her delegate before I submit for publication or lecture on any matter or material connected to my work with the Company or which may refer to, involve or include Confidential Information.

(d)    *Safeguarding Confidential Information*. I will take all reasonable safeguards to protect Confidential Information including:

(i)    maintaining in a safe place all documents, drawings and data in any form that contain Confidential Information;

(ii)    not permitting the download or storage in electronic form of any Confidential Information on any non-encrypted device;

(iii)    handling Confidential Information in accordance with the Company's and the Twitter Group's information security policies; and



(iv)    notifying the Company immediately if I learn of any unauthorized or unlawful disclosure of Confidential Information.

(e)    I understand that nothing in this Agreement limits or prohibits me from filing a charge or complaint with, or otherwise communicating or cooperating with or participating in any investigation or proceeding that may be conducted by, any federal, state or local government agency or commission, including, but not limited to the Securities and Exchange Commission, the Equal Employment Opportunity Commission, the Occupational Safety and Health Administration, and the National Labor Relations Board ("**Government Agencies**"), including, but not limited to disclosing documents or other information as permitted by law, without giving notice to, or receiving authorization from, the Company. Notwithstanding, in making any such disclosures or communications, I agree to take all reasonable precautions to prevent any unauthorized use or disclosure of any information that may constitute Confidential Information to any parties other than the Government Agencies. I further understand that I am not permitted to disclose the Company's attorney-client privileged communications or attorney work product. In addition, I hereby acknowledge that the Company has provided me with notice in compliance with the Defend Trade Secrets Act of 2016 regarding immunity from liability for limited disclosures of trade secrets. The full text of the notice is attached in **Exhibit C**.

(f)    *Former Employer Confidential Information*. I agree that during my employment with the Company, I will not improperly use, disclose, or induce the Company to improperly use any proprietary information or trade secrets of any former employer or other person or entity with which I have an obligation to keep such proprietary information or trade secrets in confidence. I further agree that I will not bring onto the Company's premises or transfer onto the Company's technology systems any unpublished document, proprietary information, or trade secrets belonging to any such third party unless disclosure to, and use by, the Company has been consented to, in writing, by such third party and the Company.

(g)    *Third Party Information*. I recognize that the Company has received, and in the future may receive, from third parties (for example, customers, suppliers, licensors, licensees, partners, and collaborators) as well as its subsidiaries and affiliates ("**Associated Third Parties**"), information which the Company is required to maintain and treat as confidential or proprietary information of such Associated Third Parties ("**Associated Third Party Confidential Information**"), and I agree to use such Associated Third Party Confidential Information only as directed by the Company and to not use or disclose such Associated Third Party Confidential Information in a manner that would violate the Company's obligations to such Associated Third Parties. By way of example, Associated Third Party Confidential Information may include, but not be limited to, the habits or practices of Associated Third Parties, the technology of Associated Third Parties, requirements of Associated Third Parties, and information related to the business conducted between the Company and such Associated Third Parties. I agree at all times during my employment with the Company and thereafter, that I owe the Company and its Associated Third Parties a duty to hold all such Associated Third Party Confidential Information in the strictest confidence, and not to use it or to disclose it to any person, firm, corporation, or other third party except as necessary in carrying out my work for the Company consistent with the Company's agreement with such Associated Third Parties. I further agree to comply with any and all Company policies and guidelines that may be adopted from time to time regarding Associated Third Parties and Associated Third Party Confidential Information. I understand that my unauthorized use or disclosure of Associated Third Party Confidential Information or violation of any Company policies during my employment may lead to disciplinary action, up to and including, but not limited to, immediate termination and legal action by the Company.

**8.    Return of Company Materials.**

(a)    *Definition of Electronic Media Equipment and Electronic Media Systems.* I understand that "Electronic Media Equipment" includes, but is not limited to, computers, external storage devices, thumb drives, mobile devices (including, but not limited to, smart phones, tablets, and e-readers), telephone equipment, and other electronic media devices. I understand that "Electronic Media Systems" includes, but is not limited to, computer servers, messaging and email systems or accounts, applications for computers or mobile devices, and web-based services (including, but not limited to cloud-based information storage accounts).

(b)    *Return of Company Property.* I understand that anything that I created or worked on for the Company while working for the Company belongs solely to the Company and that I cannot remove, retain, or use such information without the Company's express written permission. Accordingly, upon separation from employment with the Company or upon the Company's request at any other time, I will immediately deliver to the Company, and will not keep in my possession, recreate, or deliver to anyone else, any and all Company property,

including, but not limited to, Confidential Information, Associated Third Party Confidential Information, all Company equipment including all Company Electronic Media Equipment, all tangible embodiments of the Inventions, all electronically stored information and passwords to access such information, Company credit cards, records, data, notes, notebooks, reports, files, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, photographs, charts, any other documents and property, and reproductions of any of the foregoing items including, without limitation, any and all records maintained for Inventions made or contributed by me.

(c)     *Return of Company Information on Company Electronic Media Equipment.* In connection with my obligation to return information to the Company, I agree that I will not copy, delete, or alter any information, including personal information voluntarily created or stored, contained in Company Electronic Media Equipment before I return the information to the Company.

(d)     *Return of Company Information on Personal Electronic Media Equipment.* In addition, if I have used any personal Electronic Media Equipment or personal Electronic Media Systems to create, receive, store, review, prepare or transmit any Company information, including, but not limited to, Confidential Information, I agree to make a prompt and reasonable search for such information in good faith, including reviewing any personal Electronic Media Equipment or personal Electronic Media Systems to locate such information and, if I locate such information, I agree to notify the Company of that fact and then provide the Company with a computer-useable copy of all such Company information from those equipment and systems. I agree to cooperate reasonably with the Company to verify that the necessary copying is completed (including upon request providing a sworn declaration confirming the return of property and deletion of information), and, upon confirmation of compliance by the Company, I agree to delete and expunge all Company information, remove myself from membership in electronic groups created/sponsored for use by Twitter employees for work purposes (including but not limited to Twitter DM groups and access to Twitter dogfood).

(e)     *No Expectation of Privacy in Company Property.* I understand that I have no expectation of privacy in Company property, and I agree that any Company property is subject to inspection by Company personnel at any time with or without further notice. As to any personal Electronic Media Equipment or personal Electronic Media Systems that I have used for Company purposes, I agree that the Company, at its sole discretion, may have reasonable access, as determined by the Company in good faith, to such personal Electronic Media Equipment or personal Electronic Media Systems to review, retrieve, destroy, or ensure the permanent deletion of Company information from such equipment or systems or to take such other actions necessary to protect the Company or Company property, as determined by the Company reasonably and in good faith. I also consent to an exit interview and an audit to confirm my compliance with this Section 8, and I will certify in writing that I have complied with the requirements of this Section 8.

9.     **No Breach of Prior Agreement.** I represent that my performance of all the terms of this Agreement and my duties as an employee of the Company will not breach any invention assignment, proprietary information, confidentiality, or similar agreement with any former employer or other party. I represent that I will not bring with me to the Company or use in the performance of my duties for the Company any documents or materials or intangibles of a former employer or third party that are not generally available to the public or have not been legally transferred to the Company. I represent that I have completed **Exhibit B** hereto truthfully and accurately.

10.     **Efforts; Duty Not to Compete; Outside Activities.** I understand that my employment with the Company requires my undivided attention and effort. As a result, during my employment, I will not, without the Company's express written consent, engage in any other employment, business activity or outside directorships that (i) directly or indirectly competes with the current or future business of the Company; (ii) uses any Company information, equipment, supplies, facilities or materials; or (iii) otherwise conflicts with the Company's business interest and causes a disruption of its operations. I further agree that I have disclosed to the Company on **Exhibit D** all of my existing employment and/or business relationships, including, but not limited to, any consulting or advising relationships, outside directorships, investments in privately held companies, and any other relationships ("Outside Relationships") that may create a conflict of interest and in the future will disclose Outside Relationships to the Company during my employment pursuant to the Company's policies (currently found at go/outsideprojects). I understand that the Company will review these relationships for any actual or potential conflict of interest and will advise me if any changes, including, potentially, cessation of an activity or termination of a relationship, is required as a condition of employment with the Company.

11.     **Notification.** I hereby authorize the Company to notify third parties, including, without limitation, customers and actual or potential employers, of the terms of this Agreement and my responsibilities hereunder.

12.     **Post-Employment Non-Competition Obligations.** I agree that for a period of one (1) year after the termination of my employment, for any reason, whatsoever, I will not, without the Company's express written consent, engage in any other employment or business that (i) directly or indirectly competes with the current or then anticipated future business of the Company and on which I directly or indirectly worked for the Company during the last 24 months of my employment; and/or (ii) would cause me to use or disclose or potentially use or disclose any trade secrets or proprietary or Confidential Information of the Company. I agree that, as a Director level and above employee, I am part of the Company's management personnel, and that the restrictions contained in this Section are necessary to protect against my disclosure of highly sensitive information of the business of the Company, including, but not limited to, the Company's trade secrets.

13.     **Non-Solicitation of Employees/Consultants.** During my employment with the Company and for a period of one (1) year thereafter, I will not directly or indirectly solicit away employees or consultants of the Company for my own benefit or for the benefit of any other person or entity.

14.     **Non-Solicitation of Suppliers/Customers.** During my employment, I will not directly or indirectly solicit away or otherwise take away customers or suppliers of the Company. After the termination of my employment with the Company, I will not directly or indirectly solicit away or otherwise take away customers or suppliers of the Company if, in so doing, I use or disclose any trade secrets or proprietary or confidential information of the Company. I agree that the non-public names and addresses of the Company's customers and suppliers, and all other confidential information related to them, including, but not limited to their buying and selling habits and special needs, created or obtained by me during my employment, constitute trade secrets or proprietary or confidential information of the Company.

15.     **Name & Likeness Rights.** I hereby authorize the Company to use, reuse, and to grant others acting on the Company's behalf the right to use and reuse, my name, photograph, likeness (including, but not limited to caricature), voice, and biographical information, and any reproduction or simulation thereof, in any form of media or technology now known or hereafter developed (including, but not limited to, film, video and digital or other electronic media), both during and after my employment, for purposes related to Company recruitment, research, development, promotion, and/or marketing the Company's image, and/or its current or anticipated products or services.

16.     **Injunctive Relief.** I understand that in the event of a breach or threatened breach of this Agreement by me the Company may suffer irreparable harm which would be difficult to calculate in monetary terms and for which damages would be an inadequate remedy. I agree that the Company shall be entitled, in addition to remedies otherwise available at law or in equity, to obtain and enforce immediately temporary restraining orders, preliminary injunctions, and final injunctions, without the posting of a bond enjoining such breach or threatened breach. Should the Company successfully enforce any portion of this Agreement before a trier of fact, the Company shall be entitled to receive and recover from me all of its reasonable attorney's fees, litigation expenses and costs incurred as a result of enforcing this Agreement against me.

17.     **Governing Law; Severability.** This Agreement will be governed by and construed in accordance with the laws of the State in which I reside during the course of my employment, without giving effect to its laws pertaining to conflict of laws. If any provision of this Agreement is determined by any court or arbitrator of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such provision will be enforced to the maximum extent possible given the intent of the parties hereto. If such clause or provision cannot be so enforced, such provision shall be stricken from this Agreement and the remainder of this Agreement shall be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in this Agreement.

18.     **Counterparts.** This Agreement may be executed in any number of counterparts, each of which when so executed and delivered will be deemed an original, and all of which together shall constitute one and the same agreement.

19.     **Entire Agreement.** This Agreement and the documents referred to herein constitute the entire agreement and understanding of the parties with respect to the subject matter of this Agreement, and supersede all prior understandings and agreements, whether oral or written, between or among the parties hereto with respect to the specific subject matter hereof.

20.    **Amendment and Waivers.** This Agreement may be amended only by a written agreement executed by each of the parties hereto. No amendment of or waiver of, or modification of any obligation under this Agreement will be enforceable unless set forth in a writing signed by the party against which enforcement is sought. Any amendment effected in accordance with this section will be binding upon all parties hereto and each of their respective successors and assigns. No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance. No waiver granted under this Agreement as to any one provision herein shall constitute a subsequent waiver of such provision or of any other provision herein, nor shall it constitute the waiver of any performance other than the actual performance specifically  waived.

21.    **Successors and Assigns; Assignment.** Except as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives.  The Company may assign any of its rights and obligations under this Agreement, without my further consent, and shall bind and inure to the benefit of the Company, its successors, and assigns. No other party to this Agreement may assign, whether voluntarily or by operation of law,  any of its rights and obligations under  this Agreement, except with the prior written consent of the Company. If the Company makes any assignment of the rights and/or obligations herein or transfers my employment or relationship within the Company, I agree that this Agreement shall remain binding upon me.

22.    **Further Assurances.** The parties agree to execute such further documents and instruments and to take such further actions as may be reasonably necessary to carry out the purposes and intent of this Agreement.

23.    **"At Will" Employment.** I understand that this Agreement does not constitute a contract of employment or obligate the Company to employ me for any stated period of time. I understand that I am an "at will" employee of the Company and that my employment can be terminated at any time, with or without notice and with or without cause, for any reason or for no reason, by either the Company or myself. I acknowledge that any statements or representations to the contrary are ineffective, unless put into a writing signed by the Company. I further acknowledge that my participation in any stock option or benefit program is not to be construed as any assurance of continuing employment for any particular period of time.

24.    **Effective Date of Agreement**. This Agreement shall be effective as of the first day I provide services to the Company.

**EMPLOYEE**                                                      **TWITTER, INC.**

*Mark Schobinger (will opt out of arbitration per process)*
Signature

Name: _Mark Schobinger (will opt out of arbitration per process)_____

Dec 31, 2018
_____
Date

Leslie Berland
Head of People

## EXHIBIT A
## Disclosure of Previous Inventions

1.      Except as listed in Section 2 below, the following is a complete list of all Inventions that were made by me, alone or jointly with others, prior to the date of this Agreement, which belong to me or in which I have other legal rights and/or interests, and which are not assigned to the Company (specifically excluding any open source projects to which you have contributed):

☑  No qualifying Inventions.

☐  Qualifying Inventions listed below:

_____

_____

_____

_____

☐  Additional Sheets Attached.

2.      Due to a prior confidentiality agreement, I cannot complete the disclosure under Section 1 above with respect to certain Inventions, which are listed and described generally below, the proprietary rights and duty of confidentiality with respect to which I owe to the following party(ies):

|     | Invention | Party(ies) | Relationship |
|-----|-----------|------------|--------------|
| 1.  |           |            |              |
| 2.  |           |            |              |
| 3.  |           |            |              |

☐  Additional sheets attached.

☐  There are qualifying Inventions, but I am not permitted to provide information to complete Section 2.

I certify that the information provided in this Exhibit A is accurate.

*Mark Schobinger (will opt out of arbitration per process)*
Mark Schobinger (will opt out of arbitration per process) (Dec 31, 2018)
Signature

Dec 31, 2018
Date

Printed Name: Mark Schobinger (will opt out of arbitration per process)

## EXHIBIT B
## Proprietary Information Obligations Checklist (On Hire)

Twitter respects the right of every company to protect confidential and proprietary information. We don't want you (or anyone who works for us) to improperly use or disclose protected information of others. As such, it is important that you understand and comply with your continuing obligations to protect former employer information.

In addition, you must ensure that employment with Twitter, Inc. does not violate any legal and/or enforceable contractual obligation to a third party. In order to ensure your compliance with those obligations, please fill out, sign, and return this checklist on or before your start date.

| | Have you, without permission, taken home or retained, or brought to Twitter offices, or given to any Twitter employee anything belonging to a current or former employer, including, without limitation: | | |
|---|---|---|---|
| 1. | **Electronic files or hard copy documents?** (Examples – non-public customer contact lists, business papers, source code | Yes ☐ | No ☑ |
| 2. | **Equipment?** (Examples –keys, badges, computer disks, laptop, cell phone, etc.) | Yes ☐ | No ☑ |
| 3. | **Voicemails or emails?** (Including forwarding, without permission, your former voicemail or email accounts.) | Yes ☐ | No ☑ |

If you answered "Yes" to any of the above, please explain (attach additional sheets if needed):

_____

_____

_____

_____

I certify that the information provided in this Exhibit B is accurate.

*Mark Schobinger (will opt out of arbitration per process)*
Mark Schobinger (will opt out of arbitration per process) (Dec 31, 2018)
Signature

Dec 31, 2018
Date

Mark Schobinger (will opt out of arbitration per process)
Printed Name

**EXHIBIT C**
**Notice under the Defend Trade Secrets Act of 2016**

" . . . An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that—(A) is made—(i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal....... An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual—(A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order."

**EXHIBIT D**
## Disclosure of Outside Employment or Activities

*NOTE: The information you submit here will first be routed to your manager for his/her approval; after your manager approves, it goes to Legal Compliance. Legal Compliance may request additional information about the matter. If you have questions about this form, please email compliance@twitter.com.*

_____

The following is a complete list of all of my existing employment and/or business relationships, including, but not limited to, any consulting or advising relationships, outside directorships, investments in privately held companies, and any other relationships that may create a conflict of interest with my employment with the Company.

- ☑ None.
- ☐ See below:

Description of the activity:

_____
_____
_____

Type of organization:

- ☐ For-Profit
- ☐ Not-for-Profit
- ☐ Self-Employment
- ☐ Twitter Competitor
- ☐ Twitter Business Partner

Compensation Type (Paid or Volunteer)

- ☐ Volunteer
- ☐ Paid

Anticipated use of Twitter Resources, if any

_____
_____
_____

Is this Related to your Work at Twitter?

_____
_____
_____

- ☐ Additional Sheets Attached.

I certify that the information provided in this Exhibit D is accurate.

*Mark Schobinger (will opt out of arbitration per process)*
Mark Schobinger (will opt out of arbitration per process) (Dec 31, 2018)
Signature

Dec 31, 2018
Date

Mark Schobinger (will opt out of arbitration per process)
Printed Name

# EXHIBIT 2

## Fwd: compton report attached

**mschobinger@twitter.com Mark Schobinger**          Friday, March 3, 2023 at 3:49:57 PM Pacific Standard Time
To: markschobinger@gmail.com

---------- Forwarded message ---------
From: **Mark Schobinger** <mschobinger@twitter.com>
Date: Fri, Mar 3, 2023 at 8:16 AM
Subject: compton report attached
To: Victoria Yamamoto <vto@twitter.com>

Here is the report that includes the ACQ org employees...

--
**Mark Schobinger |** Head of Compensation

**Attachments:**

**CR - Compensation Detail Report_Compton 03032023 2023-03-03 12_14 CST.xlsx** 867k

# EXHIBIT 3

## Fwd: [Please approve] Deferred Cash Comp Payout - 3/1

**mschobinger@twitter.com Mark Schobinger**       Friday, March 3, 2023 at 3:49:29 PM Pacific Standard Time
To: markschobinger@gmail.com

---------- Forwarded message ---------
From: **Ling Hui** <lhui@twitter.com>
Date: Wed, Mar 1, 2023 at 2:29 PM
Subject: [Please approve] Deferred Cash Comp Payout - 3/1
To: Lindsay Chapman <lchapman@twitter.com>, Stacey Conti <sconti@twitter.com>, Mark Schobinger <mschobinger@twitter.com>
CC: Fai Cheung <fcheung@twitter.com>



Thanks,

 **Ling Hui** | Dir., Finance Systems
She/Her | San Francisco, CA
Follow me @oOolinghuioOo

--
**Mark Schobinger |** Head of Compensation

**Attachments:**

**03.01.2023 Sharework_RSU Options_ HR Review.xlsx** 145k

# EXHIBIT 4



# EXHIBIT 5



1355 Market Street
San Francisco
California
94103

twitter.com

June 13, 2023

Mark Schobinger
markschobinger@gmail.com

Re: Confidential Reminder about Your Contractual Obligations

Dear Mark,

We are sending you this letter as a reminder of your obligations to comply with your contractual and statutory obligations to Twitter, to request that you return all Twitter documents and information that remain in your possession, and, as further outlined below, to request that you cooperate with Twitter in its efforts to ensure that no such Twitter documents or information remain in your possession.

We recently learned that in the months and weeks before your separation from Twitter, you accessed Twitter documents on Twitter's cloud-storage system, downloaded Twitter documents from the cloud-storage system to your desktop, uploaded Twitter documents to your personal Google Drive account, and emailed Twitter documents to your personal Google Mail account. These Twitter documents you accessed and transmitted include information that is confidential and sensitive to Twitter, including, but not limited to, compensation information and litigation-strategy information protected by the attorney-client privilege.

As a reminder, using or disclosing this confidential and sensitive information outside of your employment with Twitter qualifies as a breach of your Employee Invention Assignment and Confidentiality Agreement (the "Agreement"). Under the Agreement, you agreed not to use or disclose "Confidential Information," which the Agreement defines to include "information . . . that the Company or any subsidiary or affiliate of the Company . . . has or will develop, acquire, create, compile, discover or own, that has value in or to the Twitter Group's business which is not generally known or which the Company wishes to maintain as confidential." Such Confidential Information includes the compensation and litigation-strategy information in the Twitter documents you accessed and transmitted, which has value to Twitter, which is not generally known outside of Twitter, and which Twitter wishes to maintain as confidential.

Using and disclosing this confidential and sensitive information outside of your employment with Twitter also qualifies as misappropriation under the Texas Uniform Trade Secrets Act ("TUTSA"), which allows employers to seek expedited injunctive relief to protect their information. *See, e.g., Chevron U.S.A., Inc. v. Guajardo*, CV H-17-1549, 2017 WL 2265694, at *1 (S.D. Tex. May 24, 2017) (issuing a temporary restraining order where the defendant-employee downloaded and emailed to his personal email account confidential information and trade secrets); *Keurig Dr Pepper Inc. v. Chenier*, 4:19-CV-505, 2019 WL 3958154, at *2 (E.D. Tex. Aug. 22, 2019) (issuing a temporary restraining order where the defendant-employee downloaded and emailed to himself confidential and trade secret information belonging to his employer); *Maxim Healthcare Staffing Services, Inc. v. Mata*, No. SA-21-CV-01100-XR, 2022 WL 106153, at *5 (W.D. Tex. Jan. 11, 2022) (issuing a temporary injunction where the defendant-employee emailed confidential and trade secret information to himself before his separation from his employer).



1355 Market Street
San Francisco
California
94103

twitter.com

Given the seriousness of this situation, I am informing you of your obligation to take reasonable steps to not delete or destroy any hard copies and electronically stored documents and communications related to your employment with Twitter, specifically including document and communications related to the Twitter documents you accessed and transmitted in the months and weeks before your separation.  This includes, but is not limited to, emails, text messages, iMessages, WhatsApp messages, Facebook messages, and any other types of digital documents and communications that you may have sent yourself or any other person or entity.  We trust that you will preserve, until directed otherwise, all hard copies and electronically stored documents and communications.  In the event of a dispute arising out of any failure to preserve documents, we will rely on this letter as evidence of our request and notice to you of your preservation obligations.

Finally, we respectfully ask that by 12:00 p.m. Central Daylight Time on June 16, 2023, you respond to this letter in writing 1) identifying all Twitter documents and information that you still maintain in your possession, 2) the current location of all Twitter documents and information that you still maintain in your possession, and 3) all individuals and entities with whom you have shared or disclosed, either directly or indirectly, any Twitter documents or information that you maintain in your possession.  We also respectfully request that by that same time, you return all such documents and information by emailing it to Twitter Human Resources at alum@twitter.com, copying me, and further confirming that you are willing to provide a declaration stating that you have returned all Twitter information and no longer possess same and confirming that you are willing to submit your personal computer to a forensic review by an independent third-party forensic analyst to ensure that you do not advertently or inadvertently possess any such information.  From there, we can coordinate your execution of that declaration and the forensic review.

We appreciate your contributions to Twitter and thank you in advance for your cooperation with this letter.  If we do not hear from you by 12:00 p.m. on June 16th, however, we will assume that you do not intend to cooperate with this letter and will take appropriate legal steps to protect Twitter's information.  Please let us know if you have any questions.

Sincerely,

Adam Mehes
Acting Head of Litigation
X Corp.

# EXHIBIT 6



On Fri, Jun 16, 2023 at 5:26 AM Shannon Liss-Riordan <sliss@llrlaw.com> wrote:

Adam -

Please be advised that our firm represents Mark Schobinger, and we are in receipt of the exchange below and your attached letter.  Mr. Schobinger has affirmed for you that he is not in possession of any Twitter sensitive or confidential materials.

I trust that this takes care of your concern.

Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
Tel: (617) 994-5800
Fax: (617) 994-5801
sliss@llrlaw.com
www.llrlaw.com

Begin forwarded message:

> **From:** Mark Schobinger <markschobinger@gmail.com>
> **Date:** June 13, 2023 at 3:45:30 PM EDT
> **To:** Adam Mehes <amehes@twitter.com>
> **Cc:** Mark Schobinger <markschobinger@gmail.com>
> **Subject: Cease and Desist**
>
> Adam,
>
> Hi. I am acknowledging receipt of your letter. I am not in possession of any Twitter sensitive or confidential information and have returned my laptop. While employed I was asked to work on a variety of sensitive

matters, some of which required me to keep local copies at the request of Mary Hansbury in order to work expeditiously on her timetable. I did this during my tenure at Twitter, and as a professional responded to inquiries all the way through the date my access was revoked. When I gave notice, I was asked to make sure all sensitive files or anything related to various legal holds I was already on were on goggle drive and/or box as part of my transition. I complied with that request. Reports, if any, that were maintained locally were immediately removed after confirming the files existed on Twitter's secure drives (Google drive and/or box) to ensure I departed with no Twitter documents except for my pay slips and grant agreement documents.

By receipt of this email, I confirm I do not have access to any Twitter sensitive documents.

Regards,
Mark



Regards,
Mark

> On Jun 13, 2023, at 1:42 PM, Adam Mehes
> <amehes@twitter.com> wrote:


> Dear Mark,

> Please see the attached letter.  Feel free to reach out
> to me at this email or by phone at 347-417-4940 if you
> have any questions.

> Thanks,

> Adam

# EXHIBIT 7

**Bramble, John**

---

| | |
|---|---|
| **From:** | Shannon Liss-Riordan <sliss@llrlaw.com> |
| **Sent:** | Monday, June 19, 2023 8:05 AM |
| **To:** | Moll, Stefanie R. |
| **Cc:** | Wallace, Thomas Cullen; Bramble, John; Bradley Manewith |
| **Subject:** | Re: Mark Schobinger |

[EXTERNAL EMAIL]
Stefanie - I'm out today but can talk after a court hearing tomorrow afternoon or I have more availability on Wednesday.

-----------------------------
Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
Tel: (617) 994-5800
Fax: (617) 994-5801
sliss@llrlaw.com
www.llrlaw.com


On Jun 18, 2023, at 10:41 AM, Moll, Stefanie R. <stefanie.moll@morganlewis.com> wrote:


Shannon,

Not surprisingly, I disagree both with respect to what Mr. Schobinger committed to do and that the review Twitter proposed is "intrusive," particularly given the nature of the documents that Mr. Schobinger took and Twitter's obligation to further investigate this matter.  But let's see if a phone call can help resolve our dispute.  I have very good availability on Monday the 19th before 6:00 pm (CST).  Please let me know what works for you and I will send a meeting request.

Thank you,


**Stefanie R. Moll**
**Morgan, Lewis & Bockius LLP**
1000 Louisiana Street, Suite 4000 | Houston, TX 77002-5005
Direct: +1.713.890.5780 | Main: +1.713.890.5000 | Fax: +1.713.890.5001 | Mobile: +1.832.452.4737
stefanie.moll@morganlewis.com | www.morganlewis.com
Assistant: Nanci D. Mohr | +1.713.890.5738 | nanci.mohr@morganlewis.com




**From:** Shannon Liss-Riordan <sliss@llrlaw.com>
**Sent:** Saturday, June 17, 2023 7:58 AM
**To:** Moll, Stefanie R. <stefanie.moll@morganlewis.com>
**Cc:** Wallace, Thomas Cullen <cullen.wallace@morganlewis.com>; Bramble, John <john.bramble@morganlewis.com>; Bradley Manewith <bmanewith@llrlaw.com>
**Subject:** Re: Mark Schobinger

[EXTERNAL EMAIL]

Stefanie -  It is my understanding that Mr. Schobinger did not commit to any such intrusive review. He has affirmed that he does not have any sensitive confidential materials.  I'm happy to discuss with you next week.

Shannon

-----------------------------
Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
Tel: (617) 994-5800
Fax: (617) 994-5801
sliss@llrlaw.com
www.llrlaw.com


On Jun 17, 2023, at 8:35 AM, Moll, Stefanie R. <stefanie.moll@morganlewis.com> wrote:


Shannon,

It is nice to "meet" you, at least electronically for now.

My firm represents Twitter in this matter and Mr. Mehes forwarded me your email from this morning.  As I'm sure Mr. Schobinger informed you, he readily agreed to host a team member from Twitter's information security (InfoSec) team at his home to confirm his statements (attached) that he is no longer "in possession of any Twitter sensitive or confidential information" despite having previously transferred such information to his personal computer and to his personal email address.  His cooperation in this process is necessary in connection with our regulatory requirements to investigate this matter.

Now that we know you are representing Mr. Schobinger, we of course want to coordinate InfoSec's visit with you.  Please provide us with dates early next week for the forensic review that work for Mr. Schobinger (and for you to the extent you would like to be present or at least available at that time).

Thank you for your prompt attention to this matter.

**Stefanie R. Moll**
**Morgan, Lewis & Bockius LLP**
1000 Louisiana Street, Suite 4000 | Houston, TX 77002-5005
Direct: +1.713.890.5780 | Main: +1.713.890.5000 | Fax: +1.713.890.5001 | Mobile: +1.832.452.4737
stefanie.moll@morganlewis.com | www.morganlewis.com
Assistant: Nanci D. Mohr | +1.713.890.5738 | nanci.mohr@morganlewis.com

On Fri, Jun 16, 2023 at 5:26 AM Shannon Liss-Riordan <sliss@llrlaw.com> wrote:

> Adam -
>
> Please be advised that our firm represents Mark Schobinger, and we are in receipt of the exchange below and your attached letter.  Mr. Schobinger has affirmed for you that he is not in possession of any Twitter sensitive or confidential materials.
>
> I trust that this takes care of your concern.
>
> Shannon Liss-Riordan
> Lichten & Liss-Riordan, P.C.
> 729 Boylston Street, Suite 2000
> Boston, Massachusetts 02116
> Tel: (617) 994-5800
> Fax: (617) 994-5801
> sliss@llrlaw.com
> www.llrlaw.com
>
> Begin forwarded message:
>
>> **From:** Mark Schobinger <markschobinger@gmail.com>
>> **Date:** June 13, 2023 at 3:45:30 PM EDT
>> **To:** Adam Mehes <amehes@twitter.com>
>> **Cc:** Mark Schobinger <markschobinger@gmail.com>
>> **Subject: Cease and Desist**
>>
>> Adam,
>>
>> Hi. I am acknowledging receipt of your letter. I am not in possession of any Twitter sensitive or confidential information and have returned my laptop. While employed I was asked to

work on a variety of sensitive matters, some of which required me to keep local copies at the request of Mary Hansbury in order to work expeditiously on her timetable. I did this during my tenure at Twitter, and as a professional responded to inquiries all the way through the date my access was revoked. When I gave notice, I was asked to make sure all sensitive files or anything related to various legal holds I was already on were on goggle drive and/or box as part of my transition. I complied with that request. Reports, if any, that were maintained locally were immediately removed after confirming the files existed on Twitter's secure drives (Google drive and/or box) to ensure I departed with no Twitter documents except for my pay slips and grant agreement documents.

By receipt of this email, I confirm I do not have access to any Twitter sensitive documents.

Regards,
Mark

Regards,
Mark

On Jun 13, 2023, at 1:42 PM, Adam Mehes <amehes@twitter.com> wrote:

Dear Mark,

Please see the attached letter.  Feel free to reach out to me at this email or by phone at 347-417-

4940 if you have any
questions.

Thanks,

Adam

# EXHIBIT 8

## Bramble, John

| | |
|---|---|
| **From:** | Moll, Stefanie R. |
| **Sent:** | Wednesday, June 28, 2023 2:18 PM |
| **To:** | Shannon Liss-Riordan |
| **Cc:** | Bradley Manewith; Bramble, John; Wallace, Thomas Cullen |
| **Subject:** | Mark Schobinger Forensic Protocol |
| **Attachments:** | Proposed Forensic Protocol (Twitter - Schobinger).pdf |

Shannon,

In follow up to our last conversation, I am attaching a draft forensic protocol. The protocol contemplates that both sides will be involved in selecting a third-party forensic analyst to perform the analysis and that Twitter, of course, will cover the costs associated with Mr. Schobinger's compliance with the protocol.

The protocol is narrowly tailored and limited to Twitter documents that were most likely in Mr. Schobinger's possession when he resigned and later when we sent our preservation letter, particularly including documents that Mr. Schobinger accessed during the weeks leading up to his resignation and folders that Mr. Schobinger uploaded to his Google Drive during the months, weeks, and days leading up to his resignation, as reflected by our internal preliminary analysis.

As discussed during our call, many of these documents include highly sensitive compensation information and Mr. Schobinger's cooperation is necessary in connection with our regulatory requirements to investigate this matter. Consistent with the narrow scope of the protocol, however, we have no interest in viewing or accessing Mr. Schobinger's personal documents, including those related to his employment with Twitter. The attached protocol reflects that.

Moreover, to ensure that Mr. Schobinger has not shared any of Twitter's sensitive information either by transmitting hard copy documents or by word-of-mouth, Twitter also requests that Mr. Schobinger submit a declaration stating as much, which we would be happy to draft.

Let's work toward selecting a forensic analyst by this Friday, June 30. There are a number of competent ones in the area who we could retain. I will make myself available to connect with you before then if you would like to discuss any aspect of the protocol.

Thank you very much for your attention to this matter.


**Stefanie R. Moll**
**Morgan, Lewis & Bockius LLP**
1000 Louisiana Street, Suite 4000 | Houston, TX 77002-5005
Direct: +1.713.890.5780 | Main: +1.713.890.5000 | Fax: +1.713.890.5001
Assistant: Nanci Mohr | +1.713.890.5738 | nanci.mohr@morganlewis.com

1717 Main Street, Suite 3200 | Dallas, TX 75201-7347
Direct: +1.214.466.4113 | Main: +1.214.466.4000 | Fax: +1.214.466.4001
stefanie.moll@morganlewis.com | www.morganlewis.com

Morgan Lewis 150 YEARS

150 YEARS OF RAISING THE BAR

Learn More

# EXHIBIT 9

## PROPOSED FORENSIC PROTOCOL
## MARK SCHOBINGER

1.   Schobinger and Twitter (collectively, the "Parties") will select a third-party forensic analyst ("Forensic Analyst") to identify and remove certain documents and data from any personal computer, mobile device used to conduct Twitter business, electronic storage device, email account, and cloud storage account ("Devices and Accounts") that Schobinger used from April 25, 2023 to the present (the "Protocol").  The Parties shall select the Forensic Analyst no later than Friday, June 30, 2023.

2.   Schobinger will cooperate with the Forensic Analyst to carry out the terms of this Protocol, including by providing the Forensic Analyst with access to the Devices and Accounts.

3.   The Forensic Analyst shall create and maintain a forensic image of the Devices and Accounts before segregating, altering, or deleting any documents or data from the Devices and Accounts.

4.   The Forensic Analyst will search the Devices and Accounts for all emails originating from mschobinger@twitter.com and will provide the Parties' counsel with a file listing identifying all responsive emails.  The file listing will be treated as attorneys' eyes only.  The Forensic Analyst will make and provide to Twitter forensic copies of these emails and any attachments and the originals will be permanently deleted from the Devices and Accounts unless Schobinger objects and provides a good-faith, reasonable basis why such emails and attachments are personal in nature rather than proprietary to Twitter.

5.   The Forensic Analyst will search the Devices and Accounts for all documents that include "Twitter" in the filename or any metadata field of the document and will provide the Parties' counsel with a file listing identifying all responsive documents.  The file listing will be treated as attorneys' eyes only.  The Forensic Analyst will make and provide to Twitter forensic copies of these documents and the originals will be permanently deleted from the Devices and Accounts unless Schobinger objects and provides a good-faith, reasonable basis why such documents are personal in nature rather than proprietary to Twitter.

6.   Twitter will provide the Forensic Analyst with the MD#5 values of the documents that Schobinger downloaded in the weeks leading up to his resignation, as detailed in Exhibit 1, and the Forensic Analyst will search

for and, if found, make and provide to Twitter forensic copies of such documents and permanently delete the originals from the Devices and Accounts.

7.    The Forensic Analyst will search the Devices and Accounts for the folders and file that Schobinger uploaded to his Google Drive account in the months leading up to his resignation, as detailed in Exhibit 2, and the Forensic Analyst will search for and, if found, make and provide to Twitter forensic copies of such folders and file and permanently delete the originals from the Devices and Accounts unless Schobinger objects and provides a good-faith, reasonable basis for why such folders and file are personal in nature rather than proprietary to Twitter.

8.    After all documents and data set forth in paragraphs 4 through 7, and Exhibits 1 and 2, of this Protocol have been deleted from the Devices and Accounts, as identified in the Protocol, including any backups, shadow volumes, recycle bin contents, and free space, the Forensic Analyst will certify to the Parties' counsel that it completed the deletions pursuant to this Protocol.

9.    No later than one month after the Forensic Analyst certifies that it completed the deletions pursuant to this Protocol and provided to Twitter forensic copies of the documents and data set forth in paragraphs 4 through 7, and Exhibits 1 and 2, of this Protocol, the Forensic Analyst will permanently delete all forensic images in its possession and will certify to the Parties' counsel that it has deleted such forensic images.

10.   Twitter will cover the expense of Schobinger complying with this Protocol.

# EXHIBIT 1
# DOWNLOAD FILE NAMES

1.    TWTR_Lapse_Schedule_Report.zip

2.    TWTR_Grant_Award_052423.xlsx

3.    Phase One_ Comp Planning Master [March 2023].xlsx

4.    AON CONSULTING INC_Compensation Survey 22 - signed (1).pdf

5.    JobFamilyReport - 5_24_2023 9_6_20  AM.xlsx

6.    FAQ for Separated Twitter Employees.pdf

7.    FAQ for Separated Twitter Employees.docx

8.    A_C [POST CLOSE - DRAFT] Twitter acquisition_ Tweep FAQ - October 2022.pdf

9.    A_C [POST CLOSE - DRAFT] Twitter acquisition_ Tweep FAQ - October 2022.docx

10.   VestingSchedule (3).xlsx

11.   Client Attorney Privileged - France EE Listing.xlsx

12.   CR - Compensation Detail Report_Compton 05222023 2023-05-22 09_18 CDT.xlsx

13.   Go_COBRA FAQ .docx

14.   Go_COBRA FAQ  (2).docx

15.   Twitter Private Company Long-Term Incentive Programs and Strategy - October 2022 (1).pdf

16.   TWTR_GrantActivity_20230518 (1).xlsx

17.   TWTR_GrantActivity_20230518.xlsx

18.   2022 Annual Plan Legal Notice.pdf

19.   Twitter_Inc-SMM 1-1-2022.pdf

20.    401(k) Plan Highlights 2021.pdf

21.    401(k) FAQs .docx

22.    401(k) FAQs .pdf

23.    Twitter Inc SPD 1-1-2022.pdf

24.    document (2).pdf

25.    document (1).pdf

26.    TWTR_LapseSchedule_20230517 (1).zip

27.    TWTR_LapseSchedule_20230517.zip

28.    VestingSchedule (2).xlsx

29.    VestingSchedule (2).xlsx

30.    Execs - PRSU - Waiver of Performance Metrics - Considered Achieved.docx

31.    US RIF & Opt Outs who have not Signed Sep Agreements.xlsx

32.    NEW_WFH Policy (Twitter 2.0).docx

33.    VestingSchedule (2).xlsx

34.    PBP_FAQs.docx

35.    PBP_Examples of Mechanics.docx

36.    Twitter 2.0 - Compensation + Equity.pptx

37.    Twitter 2.0 Compensation One Pager.docx

38.    Restricted Stock Units.html

39.    PBP.html

40.    Base Salary.html

41.    Compensation cycles.html

42.    Payout.html

43. Target Quota Model.html

44. Revenue Share Model.html

45. Sales Incentive Plan.html

46. How we think about compensation.html

47. How we think about compensation.html

48. Our global approach to pay.html

49. Separation Agreement Request (Global) Responses (1).xlsx

50. Q1-2023 Sales Incentive (go_q1salesincentive) (2).xlsx

51. RGCD-Data-Validation-Report.pdf

52. RGCD-Data-Validation-Report.pdf

53. 2023_RGCD_Job_Catalogue.pdf

54. 2023_RGCD_Job_Catalogue.pdf

55. 2022_Radford_GCD_Functional_Job_Matrix (1).xlsx

56. 2022_Radford_GCD_Functional_Job_Matrix (1).xlsx

57. 2022_Radford_GCD_YOY_Mapping (1).xlsx

58. 2022_Radford_GCD_YOY_Mapping (1).xlsx

59. 2022_Radford_GCD_YOY_Mapping.xlsx

60. 2022_Radford_GCD_YOY_Mapping.xlsx

61. 2022_Radford_GCD_Roll_Up_Jobs_Detailed_Definitions.xlsx

62. 2022_Radford_GCD_Roll_Up_Jobs_Detailed_Definitions.xlsx

63. 2022_Radford_GCD_Roll_Up_Jobs_Definitions (1).xlsx

64. 2022_Radford_GCD_Roll_Up_Jobs_Definitions (1).xlsx

65. 2022_Radford_GCD_JobList_and_Descriptions (1).xlsx

66.    2022_Radford_GCD_JobList_and_Descriptions (1).xlsx

67.    2022_Radford_GCD_Job_Family_Descriptions.docx

68.    2022_Radford_GCD_Job_Family_Descriptions.docx

69.    2022_Radford_GCD_Functional_Job_Matrix.xlsx

70.    2022_Radford_GCD_Functional_Job_Matrix.xlsx

71.    2023_Radford_GCD_YOY_Job_Mapping.xlsx

72.    2023_Radford_GCD_YOY_Job_Mapping.xlsx

73.    2023_Radford_GCD_Job_Family_Descriptions.docx

74.    2023_Radford_GCD_Job_Family_Descriptions.docx

75.    2023-Radford_GCD_Functional_Job_Matrix.xlsx

76.    2023-Radford_GCD_Functional_Job_Matrix.xlsx

77.    JobFamilyReport - 5_8_2023 18_36_28  PM.xlsx

78.    JobFamilyReport - 5_8_2023 18_36_28  PM.xlsx

79.    Phase Two_ Equity Planning Master [April 2023] (1).xlsx

80.    Phase Two_ Equity Planning Master [April 2023] (1).xlsx

81.    2022 Market Pricing Enhancement Tool Development (Bianco).xlsx

82.    2022 Market Pricing Enhancement Tool Development (Bianco).xlsx

83.    Salary adjustment  CCT 2023 - TWITTER.XLSX

84.    Salary adjustment  CCT 2023 - TWITTER.XLSX

85.    TWTR_LapseSchedule_20230505.xlsx

86.    TWTR_LapseSchedule_20230505.xlsx

87.    Phase Two_ Equity Planning Master [April 2023].xlsx

88.    Phase Two_ Equity Planning Master [April 2023].xlsx

89.   Q1-2023 Sales Incentive (go_q1salesincentive) (1).xlsx

90.   Q1-2023 Sales Incentive (go_q1salesincentive) (1).xlsx

91.   CR - Compensation Detail Report_Compton 05052023 2023-05-05
      12_02 CDT.xlsx

92.   CR - Compensation Detail Report_Compton 05052023 2023-05-05
      12_02 CDT.xlsx

## EXHIBIT 2
## UPLOAD FILE AND FOLDER NAMES

1.    401k

2.    Benchmarking

3.    Comp Cmte Meetings

4.    Finals

5.    HR Transition 2022-2023

6.    Playbooks

7.    Projects

8.    Reports

9.    Go_COBRA FAQ .docx

# EXHIBIT 10

**Bramble, John**

---

| | |
|---|---|
| **From:** | Moll, Stefanie R. |
| **Sent:** | Thursday, June 29, 2023 4:57 PM |
| **To:** | Shannon Liss-Riordan |
| **Cc:** | Wallace, Thomas Cullen; Bramble, John; Bradley Manewith |
| **Subject:** | RE: Mark Schobinger Forensic Protocol |

Shannon,

Our preliminary forensic analysis shows that Mr. Schobinger improperly sent sensitive and highly confidential Twitter documents to his personal email address. He also uploaded confidential Twitter documents to his personal Google Drive account. He did this in the months, weeks, and days leading up to his resignation. His actions were in breach of Twitter's policies and there is no reason connected to company purposes or his work that would explain his actions. So while I appreciate Mr. Schobinger's unsworn representations that he no longer has these documents, the evidence demonstrates otherwise and we will ask a court to protect the information in those documents and folders if Mr. Schobinger is unwilling to do so on his own.

We understand your response below to mean that Mr. Schobinger will not be complying with the proposed protocol and that you will not be proposing a revised protocol. If that is incorrect, please let us know by Wednesday, July 5. Otherwise, please let us know by that date who at your office will be handling this matter in your absence since we will have no choice but to go to court next week.

Thank you,

**Stefanie R. Moll**
**Morgan, Lewis & Bockius LLP**
1000 Louisiana Street, Suite 4000 | Houston, TX 77002-5005
Direct: +1.713.890.5780 | Main: +1.713.890.5000 | Fax: +1.713.890.5001 | Mobile: +1.832.452.4737
stefanie.moll@morganlewis.com | www.morganlewis.com
Assistant: Nanci D. Mohr | +1.713.890.5738 | nanci.mohr@morganlewis.com



**150 YEARS OF RAISING THE BAR**

Learn More

---

**From:** Shannon Liss-Riordan <sliss@llrlaw.com>
**Sent:** Thursday, June 29, 2023 1:14 PM
**To:** Moll, Stefanie R. <stefanie.moll@morganlewis.com>
**Cc:** Bradley Manewith <bmanewith@llrlaw.com>; Bramble, John <john.bramble@morganlewis.com>; Wallace, Thomas Cullen <cullen.wallace@morganlewis.com>
**Subject:** RE: Mark Schobinger Forensic Protocol

[EXTERNAL EMAIL]
Stefanie -

As Mr. Schobinger explained, and I have reiterated on his behalf, he does not have any confidential sensitive files from Twitter.  I am leaving on vacation this weekend and will be away for two weeks, and he is also not available next week. We don't see what legal basis you have to force him to go through this protocol.

Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel: (617) 994-5800
Fax: (617) 994-5801
sliss@llrlaw.com
www.llrlaw.com

**From:** Moll, Stefanie R. <stefanie.moll@morganlewis.com>
**Sent:** Wednesday, June 28, 2023 3:18 PM
**To:** Shannon Liss-Riordan <sliss@llrlaw.com>
**Cc:** Bradley Manewith <bmanewith@llrlaw.com>; Bramble, John <john.bramble@morganlewis.com>; Wallace, Thomas Cullen <cullen.wallace@morganlewis.com>
**Subject:** Mark Schobinger Forensic Protocol

Shannon,

In follow up to our last conversation, I am attaching a draft forensic protocol.  The protocol contemplates that both sides will be involved in selecting a third-party forensic analyst to perform the analysis and that Twitter, of course, will cover the costs associated with Mr. Schobinger's compliance with the protocol.

The protocol is narrowly tailored and limited to Twitter documents that were most likely in Mr. Schobinger's possession when he resigned and later when we sent our preservation letter, particularly including documents that Mr. Schobinger accessed during the weeks leading up to his resignation and folders that Mr. Schobinger uploaded to his Google Drive during the months, weeks, and days leading up to his resignation, as reflected by our internal preliminary analysis.

As discussed during our call, many of these documents include highly sensitive compensation information and Mr. Schobinger's cooperation is necessary in connection with our regulatory requirements to investigate this matter. Consistent with the narrow scope of the protocol, however, we have no interest in viewing or accessing Mr. Schobinger's personal documents, including those related to his employment with Twitter.  The attached protocol reflects that.

Moreover, to ensure that Mr. Schobinger has not shared any of Twitter's sensitive information either by transmitting hard copy documents or by word-of-mouth, Twitter also requests that Mr. Schobinger submit a declaration stating as much, which we would be happy to draft.

Let's work toward selecting a forensic analyst by this Friday, June 30.  There are a number of competent ones in the area who we could retain.  I will make myself available to connect with you before then if you would like to discuss any aspect of the protocol.

Thank you very much for your attention to this matter.


**Stefanie R. Moll**
**Morgan, Lewis & Bockius LLP**
1000 Louisiana Street, Suite 4000 | Houston, TX 77002-5005
Direct: +1.713.890.5780 | Main: +1.713.890.5000 | Fax: +1.713.890.5001

Assistant: Nanci Mohr | +1.713.890.5738 | nanci.mohr@morganlewis.com

1717 Main Street, Suite 3200 | Dallas, TX 75201-7347
Direct: +1.214.466.4113 | Main: +1.214.466.4000 | Fax: +1.214.466.4001
stefanie.moll@morganlewis.com | www.morganlewis.com



150 YEARS OF RAISING THE BAR

Learn More

# EXHIBIT 11

## DOWNLOAD FILE NAMES

1.      TWTR_Lapse_Schedule_Report.zip

2.      TWTR_Grant_Award_052423.xlsx

3.      Phase One_ Comp Planning Master [March 2023].xlsx

4.      AON CONSULTING INC_Compensation Survey 22 - signed (1).pdf

5.      JobFamilyReport - 5_24_2023 9_6_20  AM.xlsx

6.      FAQ for Separated Twitter Employees.pdf

7.      FAQ for Separated Twitter Employees.docx

8.      A_C [POST CLOSE - DRAFT] Twitter acquisition_ Tweep FAQ -
        October 2022.pdf

9.      A_C [POST CLOSE - DRAFT] Twitter acquisition_ Tweep FAQ -
        October 2022.docx

10.     VestingSchedule (3).xlsx

11.     Client Attorney Privileged - France EE Listing.xlsx

12.     CR - Compensation Detail Report_Compton 05222023 2023-05-22
        09_18 CDT.xlsx

13.     Go_COBRA FAQ .docx

14.     Go_COBRA FAQ  (2).docx

15.     Twitter Private Company Long-Term Incentive Programs and
        Strategy - October 2022 (1).pdf

16.     TWTR_GrantActivity_20230518 (1).xlsx

17.     TWTR_GrantActivity_20230518.xlsx

18.     2022 Annual Plan Legal Notice.pdf

19.     Twitter_Inc-SMM 1-1-2022.pdf

20.     401(k) Plan Highlights 2021.pdf

21.    401(k) FAQs .docx

22.    401(k) FAQs .pdf

23.    Twitter Inc SPD 1-1-2022.pdf

24.    document (2).pdf

25.    document (1).pdf

26.    TWTR_LapseSchedule_20230517 (1).zip

27.    TWTR_LapseSchedule_20230517.zip

28.    VestingSchedule (2).xlsx

29.    VestingSchedule (2).xlsx

30.    Execs - PRSU - Waiver of Performance Metrics - Considered Achieved.docx

31.    US RIF & Opt Outs who have not Signed Sep Agreements.xlsx

32.    NEW_WFH Policy (Twitter 2.0).docx

33.    VestingSchedule (2).xlsx

34.    PBP_FAQs.docx

35.    PBP_Examples of Mechanics.docx

36.    Twitter 2.0 - Compensation + Equity.pptx

37.    Twitter 2.0 Compensation One Pager.docx

38.    Restricted Stock Units.html

39.    PBP.html

40.    Base Salary.html

41.    Compensation cycles.html

42.    Payout.html

43.    Target Quota Model.html

44.    Revenue Share Model.html

45.    Sales Incentive Plan.html

46.    How we think about compensation.html

47.    How we think about compensation.html

48.    Our global approach to pay.html

49.    Separation Agreement Request (Global) Responses (1).xlsx

50.    Q1-2023 Sales Incentive (go_q1salesincentive) (2).xlsx

51.    RGCD-Data-Validation-Report.pdf

52.    RGCD-Data-Validation-Report.pdf

53.    2023_RGCD_Job_Catalogue.pdf

54.    2023_RGCD_Job_Catalogue.pdf

55.    2022_Radford_GCD_Functional_Job_Matrix (1).xlsx

56.    2022_Radford_GCD_Functional_Job_Matrix (1).xlsx

57.    2022_Radford_GCD_YOY_Mapping (1).xlsx

58.    2022_Radford_GCD_YOY_Mapping (1).xlsx

59.    2022_Radford_GCD_YOY_Mapping.xlsx

60.    2022_Radford_GCD_YOY_Mapping.xlsx

61.    2022_Radford_GCD_Roll_Up_Jobs_Detailed_Definitions.xlsx

62.    2022_Radford_GCD_Roll_Up_Jobs_Detailed_Definitions.xlsx

63.    2022_Radford_GCD_Roll_Up_Jobs_Definitions (1).xlsx

64.    2022_Radford_GCD_Roll_Up_Jobs_Definitions (1).xlsx

65.    2022_Radford_GCD_JobList_and_Descriptions (1).xlsx

66.    2022_Radford_GCD_JobList_and_Descriptions (1).xlsx

67.   2022_Radford_GCD_Job_Family_Descriptions.docx

68.   2022_Radford_GCD_Job_Family_Descriptions.docx

69.   2022_Radford_GCD_Functional_Job_Matrix.xlsx

70.   2022_Radford_GCD_Functional_Job_Matrix.xlsx

71.   2023_Radford_GCD_YOY_Job_Mapping.xlsx

72.   2023_Radford_GCD_YOY_Job_Mapping.xlsx

73.   2023_Radford_GCD_Job_Family_Descriptions.docx

74.   2023_Radford_GCD_Job_Family_Descriptions.docx

75.   2023-Radford_GCD_Functional_Job_Matrix.xlsx

76.   2023-Radford_GCD_Functional_Job_Matrix.xlsx

77.   JobFamilyReport - 5_8_2023 18_36_28  PM.xlsx

78.   JobFamilyReport - 5_8_2023 18_36_28  PM.xlsx

79.   Phase Two_ Equity Planning Master [April 2023] (1).xlsx

80.   Phase Two_ Equity Planning Master [April 2023] (1).xlsx

81.   2022 Market Pricing Enhancement Tool Development (Bianco).xlsx

82.   2022 Market Pricing Enhancement Tool Development (Bianco).xlsx

83.   Salary adjustment  CCT 2023 - TWITTER.XLSX

84.   Salary adjustment  CCT 2023 - TWITTER.XLSX

85.   TWTR_LapseSchedule_20230505.xlsx

86.   TWTR_LapseSchedule_20230505.xlsx

87.   Phase Two_ Equity Planning Master [April 2023].xlsx

88.   Phase Two_ Equity Planning Master [April 2023].xlsx

89.   Q1-2023 Sales Incentive (go_q1salesincentive) (1).xlsx

90.   Q1-2023 Sales Incentive (go_q1salesincentive) (1).xlsx

91.   CR - Compensation Detail Report_Compton 05052023 2023-05-05
      12_02 CDT.xlsx

92.   CR - Compensation Detail Report_Compton 05052023 2023-05-05
      12_02 CDT.xlsx

# EXHIBIT 12

## <u>UPLOAD FOLDER NAMES</u>

1.    401k

2.    Benchmarking

3.    Comp Cmte Meetings

4.    Finals

5.    HR Transition 2022-2023

6.    Playbooks

7.    Projects

8.    Reports

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Nanci Mohr on behalf of Stefanie Moll
Bar No. 24002870
nanci.mohr@morganlewis.com
Envelope ID: 77280820
Filing Code Description: Petition
Filing Description: X Corp's Verified Original Petition and Application for
Temporary Restraining Order, Temporary Injunction and Permanent
Injunction-EV# 77280820
Status as of 7/7/2023 10:20 AM CST

Associated Case Party: X CORP., Successor in Interest to Twitter, Inc

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stefanie R.Moll | | stefanie.moll@morganlewis.com | 7/6/2023 10:39:46 PM | SENT |
| Thomas CullenWallace | | cullen.wallace@morganlewis.com | 7/6/2023 10:39:46 PM | SENT |
| John Bramble | | john.bramble@morganlewis.com | 7/6/2023 10:39:46 PM | SENT |
| Nanci Mohr | | nanci.mohr@morganlewis.com | 7/6/2023 10:39:46 PM | SENT |

23-1074-C395

CAUSE NO. _____

| | | |
|---|---|---|
| X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC. | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| *Plaintiff,* | §<br>§ | |
| v. | §<br>§ | WILLIAMSON COUNTY, TEXAS |
| MARK SCHOBINGER | §<br>§ | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

## **TEMPORARY RESTRAINING ORDER**

Plaintiff X Corp., successor in interest to Twitter, Inc. ("Twitter"), filed a Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction ("TRO Application") against Defendant Mark Schobinger ("Schobinger").  Having considered Twitter's TRO Application, the evidence attached thereto, and argument of counsel, the Court finds that the TRO Application shall be in all things **GRANTED**.

Based on the evidence and verified allegations in Twitter's TRO Application, the Court preliminarily finds that: (i) Schobinger received access to Twitter's confidential and sensitive information during his employment with Twitter; (ii) Schobinger downloaded documents containing Twitter's confidential and sensitive information and transmitted such documents to his personal email and personal Google Drive accounts during the months, weeks, and days before his employment ended; (iii) Schobinger also maintained on his personal Google Drive account a folder entitled "Work," with numerous subfolders relating to his work with Twitter; (iv) when confronted, Schobinger admitted to Twitter that he transmitted Twitter documents to his personal email and personal Google Drive accounts but further stated that he deleted such documents; (v) Schobinger admitted to

1

deleting at least some of these documents after receiving Twitter's preservation demand; (vi) Schobinger agreed to submit to a forensic review to confirm he deleted Twitter's information from his devices and accounts; (vii) after obtaining counsel, however, Schobinger reneged on his agreement to submit to a forensic review and refused to provide Twitter with any sworn statement that he actually deleted and did not disclose its confidential and sensitive information; and (viii) Schobinger is in a position to use such information to his benefit and to Twitter's and its employees' detriment.  Based on the foregoing, the Court finds that Twitter will suffer probable, imminent, and irreparable harm if the Court does not enter a temporary restraining order.

To preserve the status quo until a hearing on Twitter's Temporary Injunction Application, the Court **ORDERS** that Schobinger and all others acting in concert with him are restrained from:

a.    directly or indirectly possessing, using, or disclosing the documents and folders listed in Exhibits 1 and 2; and

b.    directly or indirectly possessing, using, or disclosing information in the documents and folders listed in Exhibits 1 and 2.

For the avoidance of doubt, this Order restrains neither Schobinger nor others acting in concert with Schobinger from seeking discovery from Twitter pursuant to the procedural rules of the court presiding over the putative class action lawsuit Schobinger filed against Twitter in the US District Court for the Northern District of California – San Francisco Division (the "Lawsuit"), or from using such discovery if obtained in the Lawsuit, nor does it restrain Twitter from asserting any objections to such discovery in the Lawsuit.

It is further **ORDERED** that Twitter file a bond in the amount of $_____ with the Clerk of the Court.

It is further **ORDERED** that Twitter's Temporary Injunction Application is set for hearing on July ___, 2023 at _____ a.m./p.m. in this Court.  The purpose of the hearing is to determine whether this temporary restraining order should be made a temporary injunction pending a full trial on the merits.

This Temporary Restraining Order expires on July ____, 2023.

**EXECUTED** this _____ day of _____, 2023, at _____ a.m./p.m.

_____
PRESIDING JUDGE

3

**EXHIBIT 1**
**DOWNLOAD FILE NAMES**

1. TWTR_Lapse_Schedule_Report.zip

2. TWTR_Grant_Award_052423.xlsx

3. Phase One_ Comp Planning Master [March 2023].xlsx

4. AON CONSULTING INC_Compensation Survey 22 - signed (1).pdf

5. JobFamilyReport - 5_24_2023 9_6_20 AM.xlsx

6. FAQ for Separated Twitter Employees.pdf

7. FAQ for Separated Twitter Employees.docx

8. A_C [POST CLOSE - DRAFT] Twitter acquisition_ Tweep FAQ - October 2022.pdf

9. A_C [POST CLOSE - DRAFT] Twitter acquisition_ Tweep FAQ - October 2022.docx

10. VestingSchedule (3).xlsx

11. Client Attorney Privileged - France EE Listing.xlsx

12. CR - Compensation Detail Report_Compton 05222023 2023-05-22 09_18 CDT.xlsx

13. Go_COBRA FAQ .docx

14. Go_COBRA FAQ  (2).docx

15. Twitter Private Company Long-Term Incentive Programs and Strategy - October 2022 (1).pdf

16. TWTR_GrantActivity_20230518 (1).xlsx

17. TWTR_GrantActivity_20230518.xlsx

18. 2022 Annual Plan Legal Notice.pdf

19. Twitter_Inc-SMM 1-1-2022.pdf

20. 401(k) Plan Highlights 2021.pdf

21. 401(k) FAQs .docx

22. 401(k) FAQs .pdf

23. Twitter Inc SPD 1-1-2022.pdf

24. document (2).pdf

25. document (1).pdf

26. TWTR_LapseSchedule_20230517 (1).zip

27. TWTR_LapseSchedule_20230517.zip

28. VestingSchedule (2).xlsx

29.  VestingSchedule (2).xlsx

30.  Execs - PRSU - Waiver of Performance Metrics - Considered Achieved.docx

31.  US RIF & Opt Outs who have not Signed Sep Agreements.xlsx

32.  NEW_WFH Policy (Twitter 2.0).docx

33.  VestingSchedule (2).xlsx

34.  PBP_FAQs.docx

35.  PBP_Examples of Mechanics.docx

36.  Twitter 2.0 - Compensation + Equity.pptx

37.  Twitter 2.0 Compensation One Pager.docx

38.  Restricted Stock Units.html

39.  PBP.html

40.  Base Salary.html

41.  Compensation cycles.html

42.  Payout.html

43.  Target Quota Model.html

44.  Revenue Share Model.html

45.  Sales Incentive Plan.html

46.  How we think about compensation.html

47.  How we think about compensation.html

48.  Our global approach to pay.html

49.  Separation Agreement Request (Global) Responses (1).xlsx

50.  Q1-2023 Sales Incentive (go_q1salesincentive) (2).xlsx

51.  RGCD-Data-Validation-Report.pdf

52.  RGCD-Data-Validation-Report.pdf

53.  2023_RGCD_Job_Catalogue.pdf

54.  2023_RGCD_Job_Catalogue.pdf

55.  2022_Radford_GCD_Functional_Job_Matrix (1).xlsx

56.  2022_Radford_GCD_Functional_Job_Matrix (1).xlsx

57.  2022_Radford_GCD_YOY_Mapping (1).xlsx

58.  2022_Radford_GCD_YOY_Mapping (1).xlsx

59.  2022_Radford_GCD_YOY_Mapping.xlsx

60.  2022_Radford_GCD_YOY_Mapping.xlsx

61.   2022_Radford_GCD_Roll_Up_Jobs_Detailed_Definitions.xlsx

62.   2022_Radford_GCD_Roll_Up_Jobs_Detailed_Definitions.xlsx

63.   2022_Radford_GCD_Roll_Up_Jobs_Definitions (1).xlsx

64.   2022_Radford_GCD_Roll_Up_Jobs_Definitions (1).xlsx

65.   2022_Radford_GCD_JobList_and_Descriptions (1).xlsx

66.   2022_Radford_GCD_JobList_and_Descriptions (1).xlsx

67.   2022_Radford_GCD_Job_Family_Descriptions.docx

68.   2022_Radford_GCD_Job_Family_Descriptions.docx

69.   2022_Radford_GCD_Functional_Job_Matrix.xlsx

70.   2022_Radford_GCD_Functional_Job_Matrix.xlsx

71.   2023_Radford_GCD_YOY_Job_Mapping.xlsx

72.   2023_Radford_GCD_YOY_Job_Mapping.xlsx

73.   2023_Radford_GCD_Job_Family_Descriptions.docx

74.   2023_Radford_GCD_Job_Family_Descriptions.docx

75.   2023-Radford_GCD_Functional_Job_Matrix.xlsx

76.   2023-Radford_GCD_Functional_Job_Matrix.xlsx

77.   JobFamilyReport - 5_8_2023 18_36_28  PM.xlsx

78.   JobFamilyReport - 5_8_2023 18_36_28  PM.xlsx

79.   Phase Two_ Equity Planning Master [April 2023] (1).xlsx

80.   Phase Two_ Equity Planning Master [April 2023] (1).xlsx

81.   2022 Market Pricing Enhancement Tool Development (Bianco).xlsx

82.   2022 Market Pricing Enhancement Tool Development (Bianco).xlsx

83.   Salary adjustment  CCT 2023 - TWITTER.XLSX

84.   Salary adjustment  CCT 2023 - TWITTER.XLSX

85.   TWTR_LapseSchedule_20230505.xlsx

86.   TWTR_LapseSchedule_20230505.xlsx

87.   Phase Two_ Equity Planning Master [April 2023].xlsx

88.   Phase Two_ Equity Planning Master [April 2023].xlsx

89.   Q1-2023 Sales Incentive (go_q1salesincentive) (1).xlsx

90.   Q1-2023 Sales Incentive (go_q1salesincentive) (1).xlsx

91.   CR - Compensation Detail Report_Compton 05052023 2023-05-05 12_02
      CDT.xlsx

92.    CR - Compensation Detail Report_Compton 05052023 2023-05-05 12_02
       CDT.xlsx

## **EXHIBIT 2**
## **FOLDER NAMES**

1.  401k
2.  Benchmarking
3.  Comp Cmte Meetings
4.  Finals
5.  HR Transition 2022-2023
6.  Playbooks
7.  Projects
8.  Reports

8

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Nanci Mohr on behalf of Stefanie Moll
Bar No. 24002870
nanci.mohr@morganlewis.com
Envelope ID: 77280820
Filing Code Description: Petition
Filing Description: X Corp's Verified Original Petition and Application for
Temporary Restraining Order, Temporary Injunction and Permanent
Injunction-EV# 77280820
Status as of 7/7/2023 10:20 AM CST

Associated Case Party: X CORP., Successor in Interest to Twitter, Inc

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stefanie R.Moll | | stefanie.moll@morganlewis.com | 7/6/2023 10:39:46 PM | SENT |
| Thomas CullenWallace | | cullen.wallace@morganlewis.com | 7/6/2023 10:39:46 PM | SENT |
| John Bramble | | john.bramble@morganlewis.com | 7/6/2023 10:39:46 PM | SENT |
| Nanci Mohr | | nanci.mohr@morganlewis.com | 7/6/2023 10:39:46 PM | SENT |

Filed: 9/29/2023 11 AM
Lisa David, District Clerk
Williamson County, Texas
Brittany Davis

CAUSE NO. 23-1074-C395

| | | |
|---|---|---|
| X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC. | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § § § | |
| v. | § § | WILLIAMSON COUNTY, TEXAS |
| MARK SCHOBINGER | § § § | |
| *Defendant.* | § | 395th JUDICIAL DISTRICT |

## X CORP.'S MOTION FOR EXPEDITED DISCOVERY

To prepare for its Temporary Injunction hearing, Plaintiff X Corp., successor in interest to Twitter, Inc. ("Twitter"), files this Motion for Expedited Discovery.

## PRELIMINARY STATEMENT

Through this litigation, Twitter seeks temporary injunctive relief against Plaintiff Mark Schobinger ("Schobinger") based on the verified allegations included in its Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction ("TRO Application"). As detailed in Twitter's TRO Application: (i) Schobinger received access to Twitter's confidential and sensitive information under confidentiality and other obligations detailed in his Employee Invention Assignment and Confidentiality Agreement ("Agreement"); (ii) Schobinger downloaded documents containing Twitter's confidential and sensitive information and transmitted such documents to his personal email and personal Google Drive accounts during the months, weeks, and days before his employment with Twitter ended; (iii) Schobinger also maintained on his personal Google Drive account a folder entitled "Work," with numerous subfolders relating to his work at Twitter; (iv) when confronted, Schobinger admitted to Twitter that he transmitted Twitter documents to his personal email and personal Google

Copy from re:SearchTX

Drive accounts but further stated that he deleted such documents; (v) Schobinger admitted to deleting at least some of these documents after receiving a preservation demand from Twitter; (vi) Schobinger agreed to submit to a forensic review to confirm he deleted Twitter's information from his personal devices and accounts; (vii) after obtaining counsel, however, Schobinger reneged on his agreement to submit to a forensic review and refused to provide Twitter with any sworn assurances that he actually deleted and did not disclose Twitter's confidential and sensitive information; and (viii) among other reasons, as the named plaintiff in a class action lawsuit relating to information Schobinger sent himself, Schobinger is in a position to use Twitter's information to his benefit and to Twitter's and its employees' detriment.   Contemporaneously with filing its TRO Application, Twitter files this Expedited Discovery Motion, seeking limited, expedited discovery to prepare for the hearing on its Temporary Injunction Application.

## ARGUMENT AND AUTHORITIES

The Texas Rules of Civil Procedure provide courts with broad discretion to tailor discovery based on the issues in the case.  In particular, Rule 190.4 states that courts may "order that discovery be conducted in accordance with a discovery control plan tailored to the circumstances of the specific suit."  Tex. R. Civ. P. 190.4(a); *see also In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 182 (Tex. 1999) (citing Rule 190.4 and noting that courts may implement discovery control plans to resolve discrete issues).   Because parties seeking expedited injunctive relief often need discovery under expedited timeframes, "[p]arties frequently seek, and trial courts order, expedited discovery[.]"  *In re Nat'l Lloyds Ins. Co.*, 13-15-00390-CV, 2015 WL 6759153, at *4 (Tex. App.—Corpus Christi Nov. 3, 2015, no pet.) (citing *In re Tex. Health Res.*, No. 05–15–00813–CV, 2015 WL 5029272, at *2 (Tex. App.—Dallas Aug. 26, 2015, orig. proceeding) ("The trial court

Copy from re:SearchTX

ordered that the discovery take place before the expiration of the temporary restraining order.")).

Through this litigation, Twitter seeks expedited injunctive relief against Schobinger, including a temporary injunction that would issue after a hearing and the expiration of any temporary restraining order.  As demonstrated by the verified allegations in Twitter's TRO Application, Schobinger downloaded documents containing Twitter's confidential and sensitive information and transmitted such documents to his personal email and personal Google Drive accounts during the months, weeks, and days before his employment with Twitter ended.  What remains unclear, however, is the extent to which Schobinger and others acting in concert with him remain in possession of Twitter's documents, the extent to which Schobinger and others acting in concert with him have used or are planning to use Twitter's documents, and the extent to which Schobinger and others acting in concert with him should be enjoined.  Twitter accordingly seeks discovery on these discrete issues before the hearing on its Temporary Injunction Application.

The timeframe generally prescribed for parties to conduct typical discovery under the Texas Rules of Civil Procedure begins after the parties exchange initial disclosures, which takes place 30 days after the defendant files an answer.  *See* Tex. R. Civ. P. 190.2(b)(1) ("All discovery must be conducted during the discovery period, which begins when the first initial disclosures are due."); *see also* Tex. R. Civ. P. 194.2(a) ("A party must make the initial disclosures within 30 days after the filing of the first answer or general appearance.").  Twitter accordingly requests that the Court exercise its discretion to allow it to conduct expedited discovery in advance of what Rule 194 allows and sufficiently in advance of the Temporary Injunction hearing—limited to serving the three requests for

Copy from re:SearchTX

production identified in Exhibit 1 and taking a limited three-hour deposition of Schobinger based on the topics listed in Exhibit 2. Allowing Twitter to conduct this limited, expedited discovery will provide for a more efficient temporary injunction hearing, thereby serving the interests of the parties and the Court. Therefore, good cause exists.

## **PRAYER**

To prepare for its Temporary Injunction hearing, Twitter respectfully requests that the Court enter an order:

(1) permitting Twitter to serve on Schobinger after the conclusion of Twitter's Temporary Restraining Order hearing the three requests for production listed in Exhibit 1;

(2) requiring Schobinger to respond to those requests for production, and produce responsive documents, within four calendar days of service; and

(3) requiring Schobinger to sit for a deposition not to exceed three hours and limited to the topics identified in Exhibit 2 no later than four calendar days before the hearing on Twitter's Application for Temporary Injunction.

Dated: July 6, 2023                   Respectfully submitted,


                                      */s/ Stefanie R. Moll*
                                      **Stefanie R. Moll**
                                      State Bar No. 24002870
                                      Email: stefanie.moll@morganlewis.com
                                      **T. Cullen Wallace**
                                      State Bar No. 24072412
                                      Email: cullen.wallace@morganlewis.com
                                      **John P. Bramble**
                                      State Bar No. 24101544
                                      Email: john.bramble@morganlewis.com
                                      MORGAN LEWIS & BOCKIUS LLP
                                      1000 Louisiana Street, Suite 4000
                                      Houston, TX 77002
                                      T: 713.890.5000
                                      F: 713.890.5001

Copy from re:SearchTX

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 7, 2023, I will serve this document on Defendant Mark Schobinger's counsel, Shannon Liss-Riordan, by email.

<u>        */s/ John P. Bramble*        </u>
John P. Bramble

5

Copy from re:SearchTX

# EXHIBIT 1

Copy from re:SearchTX

**EXHIBIT 1**
**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1**: Produce a copy of any document identified in Exhibit 1-A and any folder identified in Exhibit 1-B that remains in the possession, custody, or control of you or any of your agents or representatives.

    **ANSWER:**

**REQUEST FOR PRODUCTION NO. 2**: Produce all Communications (defined to include any transmittal of information, including, but not be limited to, letters, text messages, electronic mail, and instant messages, including messages on social-networking or other messaging applications or platforms) transmitting any document identified in Exhibit 1-A or any folder identified in Exhibit 1-B.

    **ANSWER:**

**REQUEST FOR PRODUCTION NO. 3**: Produce all Communications (as defined above) transmitting information contained in any document identified in Exhibit 1-A and any folder identified in Exhibit 1-B.

    **ANSWER:**

6

Copy from re:SearchTX

# EXHIBIT 1-A

Copy from re:SearchTX

## **DOWNLOAD FILE NAMES**

1.   TWTR_Lapse_Schedule_Report.zip

2.   TWTR_Grant_Award_052423.xlsx

3.   Phase One_ Comp Planning Master [March 2023].xlsx

4.   AON CONSULTING INC_Compensation Survey 22 - signed (1).pdf

5.   JobFamilyReport - 5_24_2023 9_6_20  AM.xlsx

6.   FAQ for Separated Twitter Employees.pdf

7.   FAQ for Separated Twitter Employees.docx

8.   A_C [POST CLOSE - DRAFT] Twitter acquisition_ Tweep FAQ - October 2022.pdf

9.   A_C [POST CLOSE - DRAFT] Twitter acquisition_ Tweep FAQ - October 2022.docx

10.  VestingSchedule (3).xlsx

11.  Client Attorney Privileged - France EE Listing.xlsx

12.  CR - Compensation Detail Report_Compton 05222023 2023-05-22 09_18 CDT.xlsx

13.  Go_COBRA FAQ .docx

14.  Go_COBRA FAQ  (2).docx

15.  Twitter Private Company Long-Term Incentive Programs and Strategy - October 2022 (1).pdf

16.  TWTR_GrantActivity_20230518 (1).xlsx

17.  TWTR_GrantActivity_20230518.xlsx

18.  2022 Annual Plan Legal Notice.pdf

19.  Twitter_Inc-SMM 1-1-2022.pdf

20.  401(k) Plan Highlights 2021.pdf

21.   401(k) FAQs .docx

22.   401(k) FAQs .pdf

23.   Twitter Inc SPD 1-1-2022.pdf

24.   document (2).pdf

25.   document (1).pdf

26.   TWTR_LapseSchedule_20230517 (1).zip

27.   TWTR_LapseSchedule_20230517.zip

28.   VestingSchedule (2).xlsx

29.   VestingSchedule (2).xlsx

30.   Execs - PRSU - Waiver of Performance Metrics - Considered Achieved.docx

31.   US RIF & Opt Outs who have not Signed Sep Agreements.xlsx

32.   NEW_WFH Policy (Twitter 2.0).docx

33.   VestingSchedule (2).xlsx

34.   PBP_FAQs.docx

35.   PBP_Examples of Mechanics.docx

36.   Twitter 2.0 - Compensation + Equity.pptx

37.   Twitter 2.0 Compensation One Pager.docx

38.   Restricted Stock Units.html

39.   PBP.html

40.   Base Salary.html

41.   Compensation cycles.html

42.   Payout.html

43.   Target Quota Model.html

44.   Revenue Share Model.html

45.   Sales Incentive Plan.html

46.   How we think about compensation.html

47.   How we think about compensation.html

48.   Our global approach to pay.html

49.   Separation Agreement Request (Global) Responses (1).xlsx

50.   Q1-2023 Sales Incentive (go_q1salesincentive) (2).xlsx

51.   RGCD-Data-Validation-Report.pdf

52.   RGCD-Data-Validation-Report.pdf

53.   2023_RGCD_Job_Catalogue.pdf

54.   2023_RGCD_Job_Catalogue.pdf

55.   2022_Radford_GCD_Functional_Job_Matrix (1).xlsx

56.   2022_Radford_GCD_Functional_Job_Matrix (1).xlsx

57.   2022_Radford_GCD_YOY_Mapping (1).xlsx

58.   2022_Radford_GCD_YOY_Mapping (1).xlsx

59.   2022_Radford_GCD_YOY_Mapping.xlsx

60.   2022_Radford_GCD_YOY_Mapping.xlsx

61.   2022_Radford_GCD_Roll_Up_Jobs_Detailed_Definitions.xlsx

62.   2022_Radford_GCD_Roll_Up_Jobs_Detailed_Definitions.xlsx

63.   2022_Radford_GCD_Roll_Up_Jobs_Definitions (1).xlsx

64.   2022_Radford_GCD_Roll_Up_Jobs_Definitions (1).xlsx

65.   2022_Radford_GCD_JobList_and_Descriptions (1).xlsx

66.   2022_Radford_GCD_JobList_and_Descriptions (1).xlsx

67.  2022_Radford_GCD_Job_Family_Descriptions.docx

68.  2022_Radford_GCD_Job_Family_Descriptions.docx

69.  2022_Radford_GCD_Functional_Job_Matrix.xlsx

70.  2022_Radford_GCD_Functional_Job_Matrix.xlsx

71.  2023_Radford_GCD_YOY_Job_Mapping.xlsx

72.  2023_Radford_GCD_YOY_Job_Mapping.xlsx

73.  2023_Radford_GCD_Job_Family_Descriptions.docx

74.  2023_Radford_GCD_Job_Family_Descriptions.docx

75.  2023-Radford_GCD_Functional_Job_Matrix.xlsx

76.  2023-Radford_GCD_Functional_Job_Matrix.xlsx

77.  JobFamilyReport - 5_8_2023 18_36_28  PM.xlsx

78.  JobFamilyReport - 5_8_2023 18_36_28  PM.xlsx

79.  Phase Two_ Equity Planning Master [April 2023] (1).xlsx

80.  Phase Two_ Equity Planning Master [April 2023] (1).xlsx

81.  2022 Market Pricing Enhancement Tool Development (Bianco).xlsx

82.  2022 Market Pricing Enhancement Tool Development (Bianco).xlsx

83.  Salary adjustment  CCT 2023 - TWITTER.XLSX

84.  Salary adjustment  CCT 2023 - TWITTER.XLSX

85.  TWTR_LapseSchedule_20230505.xlsx

86.  TWTR_LapseSchedule_20230505.xlsx

87.  Phase Two_ Equity Planning Master [April 2023].xlsx

88.  Phase Two_ Equity Planning Master [April 2023].xlsx

89.  Q1-2023 Sales Incentive (go_q1salesincentive) (1).xlsx

Copy from re:SearchTX

90.   Q1-2023 Sales Incentive (go_q1salesincentive) (1).xlsx

91.   CR - Compensation Detail Report_Compton 05052023 2023-05-05
      12_02 CDT.xlsx

92.   CR - Compensation Detail Report_Compton 05052023 2023-05-05
      12_02 CDT.xlsx

Copy from re:SearchTX

# EXHIBIT 1-B

Copy from re:SearchTX

## UPLOAD FOLDER NAMES

1.   401k

2.   Benchmarking

3.   Comp Cmte Meetings

4.   Finals

5.   HR Transition 2022-2023

6.   Playbooks

7.   Projects

8.   Reports

Copy from re:SearchTX

# EXHIBIT 2

Copy from re:SearchTX

## EXHIBIT 2
## MATTERS ON WHICH EXAMINATION IS REQUESTED

1.      The allegations and cause of action included in Twitter's TRO Application.

2.      Any document or folder (including the documents in any such folder) that Schobinger produces pursuant to the Order Granting Expedited Discovery.

3.      The documents listed Exhibit 1-A.

4.      The folders listed in Exhibit 1-B.

5.      Schobinger's retention of any Twitter document following the end of his employment with Twitter.

6.      Schobinger's deletion of any Twitter document between May 1, 2023, and present.

7.      Schobinger's transmission of any Twitter document to any person between November 2022 and present.

8.      Schobinger's Employee Invention Assignment and Confidentiality Agreement.

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Nanci Mohr on behalf of Stefanie Moll
Bar No. 24002870
nanci.mohr@morganlewis.com
Envelope ID: 77291386
Filing Code Description: Motion (No Fee)
Filing Description: X Corp.'s Motion for Expedited Discovery, filed by Atty.
Stefanie Moll, Env. #77291386
Status as of 7/7/2023 10:48 AM CST

Associated Case Party: X CORP., Successor in Interest to Twitter, Inc

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Thomas CullenWallace | | cullen.wallace@morganlewis.com | 7/7/2023 10:41:56 AM | SENT |
| Stefanie R.Moll | | stefanie.moll@morganlewis.com | 7/7/2023 10:41:56 AM | SENT |
| Nanci Mohr | | nanci.mohr@morganlewis.com | 7/7/2023 10:41:56 AM | SENT |
| John Bramble | | john.bramble@morganlewis.com | 7/7/2023 10:41:56 AM | SENT |

Copy from re:SearchTX

CAUSE NO. 23-1074-C395 _____

| | | |
|---|---|---|
| X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC. | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § § | |
| v. | § § | WILLIAMSON COUNTY, TEXAS |
| MARK SCHOBINGER | § § § | |
| *Defendant.* | § | 395th ____ JUDICIAL DISTRICT |

## ORDER

On this day, the Court considered the Motion for Expedited Discovery filed by Plaintiff X Corp., successor in interest to Twitter, Inc. ("Twitter"). Having considered Twitter's Motion for Expedited Discovery, any response thereto, and argument of counsel, the Court finds that Twitter's Motion for Expedited Discovery shall be in all things **GRANTED**. Therefore, it is **ORDERED**:

(1) Twitter may serve on Defendant Mark Schobinger ("Schobinger") after the conclusion of Twitter's Temporary Restraining Order hearing the three requests for production listed in Exhibit 1 to Twitter's Motion for Expedited Discovery;

(2) Schobinger must respond to Twitter's requests for production, and produce responsive documents, within four calendar days of service; and

(3) Schobinger must sit for a deposition not to exceed three hours and limited to the topics identified in Exhibit 2 to Twitter's Motion for Expedited Discovery no later than four calendar days before the hearing on Twitter's Application for Temporary Injunction.

Signed on July ___, 2023.

_____
PRESIDING JUDGE

Envelope# 77291386

Copy from re:SearchTX

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nanci Mohr on behalf of Stefanie Moll
Bar No. 24002870
nanci.mohr@morganlewis.com
Envelope ID: 77291386
Filing Code Description: Motion (No Fee)
Filing Description: X Corp.'s Motion for Expedited Discovery, filed by Atty. Stefanie Moll, Env. #77291386
Status as of 7/7/2023 10:48 AM CST

Associated Case Party: X CORP., Successor in Interest to Twitter, Inc

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Thomas CullenWallace | | cullen.wallace@morganlewis.com | 7/7/2023 10:41:56 AM | SENT |
| Stefanie R.Moll | | stefanie.moll@morganlewis.com | 7/7/2023 10:41:56 AM | SENT |
| Nanci Mohr | | nanci.mohr@morganlewis.com | 7/7/2023 10:41:56 AM | SENT |
| John Bramble | | john.bramble@morganlewis.com | 7/7/2023 10:41:56 AM | SENT |

Copy from re:SearchTX

Filed 7/12/2023 5:56 PM
Lisa David, District Clerk
Williamson County, Texas
Angela Garcia

**IN THE DISTRICT COURT OF WILLIAMSON COUNTY, TEXAS**
**395TH JUDICIAL DISTRICT COURT**

X CORP., SUCCESSOR IN INTEREST TO
TWITTER, INC.

                    Plaintiff,

          v.

MARK SCHOBINGER

                    Defendant.

C.A. No. 23-1074-C395

**DEFENDANT MARK SCHOBINGER'S**
**NOTICE OF FILING FOR REMOVAL OF ACTION**

          PLEASE TAKE NOTICE that Defendant Mark Schobinger has, pursuant to federal law,

filed with the clerk of the United States District Court for the Western District of Texas (Austin)

its Notice of Removal and supporting exhibits, a copy of which is attached as Exhibit A, and that

is action is removed to the United States District Court as of July 11, 223. By virtue of this

removal, no further proceedings before this Court are permitted. See 28 U.S.C. § 1446(d).

Dated: July 7, 2023                    Respectfully Submitted,

                                       MARK SCHOBINGER

                                       /s/ Drew Herrmann
                                       Drew N. Herrmann, Texas Bar No. 24086523
                                       drew@herrmannlaw.com
                                       HERRMANN LAW, PLLC
                                       801 Cherry St., Suite 2365
                                       Fort Worth, TX 76102
                                       Phone: 817-479-9229
                                       Fax: 817-840-5102

                                       -AND-

Envelope# 77419577

Shannon Liss-Riordan (pro hac vice forthcoming)
Bradley Manewith (pro hac vice forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com
bmanewith@llrlaw.com

## CERTIFICATE OF SERVICE

I certify that on July 11, 2023 the above document will be filed via CM/ECF, which will

cause a copy to be served on all counsel of record. Moreover, I will cause the foregoing

document to be served by email and first class mail on counsel for X Corp. at the following

addresses:

Stefanie R. Moll
State Bar No. 24002870
Email: stefanie.moll@morganlewis.com
T. Cullen Wallace
State Bar No. 24072412
Email: cullen.wallace@morganlewis.com
John P. Bramble
State Bar No. 24101544
Email: john.bramble@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T: 713.890.5000
F: 713.890.5001

/s/ Drew N. Herrmann
Drew N. Herrmann

# Exhibit A

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC. <br><br>             Plaintiff, <br><br>     v. <br><br> MARK SCHOBINGER <br><br>             Defendant. | C.A. No. 1:23-cv-778 |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § 1132, 28 U.S.C. §1441 and 28 U.S.C. §1446, Defendant Mark Schobinger hereby removes the above-captioned action to this Court from the District Court of Williamson County, Texas – 395th Judicial District Court.

1.     Mark Schobinger is the Defendants in the above-captioned matter. Mr. Schobinger has not been served in this matter.

2.     Pursuant to 28 U.S.C. §1446(a), Defendant attaches to this Notice a copy of the Complaint, as Exhibit A.

3.     This case is removable under 28 U.S.C. § 1441(b) because Mr. Schobinger is a citizen of Texas, while Plaintiff X Corp. is a Nevada corporation, thereby satisfying the requirements of 28 U.S.C. § 1332 that the parties are citizens of different states.

4.     Moreover, 28 U.S.C. § 1441(b)(2) is inapplicable because Mr. Schobinger has not been served in this matter.  Numerous district courts in this circuit have applied <u>Texas Brine Co. v. American Arbitration Assoc., Inc.</u>, 955 F.3d 482 (5th Cir. 2020)  to find that § 1441(b)(2) does not preclude snap removals by in-state defendants before they have been properly served."

Midwest Health Group, LLC v. eMDs, Inc., 2020 WL 6580446, at *3 (W.D. Tex. Nov. 10, 2020)

(citing Mirman Grp., LLC v. Michaels Stores Procurement Co., 2020 WL 5645217, at *1 (N.D.

Tex. Sept. 22, 2020); Baker v. Bell Textron, Inc., 2020 WL 5513431, at *7 (N.D. Tex. Sept. 14,

2020); Latex Constr. Co. v . Nexus Gas Transmission, LLC, 2020 WL 3962247, at *6 (S.D. Tex.

July 13, 2020)).

5.      Additionally, the amount in controversy exceeds $75,000. Specifically, Plaintiff

seeks an injunction to preclude Defendant from using allegedly confidential information in

connection with the federal class action lawsuit he filed, Schobinger v. Twitter, Inc., Case No.

3:23-cv-3007 (N.D. Cal.). The value of Mr. Schobinger's class claims exceeds $5 million. (Ex. B

– Federal Complaint.)

Dated: July 7, 2023                 Respectfully Submitted,

                                    MARK SCHOBINGER

                                    /s/ Drew Herrmann
                                    Drew N. Herrmann, Texas Bar No. 24086523
                                    drew@herrmannlaw.com
                                    HERRMANN LAW, PLLC
                                    801 Cherry St., Suite 2365
                                    Fort Worth, TX 76102
                                    Phone: 817-479-9229
                                    Fax: 817-840-5102

                                    -AND-

                                    Shannon Liss-Riordan (pro hac vice forthcoming)
                                    Bradley Manewith (pro hac vice forthcoming)
                                    LICHTEN & LISS-RIORDAN, P.C.
                                    729 Boylston Street, Suite 2000
                                    Boston, MA 02116
                                    (617) 994-5800
                                    sliss@llrlaw.com
                                    bmanewith@llrlaw.com

## CERTIFICATE OF SERVICE

I certify that on July 11, 2023 the above document will be filed via CM/ECF, which will cause a copy to be served on all counsel of record. Moreover, I will cause the foregoing document to be served by email and first class mail on counsel for X Corp. at the following addresses:

Stefanie R. Moll
State Bar No. 24002870
Email: stefanie.moll@morganlewis.com
T. Cullen Wallace
State Bar No. 24072412
Email: cullen.wallace@morganlewis.com
John P. Bramble
State Bar No. 24101544
Email: john.bramble@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T: 713.890.5000
F: 713.890.5001

/s/ Drew N. Herrmann
Drew N. Herrmann

23-1074-C395

CAUSE NO. _____

| | | |
|---|---|---|
| X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC. | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| *Plaintiff,* | §<br>§ | |
| v. | § | WILLIAMSON COUNTY, TEXAS |
| MARK SCHOBINGER | §<br>§ | Williamson County - 395th Judicial District Court |
| *Defendant.* | §<br>§ | _____ JUDICIAL DISTRICT |

### X CORP.'S VERIFIED ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

Plaintiff X Corp., successor in interest to Twitter, Inc. ("Twitter"), files this Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction against Defendant Mark Schobinger ("Schobinger").

### **INTRODUCTION**

1. Schobinger was Head of Compensation and Benefits at Twitter until his recent resignation on May 20, 2023. In this role, Schobinger had access to Twitter's most sensitive and confidential information concerning its employees' compensation. Accordingly, at the outset of his employment with Twitter, Schobinger signed an Employee Invention Assignment and Confidentiality Agreement (the "Agreement"), under which he agreed to, among other things, refrain from using or disclosing Twitter's confidential information and to hold same in the strictest confidence, return all Twitter property (including documents and information) upon separating from Twitter or upon Twitter's request, prevent any unauthorized use or disclosure of Twitter's confidential information, and cooperate with Twitter, including by providing a sworn declaration, to confirm the return of property and information. Despite his contractual and fiduciary

1

obligations, both before and shortly after announcing his resignation, Schobinger accessed Twitter documents containing confidential and sensitive information and sent or uploaded certain of such documents to his personal email and personal Google Drive accounts. These documents include, among others, Twitter's Compensation Detail Report, which contains personal identifying and compensation information for **2,251** Twitter employees worldwide and triggered an investigation pursuant to regulatory requirements all over the world given the highly sensitive compensation data involved. In addition to containing numerous lines of personal and confidential data concerning Twitter's employees, the Compensation Detail Report also contains information regarding employees' participation in Twitter's Performance Bonus Plan ("PBP").[1]

2.      Because Schobinger has absolutely no legal right to retain Twitter's highly sensitive and confidential information and taking such information violates his Agreement and the privacy rights of Twitter employees, Twitter sent Schobinger a letter on June 13, 2023, reminding him of his nondisclosure obligations under the Agreement, demanding that he preserve and not delete evidence in light of this potential litigation, requesting that he identify all Twitter documents in his possession and the individuals and entities with whom he shared or disclosed any such documents, demanding the return all such documents to Twitter human resources, requesting that he provide a declaration stating that he returned all Twitter documents and information, and asking Schobinger to submit his personal devices to a forensic review to confirm that no further Twitter confidential information remains on those devices. Schobinger responded that

---

[1] The Compensation Detail Report, among other things, also includes the following information on the 2,251 Twitter employees worldwide: names, employee IDs, work locations, length of service, manager names, leave of absence dates, email addresses, salary ranges, total and annualized base pay, restricted stock unit ("RSU") options information (total granted, total vested, total unvested, percentages unvested), year to date equity granted, bonus plan eligibility, and bonus plan target percentage.

same day, by letter and phone, informing Twitter that while he allegedly deleted Twitter's documents, which is a clear breach of his preservation obligations under applicable law and was also directly contrary to Twitter's request, he would nevertheless be "happy" to submit to a forensic review to confirm that he no longer possessed Twitter's documents.

3.      While working to coordinate this forensic review with Schobinger, Twitter received an email on June 16 from a lawyer representing Schobinger, informing Twitter that Schobinger would no longer submit to a forensic review despite his prior agreement to do so.  On June 20, just four days later, Schobinger filed a class action lawsuit in the US District Court for the Northern District of California, San Francisco Division, naming himself as the sole class representative (the "California Lawsuit").  In the California Lawsuit, Schobinger alleges that Twitter failed to properly pay him and a class of alleged former and current employees bonuses under Twitter's PBP. While Schobinger's allegations in the California Lawsuit are entirely baseless, as noted above, the Compensation Detail Report that Schobinger took from Twitter conveniently contains PBP information for all of the individuals whom he presumably now seeks to represent in the California Lawsuit.[2]

4.      Following Schobinger's refusal to submit to the forensic review to which he had previously agreed, Twitter continued to engage in reasonable efforts to ensure that its confidential information was protected.  As set forth in greater detail below, Twitter's counsel exchanged multiple emails and conferred over the phone with Schobinger's counsel about the confidential and sensitive nature of the information at issue and the

---

[2] To be clear, this lawsuit is not a response to the California Lawsuit, as evinced by the fact that Twitter actively sought the return of the highly sensitive and confidential information Schobinger took **before** he filed the California Lawsuit, and before Twitter even knew that Schobinger was retained by counsel.  That said, Schobinger cannot shield himself from his confidentiality obligations under the Agreement by filing a separate lawsuit.

need for Schobinger's cooperation to confirm its remediation from his accounts and devices.

5.    Twitter's counsel also provided Schobinger's counsel a draft protocol of a forensic review to ensure the remediation of Twitter documents from Schobinger's accounts and devices—to be paid for entirely by Twitter, to be completed by an independent, third-party forensic analyst agreed upon by both parties, and to entirely avoid any review by Twitter of Schobinger's personal documents.  Consistent with Schobinger's obligations under Section 8(d) of his Agreement, Twitter's counsel also proposed that Schobinger sign a declaration to confirm that he has not used or shared Twitter confidential information outside of his employment with Twitter.

6.    Schobinger's counsel, however, has rejected each of these proposals and failed to even provide a counter-proposal    for Twitter's consideration.  These rejections and the general resistance to Twitter's efforts to protect its information is particularly alarming given Twitter's obligations to report Schobinger's misconduct to various international regulatory agencies as it relates to the highly sensitive identifying and compensation information Schobinger has on 2,251 Twitter employees, many of whom reside outside the United States.

7.    By retaining documents and information after resigning from Twitter, by refusing to cooperate with Twitter's efforts to confirm that he no longer maintains such documents and information, and by refusing to provide any meaningful assurances that he has not disclosed and will not disclose Twitter's information, Schobinger has breached and is threatening to continue to breach the Agreement.  The threat that Schobinger may disclose Twitter's confidential information is too real and damaging to ignore. Accordingly, Twitter files this lawsuit and injunction application, asking this Court to

narrowly enjoin Schobinger from improperly using or disclosing Twitter's confidential documents and information pending a trial on the merits.

## PARTIES

8.     X Corp., successor in interest to Twitter, Inc., is a Nevada corporation that does business in Texas.

9.     Schobinger is an individual residing in Texas whose last known address is 3354 De Coronado Trail, Round Rock, Texas 78665.  Schobinger may be served with process at his residence, through his counsel, or wherever he may be found.

## RELIEF REQUESTED

10.     Twitter seeks temporary and permanent injunctive relief because there is no adequate remedy at law for the imminent threat of irreparable harm described below.

11.     Pursuant to Texas Rule of Civil Procedure 47(c)(5), Twitter seeks only non-monetary relief but reserves the right to later amend its Petition to seek monetary relief within the jurisdictional limits of this Court.

12.     Pursuant to Texas Rule of Civil Procedure 47(d), Twitter demands a judgment for all other relief to which it is entitled.

## JURISDICTION AND VENUE

13.     Pursuant to Texas Civil Practice and Remedies Code § 65.023(a), venue is proper in Williamson County, Texas because this action seeks a writ of injunction and Schobinger is a resident of Williamson County, Texas.

14.     The Court has personal jurisdiction over Schobinger because he is a resident of Texas and is thus subject to the Court's general personal jurisdiction.

## DISCOVERY CONTROL PLAN

15.    Under Texas Rule of Civil Procedure 190.3, Twitter intends to conduct discovery under Discovery Control Plan – Level 3.  Pursuant to its contemporaneously filed motion, Twitter seeks expedited discovery to prepare for its temporary injunction hearing against Schobinger.  Good cause exists.

## FACTUAL BACKGROUND

### A.    Twitter

16.    Based in San Francisco, California, Twitter is a leading social media platform that connects millions of people in a digital town square.  Twitter's primary business is to innovate, develop, and maintain an existing social media platform providing its users with the ability to "tweet" short, electronic microblogs on almost any conceivable subject.  Twitter's workforce consists of a variety of professionals, including technical engineers, software developers, product specialists, and, in the case of Mark Schobinger, compensation professionals.

### B.    Mark Schobinger

17.    Twitter hired Schobinger in February 2019 as its Executive and Incentive Compensation Director.

18.    At the beginning of his employment, Schobinger signed his Agreement and assumed numerous covenants to protect Twitter's legitimate interests, including post-employment covenants to protect Twitter's interests in its confidential and sensitive information.[3]

19.    Under the Agreement, Schobinger "agree[d] that during and after [his]

---

[3] A true and correct copy of Schobinger's Agreement is attached as Ex. 1.

employment with [Twitter], [he] will hold in the strictest confidence and take all reasonable precautions to prevent any unauthorized use or disclosure of Confidential Information."[4]   The Agreement defines Confidential Information as "information (including, but not limited to, any and all combinations of individual items of information) that [Twitter] or any subsidiary or affiliate of [Twitter] ('Twitter Group') has or will develop, acquire, create, compile, discover or own, that has value in or to the Twitter Group's business which is not generally known and which [Twitter] wishes to maintain as confidential."[5]   Confidential Information includes Twitter "finances and related financial information,"[6] which includes the compensation information that Schobinger accessed and sent himself before his separation from Twitter.

20.     Schobinger also agreed to return to Twitter all Twitter property, including documents and information, upon separating from Twitter or upon Twitter's request at any time:

> **[U]pon separation from employment with [Twitter] or upon [Twitter]'s request at any other time, [Schobinger] will immediately deliver to [Twitter], and will not keep in [his] possession, recreate, or deliver to anyone else, any and all [Twitter] property including, but not limited to, Confidential Information**, Associated Third Party Confidential Information, all [Twitter] equipment including all [Twitter] Electronic Media Equipment, all tangible embodiments of the Inventions, all electronically stored information and passwords to access such information, [Twitter] credit cards, **records**, **data**, notes, notebooks, **reports**, **files**, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, photographs, charts, any other documents and property, and reproductions of any of the foregoing items including, without limitation, any and all records maintained for Inventions made or contributed by me.[7]

---

[4] *Id.* § 7(b).
[5] *Id.* § 7(a).
[6] *Id.*
[7] *Id.* § 8(b) (emphasis added).

21.     Schobinger agreed that if he used any personal electronic media device to create, receive, store, review, prepare or transmit Twitter information, as he did, "[he would] make a prompt and reasonable search for such information in good faith, including reviewing any personal Electronic Media Equipment or personal Electronic Media Systems to locate such information[.]"[8]  Schobinger further agreed that, "if [he] locate[d] such information, [he would] notify [Twitter] of that fact and then provide [Twitter] with a computer-useable copy of all such [Twitter] information from those equipment and systems."[9]  The Agreement does not contemplate that Schobinger may take it upon himself to delete any documents he kept from his employment with Twitter.[10]  Critically, Schobinger "**agree[d] to cooperate reasonably with [Twitter] to verify that the necessary copying is completed (including upon request providing a sworn declaration confirming the return of property and deletion of information), and, upon confirmation of compliance by [Twitter], [to] agree to delete and expunge all [Twitter] information**[.]"[11]

22.     Schobinger acknowledged that, "in the event of a breach or threatened breach of this Agreement by [Schobinger,] [Twitter] may suffer irreparable harm which would be difficult to calculate in monetary terms and for which damages would be an inadequate remedy."[12]  Therefore, Schobinger agreed that "[Twitter] shall be entitled, in addition to remedies otherwise available at law or in equity, to obtain and enforce immediately temporary restraining orders, preliminary injunctions, and final injunctions,

---

[8] *Id.* § 8(d)
[9] *Id.*
[10] *See generally id.*
[11] *Id.* (emphasis added).
[12] *Id.* § 16.

8

without the posting of a bond enjoining such breach or threatened breach."[13]

## C. Schobinger Accessed and Sent Himself Documents Containing Twitter's Confidential and Sensitive Information.

23. On May 20, 2023, Schobinger voluntarily resigned from his employment with Twitter, effective May 26. Over the next several days, Schobinger refused to meet with Twitter employees and attorneys in connection with transitioning his responsibilities. Given Schobinger's unusual and disconcerting conduct, Twitter launched a review of Schobinger's activities on Twitter's systems and learned that Schobinger was forwarding emails to his personal email address. After ending Schobinger's access to Twitter's systems (and later ending Schobinger's employment with Twitter), Twitter continued examining Schobinger's activities on his Twitter computer and on Twitter's systems during the months, weeks, and days leading to his separation.

24. Through its investigation, Twitter learned that Schobinger downloaded 120 documents in the final 20 days of his employment with Twitter. While some of these documents included information that was likely personal to Schobinger, the vast majority of these documents included non-personal, confidential Twitter information. As one example, on May 5 and then again on May 22, Schobinger downloaded Twitter's Compensation Detail Report, which contains, among many other things, the names, employee IDs, work locations, length of service, manager names, leave of absence dates, email addresses, salary ranges, total and annualized base pay, restricted stock unit ("RSU") options information (total granted, total vested, total unvested, percentages unvested), year to date equity granted, bonus plan eligibility, bonus plan target percentage, and other compensation information of 2,251 Twitter employees worldwide.

---

[13] *Id.*

25.     Through its investigation, Twitter also learned that Schobinger emailed documents to his personal email account.  One email Schobinger sent himself on March 3, 2023, attached the Compensation Detail Report, which, again, contains the identities, email addresses, and compensation information of every Twitter employee worldwide.[14] Another email Schobinger sent himself that same day contained a spreadsheet detailing information about RSU options for 401 Twitter employees worldwide.[15]  Schobinger did not have any legitimate reason to send these documents to his personal email during the months before his resignation.

26.     Through its investigation, Twitter also learned that Schobinger maintained a personal cloud-storage account on Google Drive and uploaded documents to that account—although it is unclear which documents he uploaded.  A screenshot taken during Twitter's investigation demonstrates that Schobinger maintained a folder in the account entitled "Work," which included numerous subfolders entitled "Comp Cmte Meetings," "Playbooks," "Projects," "Reports," "401(k)," and "2023 Payslips."[16]  The subfolders were last modified between November 2022 and May 19, 2023.  Schobinger did not have any legitimate reason to maintain a work folder on his personal Google Drive account.

**D.     Twitter Sends Schobinger a Letter Reminding Him of His Non-Disclosure and Preservation Obligations.**

27.     On June 13, 2023, Twitter sent Schobinger a letter advising that it was aware of his downloading, emailing, and uploading activities and reminding Schobinger of his obligations under the Agreement and to not disclose information that is sensitive or

---

[14] A true and correct copy of Schobinger's Mar. 3, 2023, email to his personal email address, attaching the Compensation Detail Report, is attached at Ex. 2.
[15] A true and correct copy of Schobinger's Mar. 3, 2023, email to his personal email address, attaching the 03.01.2023 Sharework_RSU Options_HR Review, is attached at Ex. 3.
[16] A true and correct copy of the screenshot of Schobinger's "Work" Folder is attached as Ex. 4.

confidential to Twitter.[17]   The letter also demanded that Schobinger "take reasonable steps to not delete or destroy any hard copies and electronically stored documents and communications related to [his] employment with Twitter, specifically including documents and communications related to the Twitter documents [he] accessed and transmitted in the months and weeks before [his] separation."[18]

## E.    Schobinger Agreed to a Forensic Protocol to Ensure He Does Not Possess Twitter Documents.

28.    Schobinger responded to Twitter's letter the same day, first through email and later through a phone call with a member of Twitter's in-house legal team, Adam Mehes.  During the phone conversation, Schobinger stated that he deleted all Twitter documents in his possession, noting that he made several of the deletions after receiving Twitter's letter—in disregard of Twitter's preservation demand.  Mehes informed Schobinger that Twitter must verify that no Twitter documents remain on his accounts and devices, either advertently or inadvertently, and that Twitter would send someone from Twitter's information security team to conduct a forensic review, which could be conducted at Schobinger's home for his convenience.  Mehes expressly informed Schobinger that he could oversee the review.  Schobinger responded that he would be "happy to have someone come to [his] house" and "pull up the file listing" and was "willing to sit there with [the information security team member]."  Schobinger stated that his only concern was ensuring that the analyst did not take his personal files, which Mehes confirmed would not occur.

29.    Twitter began coordinating its review after Mehes's conversation with

---

[17] A true and correct copy of Twitter's June 13, 2023, Letter to Schobinger is attached as Ex. 5.
[18] *Id.*

Schobinger.

**F.   Schobinger Reneges on the Forensic Review Agreement and Otherwise Resists Twitter's Efforts to Confirm the Safeguarding of Its Documents and Information.**

30.    On June 16, 2023, three days after Schobinger agreed to the forensic review, Schobinger's counsel, Shannon Liss-Riordan, contacted Mehes to inform him that Schobinger would not engage in the forensic review.[19]

31.    Since then, Twitter's counsel engaged in multiple communications with Schobinger's counsel (once learning she was retained) in a concerted effort to resolve the matter amicably to avoid the need to file the instant suit.  Twitter's counsel initially reached out to Schobinger's counsel to coordinate the forensic review to which Schobinger agreed on June 13.[20]  Schobinger's counsel denied that her client committed to "any such intrusive review."[21]  While Twitter's counsel disagreed both with respect to what Schobinger committed to and that the review proposed by Twitter was "intrusive," she suggested a call to "help resolve [the] dispute."[22]

32.    The lawyers spoke on the phone on June 21 after the Juneteenth holiday and Schobinger's counsel's court conflict.  During the call, Twitter's counsel stressed the goal of avoiding escalation by conducting the forensic review Schobinger agreed to before he retained counsel.  Twitter's counsel also provided background information regarding some of the information uploaded and emailed, including the Compensation Detail

---

[19] A true and correct copy of S. Liss-Riordan's June 16, 2023, email to A. Mehes is attached as Ex. 6.  In her email to Mehes, Riordan informed him of her representation, stated that her client "affirmed" that he is not in possession of Twitter's confidential information, and concluded, "I trust that this takes care of your concern."  *Id.*  To be clear, Schobinger did not state (and Twitter was not otherwise aware) that he was represented by counsel during Twitter's prior communications with him.

[20] A true and correct copy of the June 17, 2023, email exchange between S. Moll to S. Liss-Riordan is attached as Ex. 7.

[21] *Id.*

[22] *Id.*

Report containing compensation information for 2,251 employees worldwide. As a result of the highly sensitive and confidential information at play, as well as Twitter's obligations to report any misconduct concerning the information to various international regulatory agencies, Twitter simply could not and cannot take Schobinger's "word for it" and Twitter's counsel explained and reiterated the request for a forensic review and a declaration as a result. Twitter's counsel raised the possibility of entering into an agreed forensic protocol to govern the review. Schobinger's counsel agreed to have someone evaluate any forensic proposal provided.

33.    Twitter accordingly provided Schobinger a proposed forensic protocol through which (along with a declaration), Twitter could obtain all assurances necessary to avoid this litigation.[23] Under its terms, the protocol proposed to employ a jointly-selected, independent forensic analyst—rather than a Twitter employee working on its information security team, as Schobinger previously agreed—to narrowly remediate from Schobinger's devices and accounts the confidential Twitter documents that Schobinger had retained in his possession, such as those he had emailed to his personal email account or maintained on his personal Google Drive account—excluding documents that are personal to Schobinger.[24] Notably, Twitter offered to pay for the entire forensic examination.[25]

34.    In the email transmitting the proposed protocol, counsel for Twitter explained that the forensic review was narrowly tailored, necessary to complete Twitter's

---

[23] A true and correct copy of S. Moll's June 28, 2023, email to S. Liss-Riordan transmitting the protocol is attached as Ex. 8; *see also* Twitter's Proposed Protocol, a true and correct copy of which is attached as Ex. 9.
[24] Ex. 9, Proposed Protocol.
[25] *Id.*

regulatory requirements to investigate the matter, and would not involve Twitter accessing or viewing Schobinger's personal documents.[26]  Twitter also reiterated its need for a declaration from Schobinger attesting that he "has not shared any of Twitter's sensitive information either by transmitting hard copy documents or by word-of-mouth."[27]  Twitter's counsel noted that Twitter would be happy to draft the declaration for Schobinger to execute.[28]

35.    While Schobinger's counsel responded to the email transmitting the forensic protocol and proposing a declaration, she neither commented on the protocol's or declaration's contents or countered with alternative terms.[29]  Twitter's counsel asked that, by July 5, Schobinger confirm whether he will comply with the proposed protocol, noting that, if not, Twitter will proceed to court.[30]  Schobinger's counsel threatened to seek "costs and other available remedies" if Twitter filed suit—presumably based on the California Lawsuit, which post-dated Twitter's attempts to secure its information—and mentioned again that her client deleted Twitter documents (in contravention of Twitter's preservation letter).[31]

## G.    Schobinger Files the California Lawsuit Related to the Information He Accessed and Sent Himself.

36.    On June 20, seven days after Twitter first sent Schobinger its June 13 letter, Schobinger filed the California Lawsuit, naming himself as the sole class representative. In the California Lawsuit, Schobinger alleges that Twitter failed to properly pay him and

---

[26] Ex. 8, June 28, 2023, Email.
[27] Id.
[28] Id.
[29] A true and correct copy of the June 29, 2023, email exchange between S. Liss-Riordan and S. Moll is attached as Ex. 10.
[30] Id.
[31] Id.

a class of alleged similarly situated current and former employees bonuses under Twitter's PBP.  Notably, information related to this allegation, including the identities of all PBP recipients, is included in the Compensation Detail Report that Schobinger emailed to himself on March 3, downloaded on May 5, and downloaded again on May 22—two days after submitting his resignation.

## CAUSE OF ACTION

37.     Twitter incorporates the above allegations as if fully set forth below.

38.     The Agreement between Twitter and Schobinger is valid and enforceable.

39.     Section 8(b) of the Agreement requires Schobinger to return Twitter's confidential and other information upon separating from Twitter or upon Twitter's request at any other time.  Section 8(d) of the Agreement requires Schobinger to inform Twitter about Twitter information on his personal devices, provide Twitter with computer-usable copies of such information, and cooperate with Twitter to confirm copying is completed, "**including upon request providing a sworn declaration confirming the return of property and deletion of information**."  Section 7(b) of the Agreement prohibits Schobinger from disclosing Twitter's Confidential Information, which includes the compensation information Schobinger promised to "hold in the strictest confidence" in his position as Head of Compensation and Benefits.

40.     Schobinger breached and is threatening to continue to breach the Agreement by refusing to cooperate with Twitter's efforts to confirm the safeguarding of its information.  As an initial matter, Schobinger failed to return Twitter's confidential and other information upon separating from Twitter and upon request from Twitter. Schobinger also failed to provide Twitter with computer-usable copies of the information that remained in his possession after separating from Twitter.  Instead, Schobinger

15

claimed to have deleted the information–despite receiving a letter from Twitter demanding his preservation of same and specifically instructing him not to delete–yet he was unwilling to cooperate reasonably with Twitter by, among other things, failing to submit to a forensic review of his devices and accounts to confirm such deletion or to provide a sworn declaration that he did not share the information with third parties prior to deletion (or orally before or after deletion).

41.     Moreover, upon information and belief, Schobinger has or soon will improperly disclose and use the confidential and sensitive information contained in the documents he downloaded, emailed, and uploaded before separating from Twitter, particularly the compensation information in the Compensation Detail Report, by filing the California Lawsuit.   Because Schobinger transmitted this confidential and sensitive information to himself, refused to provide Twitter with any meaningful assurances that he no longer possesses the information and has not shared it, and is the named plaintiff in a class action lawsuit where he and his counsel could use this information to their advantage and to Twitter's detriment, Schobinger is threatening to use this information in further breach of the Agreement.

42.     Schobinger's breaches and threatened breaches of the Agreement caused and threaten to cause Twitter with imminent and irreparable harm.  Twitter is therefore entitled to prospective injunctive relief, as detailed in the Agreement.  Twitter is also entitled to attorney's fees, plus additional sums in the event of an appeal, as further detailed in the Agreement and Chapter 38 of the Texas Civil Practice and Remedies Code.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

43.     "A temporary injunction's purpose is to preserve the status quo of the

litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The "status quo" is defined as "the last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004). Temporary injunctive relief is appropriate where the applicant demonstrates (i) a cause of action against the defendant; (ii) a probable right to the relief sought; and (iii) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204.

44.     Twitter adequately pleads a breach of contract claim against Schobinger through this Petition.

45.     Twitter demonstrates a right to the relief sought on its breach of contract claim against Schobinger. "To show a probable right to recover, an applicant need not show that it will prevail at trial . . . . Instead, to show a probable right of recovery, the applicant must plead a cause of action and present some evidence that tends to sustain it." *Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citations omitted). Twitter presents evidence demonstrating a probable right to relief on its claim against Schobinger, namely: (i) Schobinger received access to Twitter's confidential and sensitive information during his employment with Twitter under numerous obligations detailed in his Agreement; (ii) Schobinger downloaded, emailed, and uploaded documents including Twitter's confidential and sensitive information during the months, weeks, and days leading to his resignation; (iii) when confronted, Schobinger admitted to deleting some of the documents he sent himself, even after receiving Twitter's preservation demand instructing him not to; (iv) Schobinger agreed to submit to a forensic review to confirm the remediation of Twitter's information from his devices and accounts; and (v) only after

obtaining counsel, Schobinger reneged on his forensic review agreement and has refused to provide Twitter with any means to confirm that he actually deleted and did not disclose its confidential and sensitive information. Moreover, Schobinger has since brought the California Lawsuit and can benefit, and is threatening to benefit from the information he took from Twitter, by not providing the assurances required by the Agreement and that he promised to provide. This verified evidence "tends to sustain" Twitter's breach of contract claim against Schobinger. *See, e.g.*, *Universal Plant Services, Inc. v. Dresser-Rand Group, Inc.*, 571 S.W.3d 346, 359 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (finding "clear and specific" evidence of a breach of contract claim where the employer showed that the departing employees improperly accessed documents, downloaded those documents, and emailed themselves those documents before resigning from their employment); *Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881, 893-94 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (finding clear and specific evidence supporting its breach of contract claim against a departing employee after presenting an affidavit of a forensic expert and corporate representative detailing data that was improperly retained and used by the departing employee).

46.     Unless enjoined, Schobinger will cause probable, imminent, and irreparable injury to Twitter. As Head of Compensation and Benefits, Schobinger had access to Twitter's most sensitive and confidential information concerning its employees' compensation. As a result of his job duties and his promise to hold Twitter's information in the strictest confidence, Schobinger owed Twitter fiduciary obligations and a duty of loyalty. Under similar facts, courts throughout Texas have consistently held that former employees and their agents should be enjoined from using or disclosing the company's information pending a trial on the merits. *See, e.g.*, *Chevron U.S.A., Inc. v. Guajardo*, CV

18

H-17-1549, 2017 WL 2265694, at *1 (S.D. Tex. May 24, 2017) (issuing a temporary restraining order where defendant-employee downloaded and emailed to his personal email account confidential information and trade secrets); *Keurig Dr. Pepper Inc. v. Chenier*, 4:19-CV-505, 2019 WL 3958154, at *2 (E.D. Tex. Aug. 22, 2019) (issuing a temporary restraining order where defendant downloaded and emailed to himself confidential and trade secret information belonging to plaintiff); *Frisco Med. Ctr., LLP v. Bledsoe*, 4:12CV37, 2012 WL 12919154, at *1 (E.D. Tex. Feb. 24, 2012) (issuing a temporary restraining order where defendant transmitted plaintiff's confidential information and trade secrets to a personal email account and thumb drives, reasoning that there is material risk that confidential information could be used, disclosed, disseminated, altered, or destroyed).

47.    Moreover, Twitter comes to this equitable Court with clean hands.  *See In re Gamble*, 71 S.W.3d 313, 317 (Tex. 2002) (recognizing that an application for injunctive relief invokes the court's equity jurisdiction).  As noted, Twitter has made multiple, reasonable efforts to avoid this litigation by attempting to confirm two simple things: (i) that Schobinger no longer has the highly sensitive and confidential information that he accessed, uploaded, and emailed to his personal accounts and; (ii) that Schobinger has not disclosed this information.  These reasonable efforts include Twitter sending a letter to Schobinger to (among other things) request his cooperation in confirming that he no longer has Twitter documents and has not shared Twitter information; Twitter's counsel exchanging numerous emails and conferring over the phone with Schobinger's counsel detailing the confidential and sensitive nature of the information at issue and the need for Schobinger's cooperation to confirm its remediation from his accounts and devices; Twitter's counsel providing Schobinger's counsel a draft protocol of a forensic review to

ensure the remediation of Twitter information from Schobinger's accounts and devices—

to be paid entirely by Twitter; and Twitter's counsel offering to draft a narrow declaration

for Schobinger to confirm that he has not used or shared Twitter information outside of

his employment with Twitter. Tellingly, Schobinger's counsel has rejected each of these

proposals and failed to counter.

48. Twitter respectfully asks the Court to enter a temporary restraining order

and, following a hearing, a temporary injunction restraining Schobinger and all others

acting in concert with him from:

      a. directly or indirectly possessing, using, or disclosing the documents and folders listed in Exhibits 11 and 12 to this Petition; and

      b. directly or indirectly possessing, using, or disclosing information in the documents and folders listed in Exhibits 11 and 12 to this Petition.

49. Twitter is willing to pay a reasonable bond.

## **CONDITIONS PRECEDENT**

50. All conditions precedent for Twitter to recover for the relief requested has

occurred.

## **JURY DEMAND**

51. Twitter demands a jury trial.

## **PRAYER FOR RELIEF**

52. Furthermore, Twitter respectfully requests that the Court:

      a. Issue a temporary restraining order enjoining Schobinger in the manner detailed above;

      b. Allow Twitter to engage in limited, expedited discovery in preparation for the hearing on its Temporary Injunction Application;

      c. After notice and a hearing, issue a temporary injunction enjoining Schobinger in the manner detailed above;

      d. After a trial on the merits, issue a permanent injunction enjoining

Schobinger in the manner detailed above;

e.    Award Twitter its attorneys' fees and costs associated with filing this lawsuit; and

f.    Grant Twitter all other relief, in law and in equity, to which it may be entitled.

Dated: July 6, 2023                                    Respectfully submitted,


_/s/ Stefanie R. Moll_____
**Stefanie R. Moll**
State Bar No. 24002870
Email: stefanie.moll@morganlewis.com
**T. Cullen Wallace**
State Bar No. 24072412
Email: cullen.wallace@morganlewis.com
**John P. Bramble**
State Bar No. 24101544
Email: john.bramble@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T: 713.890.5000
F: 713.890.5001

CAUSE NO. _____

| | | |
|---|---|---|
| X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC. | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § § | |
| v. | § § | WILLIAMSON COUNTY, TEXAS |
| MARK SCHOBINGER | § § | |
| *Defendant.* | § § | _____ JUDICIAL DISTRICT |

## <u>VERIFICATION IN SUPPORT OF X CORP.'S VERIFIED PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION</u>

My name is Adam Mehes.  My date of birth is REDACTED.  My address is REDACTED.  I am Head of Litigation for X Corp., successor in interest to Twitter, Inc. ("Twitter").  I have reviewed Twitter's Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction ("Petition").  I have personal knowledge of the statements in paragraphs 16-22, 27, 28, and 30 of the Petition.  I declare under penalty of perjury that those statements are true and correct.

Executed on July 6, 2023 in Travis County, State of Texas.

_____
Adam Mehes

CAUSE NO. _____

| | | |
|---|---|---|
| X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC. | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff*, | § § | |
| v. | § § | WILLIAMSON COUNTY, TEXAS |
| MARK SCHOBINGER | § § | |
| *Defendant*. | § | _____ JUDICIAL DISTRICT |

### VERIFICATION IN SUPPORT OF X CORP.'S VERIFIED PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

My name is Bruce Applin.  My date of birth is ▮REDACTED▮.  My address is ▮REDACTED REDACTED▮.  I am a Director of Information Security for X Corp., successor in interest to Twitter, Inc. ("Twitter").  I have reviewed Twitter's Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction ("Petition").  I have personal knowledge of the statements in paragraphs 23-26 and 29 of the Petition.  I declare under penalty of perjury that those statements are true and correct.

Executed on July 6, 2023 in Coconino County, State of Arizona.

_____
*Bruce Applin*
Bruce Applin

CAUSE NO. _____

| | | |
|---|---|---|
| X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC. | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § § | |
| v. | § § | WILLIAMSON COUNTY, TEXAS |
| MARK SCHOBINGER | § § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

### VERIFICATION IN SUPPORT OF X CORP.'S VERIFIED PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

My name is Stefanie R. Moll.  My date of birth is REDACTED.  My work address is 1000 Louisiana Street, Suite 4000, Houston, Texas 77002, United States.  I am a partner at the law firm Morgan, Lewis & Bockius LLP and am lead counsel in the above-referenced matter for X Corp., successor in interest to Twitter, Inc. ("Twitter").  I have reviewed Twitter's Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction ("Petition").  I have personal knowledge of the statements in paragraphs 31-36 of the Petition.  I declare under penalty of perjury that those statements are true and correct.

Executed on July 6, 2023 in Harris County, State of Texas.

_____
Stefanie R. Moll

# EXHIBIT 1

# EMPLOYEE INVENTION ASSIGNMENT AND CONFIDENTIALITY AGREEMENT

In consideration of, and as a condition of my employment, continued employment, access to confidential and trade secret information, benefits, certain monies, bonuses, and/or other benefits with Twitter, Inc., a Delaware corporation (the "**Company**"), I hereby represent to, and agree with the Company as follows:

1.      **Purpose of Agreement.** I understand that the Company is engaged in a continuous program of research, development, production, and marketing in connection with its business and, furthermore, that it is critical for the Company to preserve and protect: (i) its "**Confidential Information**" (as defined in Section 7 below); (ii) its rights in "**Inventions**" (as defined in Section 2 below); and (iii) in any and all intellectual property rights related to (i) and/or (ii). Accordingly, I am entering into this Employee Invention Assignment and Confidentiality Agreement (this "**Agreement**") as a condition of my employment with the Company, whether or not I am expected to make, conceive, or reduce to practice Inventions for the Company.

2.      **Disclosure of Inventions.** I will promptly disclose in confidence to the Company any and all inventions, improvements, ideas, developments, designs, trademark, word mark, trade dress, service mark, logo, certification marks, original works of authorship, formulas, processes, compositions of matter, computer software programs, databases, mask works, and trade secrets that I make or conceive or first reduce to practice or create, either alone or jointly with others, during the period of my employment, whether or not in the course of my employment, and whether or not patentable, copyrightable, or protectable as trade secrets (the "**Inventions**").

**3.      Work for Hire; Assignment of Inventions.**

(a)      I acknowledge and hereby agree that any and all Inventions that are copyrightable works prepared by me within the scope of my employment are "works for hire" under the Copyright Act and, furthermore, that the Company will be considered the author and owner of such copyrightable works. To the extent I create, within the scope of my employment, copyrightable works that are not works for hire, I hereby agree to assign, and do hereby irrevocably transfer and assign, such copyrightable works to the Company.

(b)      I hereby agree that any and all Inventions that (i) are developed using equipment, supplies, facilities, or trade secrets of the Company; (ii) are developed on Company time; (iii) result from work performed by me for the Company; or (iv) are related to the Company's business or actual or demonstrably anticipated research and development (collectively (i) through (iv) the "**Assigned Inventions**"), will be the sole and exclusive property of the Company. I hereby agree to assign, and do hereby irrevocably transfer and assign, the Assigned Inventions to the Company. I agree that this assignment constitutes a present conveyance to the Company of ownership of Inventions that are not yet in existence. The foregoing assignment of Assigned Inventions includes, for example, the assignment of any and all rights I have or may have anywhere in the world for patents, patent applications, copyrights, mask works, trade secrets, databases or other stores of data (including, but not limited to data created or curated for training machine learning models), and trademarks, along with any registrations of or applications to register such rights anywhere in the world, to the full extent permitted by law.

(c)      Attached hereto as **Exhibit A** is a list describing all Inventions that were made by me prior to the date of this Agreement, which belong to me, and which are not assigned to the Company ("**Prior Inventions**"). If no such list is attached, I agree that it is because no such Prior Inventions exist. I acknowledge and agree that if I use any of my Prior Inventions in the scope of my employment, or include them in any product or service of the Company, I hereby grant to the Company a perpetual, irrevocable, non-exclusive, worldwide, royalty-free license to use, disclose, make, sell, copy, distribute, modify, and create works based on, perform, and/or display such Prior Inventions and, furthermore, to sublicense to third parties with the same rights.

**4.      State-specific Provisions.**

*For residents of Delaware, Illinois, Kansas or North Carolina, the following applies:*

No provision in this Agreement requires me to assign any of my rights to an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on my own time, unless (a) the invention relates (i) to the business of the Company or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by me for the Company. Delaware Code Title 19 Section 805; Illinois 765ILCS1060/1-3, "Employees Patent Act"; Kansas

Statutes Section 44-130; North Carolina General Statutes Article 10A, Chapter 66, Commerce and Business, Section 66-57.1.

*For residents of Minnesota, the following applies:*

No provision in this Agreement requires me to assign any of my rights to an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on my own time, and (a) which does not relate (i) directly to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) does not result from any work performed by me for the Company. Minnesota Statutes 13A Section 181.78.

*For residents of Utah, the following applies:*

No provision in this Agreement requires me to assign any of my rights to an invention which was created entirely on my own time, and which is not (a) conceived, developed, reduced to practice, or created by me (i) within the scope of my employment with the Company, (ii) on the Company's time, or (iii) with the aid, assistance, or use of any of the Company's property, equipment, facilities, supplies, resources, or patents, trade secrets, know-how, technology, confidential information, ideas, copyrights, trademarks and service marks and any and all rights, applications and registrations relating to them, (b) the result of any work, services, or duties performed by me for the Company, (c) related to the industry or trade of the Company, or (d) related to the current or demonstrably anticipated business, research, or development of the Company. Utah Code Sections 34-39-1 through 34-39-3, "Employee Inventions Act."

*For residents of Washington, the following applies:*

No provision in this Agreement requires me to assign any of my rights to an invention for which no equipment, supplies, facilities, or trade secret information of the Company was used and which was developed entirely on my own time, unless (a) the invention relates (i) directly to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by me for the Company. Washington Rev. Code, Title 49 RCW: Labor Regulations Chapter 49.44.140.

5.      **Assignment of Other Rights.** In addition to the foregoing assignment of Assigned Inventions to the Company, I hereby agree to assign, and do hereby irrevocably transfer and assign, to the Company any and all intellectual property beyond those specified in Section 3 that I create within the scope of my employment or are related to the Company's business or actual or demonstrably anticipated research and development, including, but not limited to any and all "Moral Rights" (as defined below) that I may have in or with respect to any and all Assigned Inventions. I also hereby forever waive and agree never to assert any and all Moral Rights I may have in or with respect to any Assigned Inventions, even after termination of my work on behalf of the Company. "*Moral Rights*" mean any rights to claim authorship of or credit on an Assigned Invention, to object to or prevent the modification or destruction of any Assigned Inventions or Prior Inventions licensed to Company under Section 3, or to withdraw from circulation or control the publication or distribution of any Assigned Inventions or Prior Inventions licensed to Company under Section 3, and any similar right, existing under judicial or statutory law of any country or subdivision thereof in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right." Notwithstanding the foregoing, I will have the right to claim participation in the development, creation, or modification of the Assigned Inventions on my resume or in my curriculum vitae, provided that I obtain the Company's advance approval for such disclosures before providing the disclosure to any third-party.

6.      **Assistance.** I agree to assist the Company in every proper way to obtain for the Company and enforce patents, copyrights, mask work rights, trade secret rights, and other legal protections for the Company's Assigned Inventions in any and all countries. I will execute any documents that the Company may reasonably request for use in obtaining or enforcing such patents, copyrights, mask work rights, trade secrets and other legal protections. My obligations under this paragraph will continue beyond the termination of my employment with the Company, provided that the Company will compensate me at a reasonable rate after such termination for time or expenses actually spent by me at the Company's request on such assistance. If the Company is unable for any reason, after reasonable effort, to secure my signature on any document needed in connection with the actions specified in the preceding paragraph, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and, where permitted by law, my attorney in fact, which appointment is coupled with an interest, to act for and in my behalf to execute, verify and file any such documents and to do all other lawfully permitted acts to further the purposes of the preceding paragraph with the same legal force and effect as if executed by me.

**7.     Confidential Information.**

(a)     *Definition of Confidential Information.* I understand that "Confidential Information" means information (including, but not limited to, any and all combinations of individual items of information) that the Company or any subsidiary or affiliate of the Company ("***Twitter Group***") has or will develop, acquire, create, compile, discover or own, that has value in or to the Twitter Group's business which is not generally known and which the Company wishes to maintain as confidential. Confidential Information includes both information disclosed by the Company to me, and information developed or learned by me during the course of my employment with the Company. Confidential Information also includes all information of which the unauthorized disclosure could be detrimental to the interests of any member of the Twitter Group, whether or not such information is identified as Confidential Information. By example, and without limitation, Confidential Information includes any and all non-public user data, any and all non-public information that relates to the actual or anticipated business and/or products, research or development of the Twitter Group, or to the Twitter Group's technical data, trade secrets, or know-how, including, but not limited to, research, product plans, marketing plans, business strategies, or other information regarding the Twitter Group's products or services and markets therefor, customer lists, customer data, and customers (including, but not limited to, customers of the Company on which I called or with which I may become acquainted during the term of my employment), domain names, Inventions (as defined above in Section 2), ideas, technology, drawings, engineering, hardware configuration information, finances and related financial information, forecasts, and other business information disclosed by the Company to me either directly or indirectly in writing, orally or by drawings or inspection of premises, parts, equipment, or other Company property. Notwithstanding the foregoing, Confidential Information shall not include any such information which I can establish (i) was publicly known or made generally available outside the Company prior to the time of disclosure by the Company to me; (ii) becomes publicly known or made generally available outside the Company after disclosure by the Company to me through no wrongful action or omission by me; or (iii) is in my rightful possession, without confidentiality obligations, at the time of disclosure by the Company as shown by my then-contemporaneous written records; provided that any combination of individual items of information shall not be deemed to be within any of the foregoing exceptions merely because one or more of the individual items are within such exception, unless the combination as a whole is within such exception. I understand that nothing in this Agreement is intended to limit employees' rights to discuss the terms, wages, and working conditions of their employment, as protected by applicable law.

(b)     *Nonuse and Nondisclosure.* I agree that during and after my employment with the Company, I will hold in the strictest confidence and take all reasonable precautions to prevent any unauthorized use or disclosure of Confidential Information. I will not (i) use Confidential Information for any purpose whatsoever other than for the benefit of the Company in the course of my employment, or (ii) disclose Confidential Information to any third party without the prior written authorization of the General Counsel of the Company, or his or her authorized representative. When compelled by applicable law to disclose Confidential Information, I shall provide written notice, prior to disclosure, to the General Counsel of the Company. I agree that I obtain no title to any Confidential Information, and that the Company retains all Confidential Information as the sole property of the Company. I understand that my unauthorized use or disclosure of Confidential Information during my employment may lead to disciplinary action, up to and including, but not limited to, immediate termination and legal action by the Company. I understand that my obligations under this Section shall continue after termination of my employment and also that nothing in this Agreement prevents me from engaging in protected activity, as described in Section 7(e) below.

(c)     *Permission to Publish.* I will obtain the prior written consent of the Company's General Counsel or his or her delegate before I submit for publication or lecture on any matter or material connected to my work with the Company or which may refer to, involve or include Confidential Information.

(d)     *Safeguarding Confidential Information.* I will take all reasonable safeguards to protect Confidential Information including:

(i)     maintaining in a safe place all documents, drawings and data in any form that contain Confidential Information;

(ii)     not permitting the download or storage in electronic form of any Confidential Information on any non-encrypted device;

(iii)     handling Confidential Information in accordance with the Company's and the Twitter Group's information security policies; and



(iv)    notifying the Company immediately if I learn of any unauthorized or unlawful disclosure of Confidential Information.

(e)    I understand that nothing in this Agreement limits or prohibits me from filing a charge or complaint with, or otherwise communicating or cooperating with or participating in any investigation or proceeding that may be conducted by, any federal, state or local government agency or commission, including, but not limited to the Securities and Exchange Commission, the Equal Employment Opportunity Commission, the Occupational Safety and Health Administration, and the National Labor Relations Board ("**Government Agencies**"), including, but not limited to disclosing documents or other information as permitted by law, without giving notice to, or receiving authorization from, the Company. Notwithstanding, in making any such disclosures or communications, I agree to take all reasonable precautions to prevent any unauthorized use or disclosure of any information that may constitute Confidential Information to any parties other than the Government Agencies. I further understand that I am not permitted to disclose the Company's attorney-client privileged communications or attorney work product. In addition, I hereby acknowledge that the Company has provided me with notice in compliance with the Defend Trade Secrets Act of 2016 regarding immunity from liability for limited disclosures of trade secrets. The full text of the notice is attached in **Exhibit C**.

(f)    *Former Employer Confidential Information*. I agree that during my employment with the Company, I will not improperly use, disclose, or induce the Company to improperly use any proprietary information or trade secrets of any former employer or other person or entity with which I have an obligation to keep such proprietary information or trade secrets in confidence. I further agree that I will not bring onto the Company's premises or transfer onto the Company's technology systems any unpublished document, proprietary information, or trade secrets belonging to any such third party unless disclosure to, and use by, the Company has been consented to, in writing, by such third party and the Company.

(g)    *Third Party Information*. I recognize that the Company has received, and in the future may receive, from third parties (for example, customers, suppliers, licensors, licensees, partners, and collaborators) as well as its subsidiaries and affiliates ("**Associated Third Parties**"), information which the Company is required to maintain and treat as confidential or proprietary information of such Associated Third Parties ("**Associated Third Party Confidential Information**"), and I agree to use such Associated Third Party Confidential Information only as directed by the Company and to not use or disclose such Associated Third Party Confidential Information in a manner that would violate the Company's obligations to such Associated Third Parties. By way of example, Associated Third Party Confidential Information may include, but not be limited to, the habits or practices of Associated Third Parties, the technology of Associated Third Parties, requirements of Associated Third Parties, and information related to the business conducted between the Company and such Associated Third Parties. I agree at all times during my employment with the Company and thereafter, that I owe the Company and its Associated Third Parties a duty to hold all such Associated Third Party Confidential Information in the strictest confidence, and not to use it or to disclose it to any person, firm, corporation, or other third party except as necessary in carrying out my work for the Company consistent with the Company's agreement with such Associated Third Parties. I further agree to comply with any and all Company policies and guidelines that may be adopted from time to time regarding Associated Third Parties and Associated Third Party Confidential Information. I understand that my unauthorized use or disclosure of Associated Third Party Confidential Information or violation of any Company policies during my employment may lead to disciplinary action, up to and including, but not limited to, immediate termination and legal action by the Company.

**8.    Return of Company Materials.**

(a)    *Definition of Electronic Media Equipment and Electronic Media Systems.* I understand that "Electronic Media Equipment" includes, but is not limited to, computers, external storage devices, thumb drives, mobile devices (including, but not limited to, smart phones, tablets, and e-readers), telephone equipment, and other electronic media devices. I understand that "Electronic Media Systems" includes, but is not limited to, computer servers, messaging and email systems or accounts, applications for computers or mobile devices, and web-based services (including, but not limited to cloud-based information storage accounts).

(b)    *Return of Company Property.* I understand that anything that I created or worked on for the Company while working for the Company belongs solely to the Company and that I cannot remove, retain, or use such information without the Company's express written permission. Accordingly, upon separation from employment with the Company or upon the Company's request at any other time, I will immediately deliver to the Company, and will not keep in my possession, recreate, or deliver to anyone else, any and all Company property,

including, but not limited to, Confidential Information, Associated Third Party Confidential Information, all Company equipment including all Company Electronic Media Equipment, all tangible embodiments of the Inventions, all electronically stored information and passwords to access such information, Company credit cards, records, data, notes, notebooks, reports, files, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, photographs, charts, any other documents and property, and reproductions of any of the foregoing items including, without limitation, any and all records maintained for Inventions made or contributed by me.

(c)     *Return of Company Information on Company Electronic Media Equipment.* In connection with my obligation to return information to the Company, I agree that I will not copy, delete, or alter any information, including personal information voluntarily created or stored, contained in Company Electronic Media Equipment before I return the information to the Company.

(d)     *Return of Company Information on Personal Electronic Media Equipment.* In addition, if I have used any personal Electronic Media Equipment or personal Electronic Media Systems to create, receive, store, review, prepare or transmit any Company information, including, but not limited to, Confidential Information, I agree to make a prompt and reasonable search for such information in good faith, including reviewing any personal Electronic Media Equipment or personal Electronic Media Systems to locate such information and, if I locate such information, I agree to notify the Company of that fact and then provide the Company with a computer-useable copy of all such Company information from those equipment and systems. I agree to cooperate reasonably with the Company to verify that the necessary copying is completed (including upon request providing a sworn declaration confirming the return of property and deletion of information), and, upon confirmation of compliance by the Company, I agree to delete and expunge all Company information, remove myself from membership in electronic groups created/sponsored for use by Twitter employees for work purposes (including but not limited to Twitter DM groups and access to Twitter dogfood).

(e)     *No Expectation of Privacy in Company Property.* I understand that I have no expectation of privacy in Company property, and I agree that any Company property is subject to inspection by Company personnel at any time with or without further notice. As to any personal Electronic Media Equipment or personal Electronic Media Systems that I have used for Company purposes, I agree that the Company, at its sole discretion, may have reasonable access, as determined by the Company in good faith, to such personal Electronic Media Equipment or personal Electronic Media Systems to review, retrieve, destroy, or ensure the permanent deletion of Company information from such equipment or systems or to take such other actions necessary to protect the Company or Company property, as determined by the Company reasonably and in good faith. I also consent to an exit interview and an audit to confirm my compliance with this Section 8, and I will certify in writing that I have complied with the requirements of this Section 8.

9.     **No Breach of Prior Agreement.** I represent that my performance of all the terms of this Agreement and my duties as an employee of the Company will not breach any invention assignment, proprietary information, confidentiality, or similar agreement with any former employer or other party. I represent that I will not bring with me to the Company or use in the performance of my duties for the Company any documents or materials or intangibles of a former employer or third party that are not generally available to the public or have not been legally transferred to the Company. I represent that I have completed **Exhibit B** hereto truthfully and accurately.

10.     **Efforts; Duty Not to Compete; Outside Activities.** I understand that my employment with the Company requires my undivided attention and effort. As a result, during my employment, I will not, without the Company's express written consent, engage in any other employment, business activity or outside directorships that (i) directly or indirectly competes with the current or future business of the Company; (ii) uses any Company information, equipment, supplies, facilities or materials; or (iii) otherwise conflicts with the Company's business interest and causes a disruption of its operations. I further agree that I have disclosed to the Company on **Exhibit D** all of my existing employment and/or business relationships, including, but not limited to, any consulting or advising relationships, outside directorships, investments in privately held companies, and any other relationships ("Outside Relationships") that may create a conflict of interest and in the future will disclose Outside Relationships to the Company during my employment pursuant to the Company's policies (currently found at go/outsideprojects). I understand that the Company will review these relationships for any actual or potential conflict of interest and will advise me if any changes, including, potentially, cessation of an activity or termination of a relationship, is required as a condition of employment with the Company.

11.     **Notification.** I hereby authorize the Company to notify third parties, including, without limitation, customers and actual or potential employers, of the terms of this Agreement and my responsibilities hereunder.

12.     **Post-Employment Non-Competition Obligations.** I agree that for a period of one (1) year after the termination of my employment, for any reason, whatsoever, I will not, without the Company's express written consent, engage in any other employment or business that (i) directly or indirectly competes with the current or then anticipated future business of the Company and on which I directly or indirectly worked for the Company during the last 24 months of my employment; and/or (ii) would cause me to use or disclose or potentially use or disclose any trade secrets or proprietary or Confidential Information of the Company. I agree that, as a Director level and above employee, I am part of the Company's management personnel, and that the restrictions contained in this Section are necessary to protect against my disclosure of highly sensitive information of the business of the Company, including, but not limited to, the Company's trade secrets.

13.     **Non-Solicitation of Employees/Consultants.** During my employment with the Company and for a period of one (1) year thereafter, I will not directly or indirectly solicit away employees or consultants of the Company for my own benefit or for the benefit of any other person or entity.

14.     **Non-Solicitation of Suppliers/Customers.** During my employment, I will not directly or indirectly solicit away or otherwise take away customers or suppliers of the Company. After the termination of my employment with the Company, I will not directly or indirectly solicit away or otherwise take away customers or suppliers of the Company if, in so doing, I use or disclose any trade secrets or proprietary or confidential information of the Company. I agree that the non-public names and addresses of the Company's customers and suppliers, and all other confidential information related to them, including, but not limited to their buying and selling habits and special needs, created or obtained by me during my employment, constitute trade secrets or proprietary or confidential information of the Company.

15.     **Name & Likeness Rights.** I hereby authorize the Company to use, reuse, and to grant others acting on the Company's behalf the right to use and reuse, my name, photograph, likeness (including, but not limited to caricature), voice, and biographical information, and any reproduction or simulation thereof, in any form of media or technology now known or hereafter developed (including, but not limited to, film, video and digital or other electronic media), both during and after my employment, for purposes related to Company recruitment, research, development, promotion, and/or marketing the Company's image, and/or its current or anticipated products or services.

16.     **Injunctive Relief.** I understand that in the event of a breach or threatened breach of this Agreement by me the Company may suffer irreparable harm which would be difficult to calculate in monetary terms and for which damages would be an inadequate remedy. I agree that the Company shall be entitled, in addition to remedies otherwise available at law or in equity, to obtain and enforce immediately temporary restraining orders, preliminary injunctions, and final injunctions, without the posting of a bond enjoining such breach or threatened breach. Should the Company successfully enforce any portion of this Agreement before a trier of fact, the Company shall be entitled to receive and recover from me all of its reasonable attorney's fees, litigation expenses and costs incurred as a result of enforcing this Agreement against me.

17.     **Governing Law; Severability.** This Agreement will be governed by and construed in accordance with the laws of the State in which I reside during the course of my employment, without giving effect to its laws pertaining to conflict of laws. If any provision of this Agreement is determined by any court or arbitrator of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such provision will be enforced to the maximum extent possible given the intent of the parties hereto. If such clause or provision cannot be so enforced, such provision shall be stricken from this Agreement and the remainder of this Agreement shall be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in this Agreement.

18.     **Counterparts.** This Agreement may be executed in any number of counterparts, each of which when so executed and delivered will be deemed an original, and all of which together shall constitute one and the same agreement.

19.     **Entire Agreement.** This Agreement and the documents referred to herein constitute the entire agreement and understanding of the parties with respect to the subject matter of this Agreement, and supersede all prior understandings and agreements, whether oral or written, between or among the parties hereto with respect to the specific subject matter hereof.



20.    **Amendment and Waivers.** This Agreement may be amended only by a written agreement executed by each of the parties hereto. No amendment of or waiver of, or modification of any obligation under this Agreement will be enforceable unless set forth in a writing signed by the party against which enforcement is sought. Any amendment effected in accordance with this section will be binding upon all parties hereto and each of their respective successors and assigns. No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance. No waiver granted under this Agreement as to any one provision herein shall constitute a subsequent waiver of such provision or of any other provision herein, nor shall it constitute the waiver of any performance other than the actual performance specifically  waived.

21.    **Successors and Assigns; Assignment.** Except as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives.  The Company may assign any of its rights and obligations under this Agreement, without my further consent, and shall bind and inure to the benefit of the Company, its successors, and assigns. No other party to this Agreement may assign, whether voluntarily or by operation of law,  any of its rights and obligations under  this Agreement, except with the prior written consent of the Company. If the Company makes any assignment of the rights and/or obligations herein or transfers my employment or relationship within the Company, I agree that this Agreement shall remain binding upon me.

22.    **Further Assurances.** The parties agree to execute such further documents and instruments and to take such further actions as may be reasonably necessary to carry out the purposes and intent of this Agreement.

23.    **"At Will" Employment.** I understand that this Agreement does not constitute a contract of employment or obligate the Company to employ me for any stated period of time. I understand that I am an "at will" employee of the Company and that my employment can be terminated at any time, with or without notice and with or without cause, for any reason or for no reason, by either the Company or myself. I acknowledge that any statements or representations to the contrary are ineffective, unless put into a writing signed by the Company. I further acknowledge that my participation in any stock option or benefit program is not to be construed as any assurance of continuing employment for any particular period of time.

24.    **Effective Date of Agreement**. This Agreement shall be effective as of the first day I provide services to the Company.

| EMPLOYEE | TWITTER, INC. |
|---|---|
| *Mark Schobinger (will opt out of arbitration per process)* | |
| Signature | |
| Name: _Mark Schobinger (will opt out of arbitration per process)_ | |
| Dec 31, 2018 | Leslie Berland |
| Date | Head of People |

**EXHIBIT A**
**Disclosure of Previous Inventions**

1.  Except as listed in Section 2 below, the following is a complete list of all Inventions that were made by me, alone or jointly with others, prior to the date of this Agreement, which belong to me or in which I have other legal rights and/or interests, and which are not assigned to the Company (specifically excluding any open source projects to which you have contributed):

    ☑  No qualifying Inventions.

    ☐  Qualifying Inventions listed below:

    _____

    _____

    _____

    _____

    ☐  Additional Sheets Attached.

2.  Due to a prior confidentiality agreement, I cannot complete the disclosure under Section 1 above with respect to certain Inventions, which are listed and described generally below, the proprietary rights and duty of confidentiality with respect to which I owe to the following party(ies):

| | Invention | Party(ies) | Relationship |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |

    ☐  Additional sheets attached.

    ☐  There are qualifying Inventions, but I am not permitted to provide information to complete Section 2.

I certify that the information provided in this Exhibit A is accurate.

*Mark Schobinger (will opt out of arbitration per process)*
Mark Schobinger (will opt out of arbitration per process) (Dec 31, 2018)
Signature

Dec 31, 2018
Date

Printed Name:  Mark Schobinger (will opt out of arbitration per process)

**EXHIBIT B**
**Proprietary Information Obligations Checklist (On Hire)**

Twitter respects the right of every company to protect confidential and proprietary information. We don't want you (or anyone who works for us) to improperly use or disclose protected information of others. As such, it is important that you understand and comply with your continuing obligations to protect former employer information.

In addition, you must ensure that employment with Twitter, Inc. does not violate any legal and/or enforceable contractual obligation to a third party. In order to ensure your compliance with those obligations, please fill out, sign, and return this checklist on or before your start date.

| | Have you, without permission, taken home or retained, or brought to Twitter offices, or given to any Twitter employee anything belonging to a current or former employer, including, without limitation: | | |
|---|---|---|---|
| 1. | **Electronic files or hard copy documents?** (Examples – non-public customer contact lists, business papers, source code | Yes ☐ | No ☑ |
| 2. | **Equipment?** (Examples –keys, badges, computer disks, laptop, cell phone, etc.) | Yes ☐ | No ☑ |
| 3. | **Voicemails or emails?** (Including forwarding, without permission, your former voicemail or email accounts.) | Yes ☐ | No ☑ |

If you answered "Yes" to any of the above, please explain (attach additional sheets if needed):

_____

_____

_____

_____

I certify that the information provided in this Exhibit B is accurate.

*Mark Schobinger (will opt out of arbitration per process)*
Mark Schobinger (will opt out of arbitration per process) (Dec 31, 2018)
_____
Signature

Dec 31, 2018
_____
Date

Mark Schobinger (will opt out of arbitration per process)
_____
Printed Name

**EXHIBIT C**
**Notice under the Defend Trade Secrets Act of 2016**

" . . . An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that—(A) is made—(i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal....... An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual—(A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order."

**EXHIBIT D**
**Disclosure of Outside Employment or Activities**

*NOTE: The information you submit here will first be routed to your manager for his/her approval; after your manager approves, it goes to Legal Compliance. Legal Compliance may request additional information about the matter. If you have questions about this form, please email compliance@twitter.com.*

The following is a complete list of all of my existing employment and/or business relationships, including, but not limited to, any consulting or advising relationships, outside directorships, investments in privately held companies, and any other relationships that may create a conflict of interest with my employment with the Company.

☑ None.
☐ See below:

Description of the activity:

Type of organization:

☐ For-Profit
☐ Not-for-Profit
☐ Self-Employment
☐ Twitter Competitor
☐ Twitter Business Partner

Compensation Type (Paid or Volunteer)

☐ Volunteer
☐ Paid

Anticipated use of Twitter Resources, if any

Is this Related to your Work at Twitter?

☐ Additional Sheets Attached.

I certify that the information provided in this Exhibit D is accurate.

*Mark Schobinger (will opt out of arbitration per process)*
Mark Schobinger (will opt out of arbitration per process) (Dec 31, 2018)
Signature

Dec 31, 2018
Date

Mark Schobinger (will opt out of arbitration per process)
Printed Name

# EXHIBIT 2

## Fwd: compton report attached

**mschobinger@twitter.com Mark Schobinger**
To: markschobinger@gmail.com

Friday, March 3, 2023 at 3:49:57 PM Pacific Standard Time

---------- Forwarded message ---------
From: **Mark Schobinger** <mschobinger@twitter.com>
Date: Fri, Mar 3, 2023 at 8:16 AM
Subject: compton report attached
To: Victoria Yamamoto <vto@twitter.com>

Here is the report that includes the ACQ org employees...

--
**Mark Schobinger |** Head of Compensation

**Attachments:**

**CR - Compensation Detail Report_Compton 03032023 2023-03-03 12_14 CST.xlsx** 867k

# EXHIBIT 3

## Fwd: [Please approve] Deferred Cash Comp Payout - 3/1

**mschobinger@twitter.com Mark Schobinger**
To: markschobinger@gmail.com

Friday, March 3, 2023 at 3:49:29 PM Pacific Standard Time

---------- Forwarded message ---------
From: **Ling Hui** <lhui@twitter.com>
Date: Wed, Mar 1, 2023 at 2:29 PM
Subject: [Please approve] Deferred Cash Comp Payout - 3/1
To: Lindsay Chapman <lchapman@twitter.com>, Stacey Conti <sconti@twitter.com>, Mark Schobinger
<mschobinger@twitter.com>
CC: Fai Cheung <fcheung@twitter.com>



Thanks,

 **Ling Hui** | Dir., Finance Systems
She/Her | San Francisco, CA
Follow me @oOolinghuioOo

--
**Mark Schobinger |** Head of Compensation

---

**Attachments:**

**03.01.2023 Sharework_RSU Options_ HR Review.xlsx** 145k

# EXHIBIT 4



# EXHIBIT 5



1355 Market Street
San Francisco
California
94103

twitter.com

June 13, 2023

Mark Schobinger
markschobinger@gmail.com

Re: Confidential Reminder about Your Contractual Obligations

Dear Mark,

We are sending you this letter as a reminder of your obligations to comply with your contractual and statutory obligations to Twitter, to request that you return all Twitter documents and information that remain in your possession, and, as further outlined below, to request that you cooperate with Twitter in its efforts to ensure that no such Twitter documents or information remain in your possession.

We recently learned that in the months and weeks before your separation from Twitter, you accessed Twitter documents on Twitter's cloud-storage system, downloaded Twitter documents from the cloud-storage system to your desktop, uploaded Twitter documents to your personal Google Drive account, and emailed Twitter documents to your personal Google Mail account. These Twitter documents you accessed and transmitted include information that is confidential and sensitive to Twitter, including, but not limited to, compensation information and litigation-strategy information protected by the attorney-client privilege.

As a reminder, using or disclosing this confidential and sensitive information outside of your employment with Twitter qualifies as a breach of your Employee Invention Assignment and Confidentiality Agreement (the "Agreement"). Under the Agreement, you agreed not to use or disclose "Confidential Information," which the Agreement defines to include "information . . . that the Company or any subsidiary or affiliate of the Company . . . has or will develop, acquire, create, compile, discover or own, that has value in or to the Twitter Group's business which is not generally known or which the Company wishes to maintain as confidential." Such Confidential Information includes the compensation and litigation-strategy information in the Twitter documents you accessed and transmitted, which has value to Twitter, which is not generally known outside of Twitter, and which Twitter wishes to maintain as confidential.

Using and disclosing this confidential and sensitive information outside of your employment with Twitter also qualifies as misappropriation under the Texas Uniform Trade Secrets Act ("TUTSA"), which allows employers to seek expedited injunctive relief to protect their information. *See*, *e.g.*, *Chevron U.S.A., Inc. v. Guajardo*, CV H-17-1549, 2017 WL 2265694, at *1 (S.D. Tex. May 24, 2017) (issuing a temporary restraining order where the defendant-employee downloaded and emailed to his personal email account confidential information and trade secrets); *Keurig Dr Pepper Inc. v. Chenier*, 4:19-CV-505, 2019 WL 3958154, at *2 (E.D. Tex. Aug. 22, 2019) (issuing a temporary restraining order where the defendant-employee downloaded and emailed to himself confidential and trade secret information belonging to his employer); *Maxim Healthcare Staffing Services, Inc. v. Mata*, No. SA-21-CV-01100-XR, 2022 WL 106153, at *5 (W.D. Tex. Jan. 11, 2022) (issuing a temporary injunction where the defendant-employee emailed confidential and trade secret information to himself before his separation from his employer).



1355 Market Street
San Francisco
California
94103

twitter.com

Given the seriousness of this situation, I am informing you of your obligation to take reasonable steps to not delete or destroy any hard copies and electronically stored documents and communications related to your employment with Twitter, specifically including document and communications related to the Twitter documents you accessed and transmitted in the months and weeks before your separation.  This includes, but is not limited to, emails, text messages, iMessages, WhatsApp messages, Facebook messages, and any other types of digital documents and communications that you may have sent yourself or any other person or entity.  We trust that you will preserve, until directed otherwise, all hard copies and electronically stored documents and communications.  In the event of a dispute arising out of any failure to preserve documents, we will rely on this letter as evidence of our request and notice to you of your preservation obligations.

Finally, we respectfully ask that by 12:00 p.m. Central Daylight Time on June 16, 2023, you respond to this letter in writing 1) identifying all Twitter documents and information that you still maintain in your possession, 2) the current location of all Twitter documents and information that you still maintain in your possession, and 3) all individuals and entities with whom you have shared or disclosed, either directly or indirectly, any Twitter documents or information that you maintain in your possession.  We also respectfully request that by that same time, you return all such documents and information by emailing it to Twitter Human Resources at alum@twitter.com, copying me, and further confirming that you are willing to provide a declaration stating that you have returned all Twitter information and no longer possess same and confirming that you are willing to submit your personal computer to a forensic review by an independent third-party forensic analyst to ensure that you do not advertently or inadvertently possess any such information.  From there, we can coordinate your execution of that declaration and the forensic review.

We appreciate your contributions to Twitter and thank you in advance for your cooperation with this letter.  If we do not hear from you by 12:00 p.m. on June 16th, however, we will assume that you do not intend to cooperate with this letter and will take appropriate legal steps to protect Twitter's information.  Please let us know if you have any questions.

Sincerely,

Adam Mehes
Acting Head of Litigation
X Corp.

# EXHIBIT 6



On Fri, Jun 16, 2023 at 5:26 AM Shannon Liss-Riordan <sliss@llrlaw.com> wrote:

Adam -

Please be advised that our firm represents Mark Schobinger, and we are in receipt of the exchange below and your attached letter.  Mr. Schobinger has affirmed for you that he is not in possession of any Twitter sensitive or confidential materials.

I trust that this takes care of your concern.

Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
Tel: (617) 994-5800
Fax: (617) 994-5801
sliss@llrlaw.com
www.llrlaw.com

Begin forwarded message:

> **From:** Mark Schobinger <markschobinger@gmail.com>
> **Date:** June 13, 2023 at 3:45:30 PM EDT
> **To:** Adam Mehes <amehes@twitter.com>
> **Cc:** Mark Schobinger <markschobinger@gmail.com>
> **Subject: Cease and Desist**
>
> Adam,
>
> Hi. I am acknowledging receipt of your letter. I am not in possession of any Twitter sensitive or confidential information and have returned my laptop. While employed I was asked to work on a variety of sensitive

matters, some of which required me to keep local copies at the request of Mary Hansbury in order to work expeditiously on her timetable. I did this during my tenure at Twitter, and as a professional responded to inquiries all the way through the date my access was revoked. When I gave notice, I was asked to make sure all sensitive files or anything related to various legal holds I was already on were on goggle drive and/or box as part of my transition. I complied with that request. Reports, if any, that were maintained locally were immediately removed after confirming the files existed on Twitter's secure drives (Google drive and/or box) to ensure I departed with no Twitter documents except for my pay slips and grant agreement documents.
By receipt of this email, I confirm I do not have access to any Twitter sensitive documents.

Regards,
Mark



Regards,
Mark


On Jun 13, 2023, at 1:42 PM, Adam Mehes <amehes@twitter.com> wrote:



Dear Mark,


Please see the attached letter.  Feel free to reach out to me at this email or by phone at 347-417-4940 if you have any questions.


Thanks,

Adam

# EXHIBIT 7

## Bramble, John

| | |
|---|---|
| **From:** | Shannon Liss-Riordan <sliss@llrlaw.com> |
| **Sent:** | Monday, June 19, 2023 8:05 AM |
| **To:** | Moll, Stefanie R. |
| **Cc:** | Wallace, Thomas Cullen; Bramble, John; Bradley Manewith |
| **Subject:** | Re: Mark Schobinger |

[EXTERNAL EMAIL]
Stefanie - I'm out today but can talk after a court hearing tomorrow afternoon or I have more availability on Wednesday.

-----------------------------
Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
Tel: (617) 994-5800
Fax: (617) 994-5801
sliss@llrlaw.com
www.llrlaw.com


On Jun 18, 2023, at 10:41 AM, Moll, Stefanie R. <stefanie.moll@morganlewis.com> wrote:


Shannon,

Not surprisingly, I disagree both with respect to what Mr. Schobinger committed to do and that the review Twitter proposed is "intrusive," particularly given the nature of the documents that Mr. Schobinger took and Twitter's obligation to further investigate this matter.  But let's see if a phone call can help resolve our dispute.  I have very good availability on Monday the 19th before 6:00 pm (CST).  Please let me know what works for you and I will send a meeting request.

Thank you,


**Stefanie R. Moll**
**Morgan, Lewis & Bockius LLP**
1000 Louisiana Street, Suite 4000 | Houston, TX 77002-5005
Direct: +1.713.890.5780 | Main: +1.713.890.5000 | Fax: +1.713.890.5001 | Mobile: +1.832.452.4737
stefanie.moll@morganlewis.com | www.morganlewis.com
Assistant: Nanci D. Mohr | +1.713.890.5738 | nanci.mohr@morganlewis.com




1

**From:** Shannon Liss-Riordan <sliss@llrlaw.com>
**Sent:** Saturday, June 17, 2023 7:58 AM
**To:** Moll, Stefanie R. <stefanie.moll@morganlewis.com>
**Cc:** Wallace, Thomas Cullen <cullen.wallace@morganlewis.com>; Bramble, John <john.bramble@morganlewis.com>; Bradley Manewith <bmanewith@llrlaw.com>
**Subject:** Re: Mark Schobinger

[EXTERNAL EMAIL]

Stefanie -  It is my understanding that Mr. Schobinger did not commit to any such intrusive review. He has affirmed that he does not have any sensitive confidential materials.  I'm happy to discuss with you next week.

Shannon

-----------------------------
Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
Tel: (617) 994-5800
Fax: (617) 994-5801
sliss@llrlaw.com
www.llrlaw.com


> On Jun 17, 2023, at 8:35 AM, Moll, Stefanie R. <stefanie.moll@morganlewis.com> wrote:
>
>
> Shannon,
>
> It is nice to "meet" you, at least electronically for now.
>
> My firm represents Twitter in this matter and Mr. Mehes forwarded me your email from this morning.  As I'm sure Mr. Schobinger informed you, he readily agreed to host a team member from Twitter's information security (InfoSec) team at his home to confirm his statements (attached) that he is no longer "in possession of any Twitter sensitive or confidential information" despite having previously transferred such information to his personal computer and to his personal email address.  His cooperation in this process is necessary in connection with our regulatory requirements to investigate this matter.
>
> Now that we know you are representing Mr. Schobinger, we of course want to coordinate InfoSec's visit with you.  Please provide us with dates early next week for the forensic review that work for Mr. Schobinger (and for you to the extent you would like to be present or at least available at that time).
>
> Thank you for your prompt attention to this matter.

2

**Stefanie R. Moll**

**Morgan, Lewis & Bockius LLP**

1000 Louisiana Street, Suite 4000 | Houston, TX 77002-5005
Direct: +1.713.890.5780 | Main: +1.713.890.5000 | Fax: +1.713.890.5001 | Mobile:
+1.832.452.4737
stefanie.moll@morganlewis.com | www.morganlewis.com
Assistant: Nanci D. Mohr | +1.713.890.5738 | nanci.mohr@morganlewis.com

On Fri, Jun 16, 2023 at 5:26 AM Shannon Liss-Riordan <sliss@llrlaw.com> wrote:

> Adam -
>
> Please be advised that our firm represents Mark Schobinger, and we are in receipt of
> the exchange below and your attached letter.  Mr. Schobinger has affirmed for you
> that he is not in possession of any Twitter sensitive or confidential materials.
>
> I trust that this takes care of your concern.
>
> Shannon Liss-Riordan
> Lichten & Liss-Riordan, P.C.
> 729 Boylston Street, Suite 2000
> Boston, Massachusetts 02116
> Tel: (617) 994-5800
> Fax: (617) 994-5801
> sliss@llrlaw.com
> www.llrlaw.com
>
> Begin forwarded message:
>
>> **From:** Mark Schobinger
>> <markschobinger@gmail.com>
>> **Date:** June 13, 2023 at 3:45:30 PM EDT
>> **To:** Adam Mehes
>> <amehes@twitter.com>
>> **Cc:** Mark Schobinger
>> <markschobinger@gmail.com>
>> **Subject: Cease and Desist**
>>
>> Adam,
>>
>> Hi. I am acknowledging receipt of your
>> letter. I am not in possession of any
>> Twitter sensitive or confidential
>> information and have returned my
>> laptop. While employed I was asked to

work on a variety of sensitive matters, some of which required me to keep local copies at the request of Mary Hansbury in order to work expeditiously on her timetable. I did this during my tenure at Twitter, and as a professional responded to inquiries all the way through the date my access was revoked. When I gave notice, I was asked to make sure all sensitive files or anything related to various legal holds I was already on were on goggle drive and/or box as part of my transition. I complied with that request. Reports, if any, that were maintained locally were immediately removed after confirming the files existed on Twitter's secure drives (Google drive and/or box) to ensure I departed with no Twitter documents except for my pay slips and grant agreement documents.
By receipt of this email, I confirm I do not have access to any Twitter sensitive documents.

Regards,
Mark


Regards,
Mark


On Jun 13, 2023, at 1:42 PM, Adam Mehes <amehes@twitter.com> wrote:


Dear Mark,

Please see the attached letter.  Feel free to reach out to me at this email or by phone at 347-417-

4940 if you have any
questions.

Thanks,

Adam

# EXHIBIT 8

# Bramble, John

| | |
|---|---|
| **From:** | Moll, Stefanie R. |
| **Sent:** | Wednesday, June 28, 2023 2:18 PM |
| **To:** | Shannon Liss-Riordan |
| **Cc:** | Bradley Manewith; Bramble, John; Wallace, Thomas Cullen |
| **Subject:** | Mark Schobinger Forensic Protocol |
| **Attachments:** | Proposed Forensic Protocol (Twitter - Schobinger).pdf |

Shannon,

In follow up to our last conversation, I am attaching a draft forensic protocol. The protocol contemplates that both sides will be involved in selecting a third-party forensic analyst to perform the analysis and that Twitter, of course, will cover the costs associated with Mr. Schobinger's compliance with the protocol.

The protocol is narrowly tailored and limited to Twitter documents that were most likely in Mr. Schobinger's possession when he resigned and later when we sent our preservation letter, particularly including documents that Mr. Schobinger accessed during the weeks leading up to his resignation and folders that Mr. Schobinger uploaded to his Google Drive during the months, weeks, and days leading up to his resignation, as reflected by our internal preliminary analysis.

As discussed during our call, many of these documents include highly sensitive compensation information and Mr. Schobinger's cooperation is necessary in connection with our regulatory requirements to investigate this matter. Consistent with the narrow scope of the protocol, however, we have no interest in viewing or accessing Mr. Schobinger's personal documents, including those related to his employment with Twitter. The attached protocol reflects that.

Moreover, to ensure that Mr. Schobinger has not shared any of Twitter's sensitive information either by transmitting hard copy documents or by word-of-mouth, Twitter also requests that Mr. Schobinger submit a declaration stating as much, which we would be happy to draft.

Let's work toward selecting a forensic analyst by this Friday, June 30. There are a number of competent ones in the area who we could retain. I will make myself available to connect with you before then if you would like to discuss any aspect of the protocol.

Thank you very much for your attention to this matter.

**Stefanie R. Moll**
**Morgan, Lewis & Bockius LLP**
1000 Louisiana Street, Suite 4000 | Houston, TX 77002-5005
Direct: +1.713.890.5780 | Main: +1.713.890.5000 | Fax: +1.713.890.5001
Assistant: Nanci Mohr | +1.713.890.5738 | nanci.mohr@morganlewis.com

1717 Main Street, Suite 3200 | Dallas, TX 75201-7347
Direct: +1.214.466.4113 | Main: +1.214.466.4000 | Fax: +1.214.466.4001
stefanie.moll@morganlewis.com | www.morganlewis.com

Morgan Lewis

150 YEARS OF RAISING THE BAR

Learn More

# EXHIBIT 9

## PROPOSED FORENSIC PROTOCOL
## MARK SCHOBINGER

1. Schobinger and Twitter (collectively, the "Parties") will select a third-party forensic analyst ("Forensic Analyst") to identify and remove certain documents and data from any personal computer, mobile device used to conduct Twitter business, electronic storage device, email account, and cloud storage account ("Devices and Accounts") that Schobinger used from April 25, 2023 to the present (the "Protocol"). The Parties shall select the Forensic Analyst no later than Friday, June 30, 2023.

2. Schobinger will cooperate with the Forensic Analyst to carry out the terms of this Protocol, including by providing the Forensic Analyst with access to the Devices and Accounts.

3. The Forensic Analyst shall create and maintain a forensic image of the Devices and Accounts before segregating, altering, or deleting any documents or data from the Devices and Accounts.

4. The Forensic Analyst will search the Devices and Accounts for all emails originating from mschobinger@twitter.com and will provide the Parties' counsel with a file listing identifying all responsive emails. The file listing will be treated as attorneys' eyes only. The Forensic Analyst will make and provide to Twitter forensic copies of these emails and any attachments and the originals will be permanently deleted from the Devices and Accounts unless Schobinger objects and provides a good-faith, reasonable basis why such emails and attachments are personal in nature rather than proprietary to Twitter.

5. The Forensic Analyst will search the Devices and Accounts for all documents that include "Twitter" in the filename or any metadata field of the document and will provide the Parties' counsel with a file listing identifying all responsive documents. The file listing will be treated as attorneys' eyes only. The Forensic Analyst will make and provide to Twitter forensic copies of these documents and the originals will be permanently deleted from the Devices and Accounts unless Schobinger objects and provides a good-faith, reasonable basis why such documents are personal in nature rather than proprietary to Twitter.

6. Twitter will provide the Forensic Analyst with the MD#5 values of the documents that Schobinger downloaded in the weeks leading up to his resignation, as detailed in Exhibit 1, and the Forensic Analyst will search

for and, if found, make and provide to Twitter forensic copies of such documents and permanently delete the originals from the Devices and Accounts.

7.  The Forensic Analyst will search the Devices and Accounts for the folders and file that Schobinger uploaded to his Google Drive account in the months leading up to his resignation, as detailed in Exhibit 2, and the Forensic Analyst will search for and, if found, make and provide to Twitter forensic copies of such folders and file and permanently delete the originals from the Devices and Accounts unless Schobinger objects and provides a good-faith, reasonable basis for why such folders and file are personal in nature rather than proprietary to Twitter.

8.  After all documents and data set forth in paragraphs 4 through 7, and Exhibits 1 and 2, of this Protocol have been deleted from the Devices and Accounts, as identified in the Protocol, including any backups, shadow volumes, recycle bin contents, and free space, the Forensic Analyst will certify to the Parties' counsel that it completed the deletions pursuant to this Protocol.

9.  No later than one month after the Forensic Analyst certifies that it completed the deletions pursuant to this Protocol and provided to Twitter forensic copies of the documents and data set forth in paragraphs 4 through 7, and Exhibits 1 and 2, of this Protocol, the Forensic Analyst will permanently delete all forensic images in its possession and will certify to the Parties' counsel that it has deleted such forensic images.

10. Twitter will cover the expense of Schobinger complying with this Protocol.

# EXHIBIT 1
# DOWNLOAD FILE NAMES

1.     TWTR_Lapse_Schedule_Report.zip

2.     TWTR_Grant_Award_052423.xlsx

3.     Phase One_ Comp Planning Master [March 2023].xlsx

4.     AON CONSULTING INC_Compensation Survey 22 - signed (1).pdf

5.     JobFamilyReport - 5_24_2023 9_6_20  AM.xlsx

6.     FAQ for Separated Twitter Employees.pdf

7.     FAQ for Separated Twitter Employees.docx

8.     A_C [POST CLOSE - DRAFT] Twitter acquisition_ Tweep FAQ - October 2022.pdf

9.     A_C [POST CLOSE - DRAFT] Twitter acquisition_ Tweep FAQ - October 2022.docx

10.    VestingSchedule (3).xlsx

11.    Client Attorney Privileged - France EE Listing.xlsx

12.    CR - Compensation Detail Report_Compton 05222023 2023-05-22 09_18 CDT.xlsx

13.    Go_COBRA FAQ .docx

14.    Go_COBRA FAQ  (2).docx

15.    Twitter Private Company Long-Term Incentive Programs and Strategy - October 2022 (1).pdf

16.    TWTR_GrantActivity_20230518 (1).xlsx

17.    TWTR_GrantActivity_20230518.xlsx

18.    2022 Annual Plan Legal Notice.pdf

19.    Twitter_Inc-SMM 1-1-2022.pdf

20.    401(k) Plan Highlights 2021.pdf

21.    401(k) FAQs .docx

22.    401(k) FAQs .pdf

23.    Twitter Inc SPD 1-1-2022.pdf

24.    document (2).pdf

25.    document (1).pdf

26.    TWTR_LapseSchedule_20230517 (1).zip

27.    TWTR_LapseSchedule_20230517.zip

28.    VestingSchedule (2).xlsx

29.    VestingSchedule (2).xlsx

30.    Execs - PRSU - Waiver of Performance Metrics - Considered
       Achieved.docx

31.    US RIF & Opt Outs who have not Signed Sep Agreements.xlsx

32.    NEW_WFH Policy (Twitter 2.0).docx

33.    VestingSchedule (2).xlsx

34.    PBP_FAQs.docx

35.    PBP_Examples of Mechanics.docx

36.    Twitter 2.0 - Compensation + Equity.pptx

37.    Twitter 2.0 Compensation One Pager.docx

38.    Restricted Stock Units.html

39.    PBP.html

40.    Base Salary.html

41.    Compensation cycles.html

42.    Payout.html

43.  Target Quota Model.html

44.  Revenue Share Model.html

45.  Sales Incentive Plan.html

46.  How we think about compensation.html

47.  How we think about compensation.html

48.  Our global approach to pay.html

49.  Separation Agreement Request (Global) Responses (1).xlsx

50.  Q1-2023 Sales Incentive (go_q1salesincentive) (2).xlsx

51.  RGCD-Data-Validation-Report.pdf

52.  RGCD-Data-Validation-Report.pdf

53.  2023_RGCD_Job_Catalogue.pdf

54.  2023_RGCD_Job_Catalogue.pdf

55.  2022_Radford_GCD_Functional_Job_Matrix (1).xlsx

56.  2022_Radford_GCD_Functional_Job_Matrix (1).xlsx

57.  2022_Radford_GCD_YOY_Mapping (1).xlsx

58.  2022_Radford_GCD_YOY_Mapping (1).xlsx

59.  2022_Radford_GCD_YOY_Mapping.xlsx

60.  2022_Radford_GCD_YOY_Mapping.xlsx

61.  2022_Radford_GCD_Roll_Up_Jobs_Detailed_Definitions.xlsx

62.  2022_Radford_GCD_Roll_Up_Jobs_Detailed_Definitions.xlsx

63.  2022_Radford_GCD_Roll_Up_Jobs_Definitions (1).xlsx

64.  2022_Radford_GCD_Roll_Up_Jobs_Definitions (1).xlsx

65.  2022_Radford_GCD_JobList_and_Descriptions (1).xlsx

66.  2022_Radford_GCD_JobList_and_Descriptions (1).xlsx

67.  2022_Radford_GCD_Job_Family_Descriptions.docx

68.  2022_Radford_GCD_Job_Family_Descriptions.docx

69.  2022_Radford_GCD_Functional_Job_Matrix.xlsx

70.  2022_Radford_GCD_Functional_Job_Matrix.xlsx

71.  2023_Radford_GCD_YOY_Job_Mapping.xlsx

72.  2023_Radford_GCD_YOY_Job_Mapping.xlsx

73.  2023_Radford_GCD_Job_Family_Descriptions.docx

74.  2023_Radford_GCD_Job_Family_Descriptions.docx

75.  2023-Radford_GCD_Functional_Job_Matrix.xlsx

76.  2023-Radford_GCD_Functional_Job_Matrix.xlsx

77.  JobFamilyReport - 5_8_2023 18_36_28  PM.xlsx

78.  JobFamilyReport - 5_8_2023 18_36_28  PM.xlsx

79.  Phase Two_ Equity Planning Master [April 2023] (1).xlsx

80.  Phase Two_ Equity Planning Master [April 2023] (1).xlsx

81.  2022 Market Pricing Enhancement Tool Development (Bianco).xlsx

82.  2022 Market Pricing Enhancement Tool Development (Bianco).xlsx

83.  Salary adjustment  CCT 2023 - TWITTER.XLSX

84.  Salary adjustment  CCT 2023 - TWITTER.XLSX

85.  TWTR_LapseSchedule_20230505.xlsx

86.  TWTR_LapseSchedule_20230505.xlsx

87.  Phase Two_ Equity Planning Master [April 2023].xlsx

88.  Phase Two_ Equity Planning Master [April 2023].xlsx

89.    Q1-2023 Sales Incentive (go_q1salesincentive) (1).xlsx

90.    Q1-2023 Sales Incentive (go_q1salesincentive) (1).xlsx

91.    CR - Compensation Detail Report_Compton 05052023 2023-05-05
       12_02 CDT.xlsx

92.    CR - Compensation Detail Report_Compton 05052023 2023-05-05
       12_02 CDT.xlsx

**EXHIBIT 2**
**UPLOAD FILE AND FOLDER NAMES**

1.   401k

2.   Benchmarking

3.   Comp Cmte Meetings

4.   Finals

5.   HR Transition 2022-2023

6.   Playbooks

7.   Projects

8.   Reports

9.   Go_COBRA FAQ .docx

# EXHIBIT 10

# Bramble, John

| | |
|---|---|
| **From:** | Moll, Stefanie R. |
| **Sent:** | Thursday, June 29, 2023 4:57 PM |
| **To:** | Shannon Liss-Riordan |
| **Cc:** | Wallace, Thomas Cullen; Bramble, John; Bradley Manewith |
| **Subject:** | RE: Mark Schobinger Forensic Protocol |

Shannon,

Our preliminary forensic analysis shows that Mr. Schobinger improperly sent sensitive and highly confidential Twitter documents to his personal email address. He also uploaded confidential Twitter documents to his personal Google Drive account. He did this in the months, weeks, and days leading up to his resignation. His actions were in breach of Twitter's policies and there is no reason connected to company purposes or his work that would explain his actions. So while I appreciate Mr. Schobinger's unsworn representations that he no longer has these documents, the evidence demonstrates otherwise and we will ask a court to protect the information in those documents and folders if Mr. Schobinger is unwilling to do so on his own.

We understand your response below to mean that Mr. Schobinger will not be complying with the proposed protocol and that you will not be proposing a revised protocol. If that is incorrect, please let us know by Wednesday, July 5. Otherwise, please let us know by that date who at your office will be handling this matter in your absence since we will have no choice but to go to court next week.

Thank you,

**Stefanie R. Moll**
**Morgan, Lewis & Bockius LLP**
1000 Louisiana Street, Suite 4000 | Houston, TX 77002-5005
Direct: +1.713.890.5780 | Main: +1.713.890.5000 | Fax: +1.713.890.5001 | Mobile: +1.832.452.4737
stefanie.moll@morganlewis.com | www.morganlewis.com
Assistant: Nanci D. Mohr | +1.713.890.5738 | nanci.mohr@morganlewis.com



**150 YEARS OF RAISING THE BAR**

Learn More

**From:** Shannon Liss-Riordan <sliss@llrlaw.com>
**Sent:** Thursday, June 29, 2023 1:14 PM
**To:** Moll, Stefanie R. <stefanie.moll@morganlewis.com>
**Cc:** Bradley Manewith <bmanewith@llrlaw.com>; Bramble, John <john.bramble@morganlewis.com>; Wallace, Thomas Cullen <cullen.wallace@morganlewis.com>
**Subject:** RE: Mark Schobinger Forensic Protocol

[EXTERNAL EMAIL]
Stefanie -

As Mr. Schobinger explained, and I have reiterated on his behalf, he does not have any confidential sensitive files from Twitter.  I am leaving on vacation this weekend and will be away for two weeks, and he is also not available next week. We don't see what legal basis you have to force him to go through this protocol.

Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel: (617) 994-5800
Fax: (617) 994-5801
sliss@llrlaw.com
www.llrlaw.com

**From:** Moll, Stefanie R. <stefanie.moll@morganlewis.com>
**Sent:** Wednesday, June 28, 2023 3:18 PM
**To:** Shannon Liss-Riordan <sliss@llrlaw.com>
**Cc:** Bradley Manewith <bmanewith@llrlaw.com>; Bramble, John <john.bramble@morganlewis.com>; Wallace, Thomas Cullen <cullen.wallace@morganlewis.com>
**Subject:** Mark Schobinger Forensic Protocol

Shannon,

In follow up to our last conversation, I am attaching a draft forensic protocol.  The protocol contemplates that both sides will be involved in selecting a third-party forensic analyst to perform the analysis and that Twitter, of course, will cover the costs associated with Mr. Schobinger's compliance with the protocol.

The protocol is narrowly tailored and limited to Twitter documents that were most likely in Mr. Schobinger's possession when he resigned and later when we sent our preservation letter, particularly including documents that Mr. Schobinger accessed during the weeks leading up to his resignation and folders that Mr. Schobinger uploaded to his Google Drive during the months, weeks, and days leading up to his resignation, as reflected by our internal preliminary analysis.

As discussed during our call, many of these documents include highly sensitive compensation information and Mr. Schobinger's cooperation is necessary in connection with our regulatory requirements to investigate this matter. Consistent with the narrow scope of the protocol, however, we have no interest in viewing or accessing Mr. Schobinger's personal documents, including those related to his employment with Twitter.  The attached protocol reflects that.

Moreover, to ensure that Mr. Schobinger has not shared any of Twitter's sensitive information either by transmitting hard copy documents or by word-of-mouth, Twitter also requests that Mr. Schobinger submit a declaration stating as much, which we would be happy to draft.

Let's work toward selecting a forensic analyst by this Friday, June 30.  There are a number of competent ones in the area who we could retain.  I will make myself available to connect with you before then if you would like to discuss any aspect of the protocol.

Thank you very much for your attention to this matter.

**Stefanie R. Moll**
**Morgan, Lewis & Bockius LLP**
1000 Louisiana Street, Suite 4000 | Houston, TX 77002-5005
Direct: +1.713.890.5780 | Main: +1.713.890.5000 | Fax: +1.713.890.5001

Assistant: Nanci Mohr | +1.713.890.5738 | nanci.mohr@morganlewis.com

1717 Main Street, Suite 3200 | Dallas, TX 75201-7347
Direct: +1.214.466.4113 | Main: +1.214.466.4000 | Fax: +1.214.466.4001
stefanie.moll@morganlewis.com | www.morganlewis.com



150 YEARS OF RAISING THE BAR

Learn More

# EXHIBIT 11

# DOWNLOAD FILE NAMES

1.   TWTR_Lapse_Schedule_Report.zip

2.   TWTR_Grant_Award_052423.xlsx

3.   Phase One_ Comp Planning Master [March 2023].xlsx

4.   AON CONSULTING INC_Compensation Survey 22 - signed (1).pdf

5.   JobFamilyReport - 5_24_2023 9_6_20  AM.xlsx

6.   FAQ for Separated Twitter Employees.pdf

7.   FAQ for Separated Twitter Employees.docx

8.   A_C [POST CLOSE - DRAFT] Twitter acquisition_ Tweep FAQ - October 2022.pdf

9.   A_C [POST CLOSE - DRAFT] Twitter acquisition_ Tweep FAQ - October 2022.docx

10.  VestingSchedule (3).xlsx

11.  Client Attorney Privileged - France EE Listing.xlsx

12.  CR - Compensation Detail Report_Compton 05222023 2023-05-22 09_18 CDT.xlsx

13.  Go_COBRA FAQ .docx

14.  Go_COBRA FAQ  (2).docx

15.  Twitter Private Company Long-Term Incentive Programs and Strategy - October 2022 (1).pdf

16.  TWTR_GrantActivity_20230518 (1).xlsx

17.  TWTR_GrantActivity_20230518.xlsx

18.  2022 Annual Plan Legal Notice.pdf

19.  Twitter_Inc-SMM 1-1-2022.pdf

20.  401(k) Plan Highlights 2021.pdf

21.   401(k) FAQs .docx

22.   401(k) FAQs .pdf

23.   Twitter Inc SPD 1-1-2022.pdf

24.   document (2).pdf

25.   document (1).pdf

26.   TWTR_LapseSchedule_20230517 (1).zip

27.   TWTR_LapseSchedule_20230517.zip

28.   VestingSchedule (2).xlsx

29.   VestingSchedule (2).xlsx

30.   Execs - PRSU - Waiver of Performance Metrics - Considered Achieved.docx

31.   US RIF & Opt Outs who have not Signed Sep Agreements.xlsx

32.   NEW_WFH Policy (Twitter 2.0).docx

33.   VestingSchedule (2).xlsx

34.   PBP_FAQs.docx

35.   PBP_Examples of Mechanics.docx

36.   Twitter 2.0 - Compensation + Equity.pptx

37.   Twitter 2.0 Compensation One Pager.docx

38.   Restricted Stock Units.html

39.   PBP.html

40.   Base Salary.html

41.   Compensation cycles.html

42.   Payout.html

43.   Target Quota Model.html

44.   Revenue Share Model.html

45.   Sales Incentive Plan.html

46.   How we think about compensation.html

47.   How we think about compensation.html

48.   Our global approach to pay.html

49.   Separation Agreement Request (Global) Responses (1).xlsx

50.   Q1-2023 Sales Incentive (go_q1salesincentive) (2).xlsx

51.   RGCD-Data-Validation-Report.pdf

52.   RGCD-Data-Validation-Report.pdf

53.   2023_RGCD_Job_Catalogue.pdf

54.   2023_RGCD_Job_Catalogue.pdf

55.   2022_Radford_GCD_Functional_Job_Matrix (1).xlsx

56.   2022_Radford_GCD_Functional_Job_Matrix (1).xlsx

57.   2022_Radford_GCD_YOY_Mapping (1).xlsx

58.   2022_Radford_GCD_YOY_Mapping (1).xlsx

59.   2022_Radford_GCD_YOY_Mapping.xlsx

60.   2022_Radford_GCD_YOY_Mapping.xlsx

61.   2022_Radford_GCD_Roll_Up_Jobs_Detailed_Definitions.xlsx

62.   2022_Radford_GCD_Roll_Up_Jobs_Detailed_Definitions.xlsx

63.   2022_Radford_GCD_Roll_Up_Jobs_Definitions (1).xlsx

64.   2022_Radford_GCD_Roll_Up_Jobs_Definitions (1).xlsx

65.   2022_Radford_GCD_JobList_and_Descriptions (1).xlsx

66.   2022_Radford_GCD_JobList_and_Descriptions (1).xlsx

67.  2022_Radford_GCD_Job_Family_Descriptions.docx

68.  2022_Radford_GCD_Job_Family_Descriptions.docx

69.  2022_Radford_GCD_Functional_Job_Matrix.xlsx

70.  2022_Radford_GCD_Functional_Job_Matrix.xlsx

71.  2023_Radford_GCD_YOY_Job_Mapping.xlsx

72.  2023_Radford_GCD_YOY_Job_Mapping.xlsx

73.  2023_Radford_GCD_Job_Family_Descriptions.docx

74.  2023_Radford_GCD_Job_Family_Descriptions.docx

75.  2023-Radford_GCD_Functional_Job_Matrix.xlsx

76.  2023-Radford_GCD_Functional_Job_Matrix.xlsx

77.  JobFamilyReport - 5_8_2023 18_36_28  PM.xlsx

78.  JobFamilyReport - 5_8_2023 18_36_28  PM.xlsx

79.  Phase Two_ Equity Planning Master [April 2023] (1).xlsx

80.  Phase Two_ Equity Planning Master [April 2023] (1).xlsx

81.  2022 Market Pricing Enhancement Tool Development (Bianco).xlsx

82.  2022 Market Pricing Enhancement Tool Development (Bianco).xlsx

83.  Salary adjustment  CCT 2023 - TWITTER.XLSX

84.  Salary adjustment  CCT 2023 - TWITTER.XLSX

85.  TWTR_LapseSchedule_20230505.xlsx

86.  TWTR_LapseSchedule_20230505.xlsx

87.  Phase Two_ Equity Planning Master [April 2023].xlsx

88.  Phase Two_ Equity Planning Master [April 2023].xlsx

89.  Q1-2023 Sales Incentive (go_q1salesincentive) (1).xlsx

90. Q1-2023 Sales Incentive (go_q1salesincentive) (1).xlsx

91. CR - Compensation Detail Report_Compton 05052023 2023-05-05 12_02 CDT.xlsx

92. CR - Compensation Detail Report_Compton 05052023 2023-05-05 12_02 CDT.xlsx

# EXHIBIT 12

## **UPLOAD FOLDER NAMES**

1.   401k

2.   Benchmarking

3.   Comp Cmte Meetings

4.   Finals

5.   HR Transition 2022-2023

6.   Playbooks

7.   Projects

8.   Reports

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Nanci Mohr on behalf of Stefanie Moll
Bar No. 24002870
nanci.mohr@morganlewis.com
Envelope ID: 77280820
Filing Code Description: Petition
Filing Description: X Corp's Verified Original Petition and Application for
Temporary Restraining Order, Temporary Injunction and Permanent
Injunction-EV# 77280820
Status as of 7/7/2023 10:20 AM CST

Associated Case Party: X CORP., Successor in Interest to Twitter, Inc

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stefanie R.Moll | | stefanie.moll@morganlewis.com | 7/6/2023 10:39:46 PM | SENT |
| Thomas CullenWallace | | cullen.wallace@morganlewis.com | 7/6/2023 10:39:46 PM | SENT |
| John Bramble | | john.bramble@morganlewis.com | 7/6/2023 10:39:46 PM | SENT |
| Nanci Mohr | | nanci.mohr@morganlewis.com | 7/6/2023 10:39:46 PM | SENT |

23-1074-C395

CAUSE NO. _____

| X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC. | § | IN THE DISTRICT COURT OF |
|---|---|---|
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | WILLIAMSON COUNTY, TEXAS |
| | § | |
| MARK SCHOBINGER | § | |
| | § | |
| *Defendant*. | § | _____ JUDICIAL DISTRICT |

## **TEMPORARY RESTRAINING ORDER**

Plaintiff X Corp., successor in interest to Twitter, Inc. ("Twitter"), filed a Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction ("TRO Application") against Defendant Mark Schobinger ("Schobinger").  Having considered Twitter's TRO Application, the evidence attached thereto, and argument of counsel, the Court finds that the TRO Application shall be in all things **GRANTED**.

Based on the evidence and verified allegations in Twitter's TRO Application, the Court preliminarily finds that: (i) Schobinger received access to Twitter's confidential and sensitive information during his employment with Twitter; (ii) Schobinger downloaded documents containing Twitter's confidential and sensitive information and transmitted such documents to his personal email and personal Google Drive accounts during the months, weeks, and days before his employment ended; (iii) Schobinger also maintained on his personal Google Drive account a folder entitled "Work," with numerous subfolders relating to his work with Twitter; (iv) when confronted, Schobinger admitted to Twitter that he transmitted Twitter documents to his personal email and personal Google Drive accounts but further stated that he deleted such documents; (v) Schobinger admitted to

Envelope# 77280820

deleting at least some of these documents after receiving Twitter's preservation demand; (vi) Schobinger agreed to submit to a forensic review to confirm he deleted Twitter's information from his devices and accounts; (vii) after obtaining counsel, however, Schobinger reneged on his agreement to submit to a forensic review and refused to provide Twitter with any sworn statement that he actually deleted and did not disclose its confidential and sensitive information; and (viii) Schobinger is in a position to use such information to his benefit and to Twitter's and its employees' detriment. Based on the foregoing, the Court finds that Twitter will suffer probable, imminent, and irreparable harm if the Court does not enter a temporary restraining order.

To preserve the status quo until a hearing on Twitter's Temporary Injunction Application, the Court **ORDERS** that Schobinger and all others acting in concert with him are restrained from:

   a.   directly or indirectly possessing, using, or disclosing the documents and folders listed in Exhibits 1 and 2; and

   b.   directly or indirectly possessing, using, or disclosing information in the documents and folders listed in Exhibits 1 and 2.

For the avoidance of doubt, this Order restrains neither Schobinger nor others acting in concert with Schobinger from seeking discovery from Twitter pursuant to the procedural rules of the court presiding over the putative class action lawsuit Schobinger filed against Twitter in the US District Court for the Northern District of California – San Francisco Division (the "Lawsuit"), or from using such discovery if obtained in the Lawsuit, nor does it restrain Twitter from asserting any objections to such discovery in the Lawsuit.

It is further **ORDERED** that Twitter file a bond in the amount of $_____ with the Clerk of the Court.

It is further **ORDERED** that Twitter's Temporary Injunction Application is set for hearing on July ___, 2023 at _____ a.m./p.m. in this Court. The purpose of the hearing is to determine whether this temporary restraining order should be made a temporary injunction pending a full trial on the merits.

This Temporary Restraining Order expires on July ____, 2023.

**EXECUTED** this _____ day of _____, 2023, at _____ a.m./p.m.

_____
PRESIDING JUDGE

**EXHIBIT 1**
**DOWNLOAD FILE NAMES**

1.  TWTR_Lapse_Schedule_Report.zip

2.  TWTR_Grant_Award_052423.xlsx

3.  Phase One_ Comp Planning Master [March 2023].xlsx

4.  AON CONSULTING INC_Compensation Survey 22 - signed (1).pdf

5.  JobFamilyReport - 5_24_2023 9_6_20  AM.xlsx

6.  FAQ for Separated Twitter Employees.pdf

7.  FAQ for Separated Twitter Employees.docx

8.  A_C [POST CLOSE - DRAFT] Twitter acquisition_ Tweep FAQ - October 2022.pdf

9.  A_C [POST CLOSE - DRAFT] Twitter acquisition_ Tweep FAQ - October 2022.docx

10. VestingSchedule (3).xlsx

11. Client Attorney Privileged - France EE Listing.xlsx

12. CR - Compensation Detail Report_Compton 05222023 2023-05-22 09_18 CDT.xlsx

13. Go_COBRA FAQ .docx

14. Go_COBRA FAQ  (2).docx

15. Twitter Private Company Long-Term Incentive Programs and Strategy - October 2022 (1).pdf

16. TWTR_GrantActivity_20230518 (1).xlsx

17. TWTR_GrantActivity_20230518.xlsx

18. 2022 Annual Plan Legal Notice.pdf

19. Twitter_Inc-SMM 1-1-2022.pdf

20. 401(k) Plan Highlights 2021.pdf

21. 401(k) FAQs .docx

22. 401(k) FAQs .pdf

23. Twitter Inc SPD 1-1-2022.pdf

24. document (2).pdf

25. document (1).pdf

26. TWTR_LapseSchedule_20230517 (1).zip

27. TWTR_LapseSchedule_20230517.zip

28. VestingSchedule (2).xlsx

4

29.   VestingSchedule (2).xlsx

30.   Execs - PRSU - Waiver of Performance Metrics - Considered
      Achieved.docx

31.   US RIF & Opt Outs who have not Signed Sep Agreements.xlsx

32.   NEW_WFH Policy (Twitter 2.0).docx

33.   VestingSchedule (2).xlsx

34.   PBP_FAQs.docx

35.   PBP_Examples of Mechanics.docx

36.   Twitter 2.0 - Compensation + Equity.pptx

37.   Twitter 2.0 Compensation One Pager.docx

38.   Restricted Stock Units.html

39.   PBP.html

40.   Base Salary.html

41.   Compensation cycles.html

42.   Payout.html

43.   Target Quota Model.html

44.   Revenue Share Model.html

45.   Sales Incentive Plan.html

46.   How we think about compensation.html

47.   How we think about compensation.html

48.   Our global approach to pay.html

49.   Separation Agreement Request (Global) Responses (1).xlsx

50.   Q1-2023 Sales Incentive (go_q1salesincentive) (2).xlsx

51.   RGCD-Data-Validation-Report.pdf

52.   RGCD-Data-Validation-Report.pdf

53.   2023_RGCD_Job_Catalogue.pdf

54.   2023_RGCD_Job_Catalogue.pdf

55.   2022_Radford_GCD_Functional_Job_Matrix (1).xlsx

56.   2022_Radford_GCD_Functional_Job_Matrix (1).xlsx

57.   2022_Radford_GCD_YOY_Mapping (1).xlsx

58.   2022_Radford_GCD_YOY_Mapping (1).xlsx

59.   2022_Radford_GCD_YOY_Mapping.xlsx

60.   2022_Radford_GCD_YOY_Mapping.xlsx

61.    2022_Radford_GCD_Roll_Up_Jobs_Detailed_Definitions.xlsx

62.    2022_Radford_GCD_Roll_Up_Jobs_Detailed_Definitions.xlsx

63.    2022_Radford_GCD_Roll_Up_Jobs_Definitions (1).xlsx

64.    2022_Radford_GCD_Roll_Up_Jobs_Definitions (1).xlsx

65.    2022_Radford_GCD_JobList_and_Descriptions (1).xlsx

66.    2022_Radford_GCD_JobList_and_Descriptions (1).xlsx

67.    2022_Radford_GCD_Job_Family_Descriptions.docx

68.    2022_Radford_GCD_Job_Family_Descriptions.docx

69.    2022_Radford_GCD_Functional_Job_Matrix.xlsx

70.    2022_Radford_GCD_Functional_Job_Matrix.xlsx

71.    2023_Radford_GCD_YOY_Job_Mapping.xlsx

72.    2023_Radford_GCD_YOY_Job_Mapping.xlsx

73.    2023_Radford_GCD_Job_Family_Descriptions.docx

74.    2023_Radford_GCD_Job_Family_Descriptions.docx

75.    2023-Radford_GCD_Functional_Job_Matrix.xlsx

76.    2023-Radford_GCD_Functional_Job_Matrix.xlsx

77.    JobFamilyReport - 5_8_2023 18_36_28  PM.xlsx

78.    JobFamilyReport - 5_8_2023 18_36_28  PM.xlsx

79.    Phase Two_ Equity Planning Master [April 2023] (1).xlsx

80.    Phase Two_ Equity Planning Master [April 2023] (1).xlsx

81.    2022 Market Pricing Enhancement Tool Development (Bianco).xlsx

82.    2022 Market Pricing Enhancement Tool Development (Bianco).xlsx

83.    Salary adjustment  CCT 2023 - TWITTER.XLSX

84.    Salary adjustment  CCT 2023 - TWITTER.XLSX

85.    TWTR_LapseSchedule_20230505.xlsx

86.    TWTR_LapseSchedule_20230505.xlsx

87.    Phase Two_ Equity Planning Master [April 2023].xlsx

88.    Phase Two_ Equity Planning Master [April 2023].xlsx

89.    Q1-2023 Sales Incentive (go_q1salesincentive) (1).xlsx

90.    Q1-2023 Sales Incentive (go_q1salesincentive) (1).xlsx

91.    CR - Compensation Detail Report_Compton 05052023 2023-05-05 12_02
       CDT.xlsx

92.    CR - Compensation Detail Report_Compton 05052023 2023-05-05 12_02
       CDT.xlsx

# EXHIBIT 2
# FOLDER NAMES

1.   401k

2.   Benchmarking

3.   Comp Cmte Meetings

4.   Finals

5.   HR Transition 2022-2023

6.   Playbooks

7.   Projects

8.   Reports

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Nanci Mohr on behalf of Stefanie Moll
Bar No. 24002870
nanci.mohr@morganlewis.com
Envelope ID: 77280820
Filing Code Description: Petition
Filing Description: X Corp's Verified Original Petition and Application for
Temporary Restraining Order, Temporary Injunction and Permanent
Injunction-EV# 77280820
Status as of 7/7/2023 10:20 AM CST

Associated Case Party: X CORP., Successor in Interest to Twitter, Inc

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stefanie R.Moll | | stefanie.moll@morganlewis.com | 7/6/2023 10:39:46 PM | SENT |
| Thomas CullenWallace | | cullen.wallace@morganlewis.com | 7/6/2023 10:39:46 PM | SENT |
| John Bramble | | john.bramble@morganlewis.com | 7/6/2023 10:39:46 PM | SENT |
| Nanci Mohr | | nanci.mohr@morganlewis.com | 7/6/2023 10:39:46 PM | SENT |

SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
BRADLEY MANEWITH (*pro hac vice* forthcoming)
(bmanewith@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:    (617) 994-5800
Facsimile:    (617) 994-5801

*Attorneys for Plaintiff Mark Schobinger,*
*on behalf of himself and all others*
*similarly situated*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK SCHOBINGER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC. and X CORP.,<br><br>Defendants | Case No.  3:23-cv-3007<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>1.  BREACH OF CONTRACT<br>2.  PROMISSORY ESTOPPEL |

# I.  **INTRODUCTION**

1.  Plaintiff Mark Schobinger files this Class Action Complaint against Defendants Twitter, Inc. and X Corp. (collectively "Twitter"), on his own behalf and on behalf of other current and former Twitter employees who were employed by the Company as of January 1, 2023, and who have not been paid their annual bonus for 2022.  Plaintiff brings claims for breach of contract and promissory estoppel.

2.  As described further below, Twitter has an employee cash performance bonus plan ("PBP" or "Bonus Plan") that is paid out annually.  Each year, the company has an overall target for the bonus plan, and employees each have a calculated amount of bonus (which is based on a percentage of their base salary) they will receive if the company pays bonus out at the target amount.  Traditionally, individuals covered by the bonus plan who are employed by the company at the time bonuses are paid out (typically in March) receive their annual bonus for the prior year.

3.  In the months leading up to Elon Musk's acquisition of Twitter in October 2022, the company's executives, including former Chief Financial Officer, Ned Segal, repeatedly promised Plaintiff and the company's other employees that 2022 bonuses would be paid out at fifty percent (50%) of target. This promise was repeated following Musk's acquisition. Plaintiff and other Twitter employees relied upon the promise that they would receive their 2022 bonus when choosing to remain employed by Twitter following Musk's acquisition of the company and/or deciding to forgo other employment opportunities.

4.  However, despite Twitter's promises that it would pay 2022 bonuses at fifty percent (50%) of target, Twitter refused to pay employees who remained employed by the company in the first quarter of 2023, any bonus.

5.  Plaintiff files this action, bringing claims for breach of contract and promissory estoppel, on behalf of himself and other current and former Twitter employees who were employed in the first quarter of 2023 but did not receive their bonus.

CLASS ACTION COMPLAINT

## II.    **PARTIES**

6.    Plaintiff Mark Schobinger is an adult resident of Round Rock, Texas. As such, he is a citizen of Texas. He was employed by Twitter as Senior Director, Compensation, from February 11, 2019, until May 26, 2023. Plaintiff was originally responsible for overseeing executive and incentive compensation when he was hired by Twitter. In November 2022, he assumed responsibility for all employee compensation for the company globally.

7.    Plaintiff brings this lawsuit as a Rule 23 class action on behalf of all individuals who were employed by Twitter in the first quarter of 2023 and were covered by Twitter's Bonus Plan but did not receive their annual bonus for 2022.

8.    Defendant Twitter, Inc. ("Twitter") is a Delaware corporation, headquartered in San Francisco, California. As such, it is a citizen of Delaware and California.

9.    Defendant X Corp. is a Nevada corporation, headquartered in San Francisco, California. As such, it is a citizen of Nevada and California.

10.    In or about March 2023, Twitter merged with X Corp., and as a result Twitter and X Corp. are a single entity. X Corp. has successor liability for Twitter's unlawful acts.

## III.    **JURISDICTION**

11.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(d)(2). Plaintiff and Defendants are citizens of different states, and the matter in controversy for the class exceeds $5 million.

12.    This Court has personal jurisdiction over Defendants, as they are headquartered in this District and conduct substantial business operations in this District.

## IV.  STATEMENT OF FACTS

13.  Twitter is a social media company that previously employed thousands of people across the United States.

14.  Twitter has an employee cash performance bonus plan ("PBP" or "Bonus Plan") that is paid out annually (typically in March) for the prior year.  Each year, the company has an overall target for the bonus plan, and employees each have a calculated amount of bonus they will receive (based on their base pay) if the company pays out the target amount.

15.  Throughout the year, Twitter funds the Bonus Plan based upon a target amount. Historically, the company has paid out at least 50% of the target each year.  Traditionally, employees who were separated based upon job elimination, prior to the payout date, were paid one hundred percent (100%) of their targeted bonus.

16.  In April 2022, it was announced that multi-billionaire Elon Musk would be purchasing the company.

17.  Following this announcement, many employees raised concerns regarding the company's policies following this anticipated acquisition, including concerns about their compensation and annual bonus.

18.  In order to allay employees' concerns and try to prevent them from leaving Twitter to work at other companies, Twitter made various promises to employees.

19.  One of the promises was that employees would receive their annual bonus for 2022 under the company's Bonus Plan.

20.  Both before and after Musk's acquisition was completed in October 2022, Twitter's management continuously promised the company's employees, including Plaintiff, that their annual bonus for 2022 would be paid under the Bonus Plan.

21.  For example, during an all-hands meeting in the months leading up to Musk's acquisition being completed in October 2022, Twitter's former Chief Financial Officer, Ned

4
CLASS ACTION COMPLAINT

Segal, informed the company's employees, including Plaintiff, that 2022 bonuses under the Bonus Plan would be paid out at fifty percent (50%) of target.

22.     Twitter's actions throughout 2022 reinforced the promise conveyed by Segal and its other management employees that employees, including Plaintiff, would be paid their annual bonus at fifty percent (50%) of target.

23.     Specifically, consistent with its past practice and the promises made by management to its employees, Twitter did in fact fund the Bonus Plan at fifty percent (50%) of targeted employee bonuses for 2022. The money for employees' annual bonuses under the Bonus Plan was accounted for by Twitter's financial team and was available to be paid to Twitter's employees during the first quarter of 2023.

24.     Plaintiff, like many other Twitter employees, relied on Twitter's promise to pay his 2022 annual bonus in choosing to remain employed by Twitter following Musk's acquisition of the company.

25.     In the months following Musk's acquisition of Twitter, Plaintiff regularly received calls from recruiters and companies regarding other employment opportunities. However, Plaintiff turned down these opportunities, secure in the knowledge that Twitter would pay him his promised 2022 annual bonus during the first quarter of 2023.

26.     However, rather than pay employees who remained employed by Twitter the annual bonus promised to them, the company refused to pay any employees their 2022 annual bonus.

27.     Based on Twitter's reneging on various promises it had made to employees, including its failure to pay promised bonuses, Plaintiff left the company in May 2023.

## COUNT I

### Breach of Contract

During the months leading up and following Elon Musk's acquisition of Twitter, Twitter repeatedly promised employees that they would receive their annual bonus under the company's Bonus Plan and that the bonus for 2022 would be paid at fifty percent (50%) of the targeted bonus. Plaintiff and other employees accepted these offers by continuing to work for Twitter, rather than looking for and accepting other job opportunities. However, Twitter reneged on this agreement. It refused to pay annual bonuses to employees during the first quarter of 2023 (or thereafter), despite funding the Bonus Plan throughout 2022 and accounting for the payment of such annual bonuses. Thus, Plaintiff, on behalf of himself and other employees, allege that Twitter breached its contract to the employees by not paying the promised bonuses.

## COUNT II

### Promissory Estoppel

During the months leading up and following Elon Musk's acquisition of Twitter, Twitter repeatedly promised employees that they would receive their annual bonus under the company's Bonus Plan and that the bonus for 2022 would be paid at fifty percent (50%) of the targeted bonus. In reasonable reliance on these promises, Plaintiff and other employees continued to work for Twitter, rather than looking for and accepting other job opportunities. However, Twitter reneged on this promise. It refused to pay annual bonuses to employees during the first quarter of 2023 (or thereafter), despite funding the Bonus Plan throughout 2022 and accounting for the payment of such annual bonuses. Thus, Plaintiff and other employees were harmed by their reliance on this promise, including that they lost opportunities to obtain other employment at the time they were relying on the promise.

## JURY DEMAND

Plaintiff requests a trial by jury on the claims asserted here.

WHEREFORE, Plaintiff requests that this Court enter the following relief:

a.  Declare and find that Defendants are liable to Plaintiff and other and other similarly situated Twitter employees for breach of contract and under the doctrine of promissory estoppel;

b.  Certify this case as a class action;

c.  Award compensatory damages, in an amount according to proof;

d.  Award pre- and post-judgment interest; and

e.  Award any other relief to which Plaintiff and other similarly situated Twitter employees may be entitled.

Respectfully submitted,

MARK SCHOBINGER, on behalf of himself and all others similarly situated,

By their attorneys,

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Bradley Manewith (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com; bmanewith@llrlaw.com

Dated:        June 20, 2023

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Mark Schobinger

### DEFENDANTS
X Corp., Successor in Interest to Twitter, Inc.

**(b)** County of Residence of First Listed Plaintiff    Williamson
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Drew N. Herrmann, Texas Bar No. 24086523
HERRMANN LAW, PLLC
801 Cherry St., Suite 2365 Fort Worth, TX 76102
Phone: 817-479-9229

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [x] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### PRISONER PETITIONS
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1132, 28 U.S.C. §1441 and 28 U.S.C. §1446
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE      DOCKET NUMBER

DATE
July 11, 2023

SIGNATURE OF ATTORNEY OF RECORD
/s/ Drew Herrmann

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Drew Herrmann
Bar No. 24086523
drew@herrmannlaw.com
Envelope ID: 77419577
Filing Code Description: Notice Of Filing *
Filing Description: Env# 77419577 Defendant Mark Schobinger's Notice of Filing for Removal of Action,, Filed and signed by atty
Status as of 7/12/2023 9:42 AM CST

Associated Case Party: X CORP., Successor in Interest to Twitter, Inc

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Thomas CullenWallace | | cullen.wallace@morganlewis.com | 7/11/2023 4:46:43 PM | SENT |
| Stefanie R.Moll | | stefanie.moll@morganlewis.com | 7/11/2023 4:46:43 PM | SENT |
| Nanci Mohr | | nanci.mohr@morganlewis.com | 7/11/2023 4:46:43 PM | SENT |
| John Bramble | | john.bramble@morganlewis.com | 7/11/2023 4:46:43 PM | SENT |

Associated Case Party: Mark Schobinger

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Drew Herrmann | | drew@herrmannlaw.com | 7/11/2023 4:46:43 PM | SENT |
| Shannon Liss-Riordan | | sliss@llrlaw.com | 7/11/2023 4:46:43 PM | SENT |
| Bradley Manewith | | bmanewith@llrlaw.com | 7/11/2023 4:46:43 PM | SENT |
| Court S | | courts@llrlaw.com | 7/11/2023 4:46:43 PM | SENT |

CAUSE NO. 23-1074-C395

| | | |
|---|---|---|
| X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC. | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff*, | § § § | |
| v. | § § | WILLIAMSON COUNTY, TEXAS |
| MARK SCHOBINGER | § § | |
| *Defendant.* | § | 395th JUDICIAL DISTRICT |

## **TEMPORARY RESTRAINING ORDER**

Plaintiff X Corp., successor in interest to Twitter, Inc. ("Twitter"), filed a Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction ("TRO Application") against Defendant Mark Schobinger ("Schobinger"). Having considered Twitter's TRO Application, the evidence attached thereto, and argument of counsel, the Court finds that the TRO Application shall be in all things **GRANTED**.

Based on the evidence and verified allegations in Twitter's TRO Application, the Court preliminarily finds that: (i) Schobinger received access to Twitter's confidential and sensitive information during his employment with Twitter; (ii) Schobinger downloaded documents containing Twitter's confidential and sensitive information and transmitted such documents to his personal email and personal Google Drive accounts during the months, weeks, and days before his employment ended; (iii) Schobinger also maintained on his personal Google Drive account a folder entitled "Work," with numerous subfolders relating to his work with Twitter; (iv) when confronted, Schobinger admitted to Twitter that he transmitted Twitter documents to his personal email and personal Google Drive accounts but further stated that he deleted such documents; (v) Schobinger admitted to

deleting at least some of these documents after receiving Twitter's preservation demand; (vi) Schobinger agreed to submit to a forensic review to confirm he deleted Twitter's information from his devices and accounts; (vii) after obtaining counsel, however, Schobinger refused to submit to a forensic review and refused to provide Twitter with any sworn statement that he actually deleted and did not disclose its confidential and sensitive information; and (viii) Schobinger is in a position to use such information to his benefit and to Twitter's and its employees' detriment.  Based on the foregoing, the Court finds that Twitter will suffer probable, imminent, and irreparable harm if the Court does not enter a temporary restraining order.

To preserve the status quo until a hearing on Twitter's Temporary Injunction Application, the Court **ORDERS** that Schobinger and all others acting in concert with him are restrained from:

> a.    directly or indirectly using or disclosing the documents and folders listed in Exhibits 1 and 2; and
>
> b.    directly or indirectly using or disclosing information in the documents and folders listed in Exhibits 1 and 2.

For the avoidance of doubt, this Order restrains neither Schobinger nor others acting in concert with Schobinger from seeking discovery from Twitter pursuant to the procedural rules of the court presiding over the putative class action lawsuit Schobinger filed against Twitter in the US District Court for the Northern District of California – San Francisco Division (the "Lawsuit"), or from using such discovery if obtained in the Lawsuit, nor does it restrain Twitter from asserting any objections to such discovery in the Lawsuit. Moreover, nothing in this Order shall be construed as prohibiting Schobinger from asserting his claims or any defenses in the Lawsuit.

It is further **ORDERED** that Twitter file a bond in the amount of $100.00 with the Clerk of the Court.

It is further **ORDERED** that Twitter's Temporary Injunction Application is set for an in-person hearing on July 25, 2023 at 9:00 a.m. in this Court. The purpose of the hearing is to determine whether this temporary restraining order should be made a temporary injunction pending a full trial on the merits.

This Temporary Restraining Order expires on July 25, 2023.

**EXECUTED** this _____ day of _____, 2023, at _____ a.m./p.m.

_____
PRESIDING JUDGE

## EXHIBIT 1
## DOWNLOAD FILE NAMES

1.  TWTR_Lapse_Schedule_Report.zip

2.  TWTR_Grant_Award_052423.xlsx

3.  Phase One_ Comp Planning Master [March 2023].xlsx

4.  AON CONSULTING INC_Compensation Survey 22 - signed (1).pdf

5.  JobFamilyReport - 5_24_2023 9_6_20  AM.xlsx

6.  FAQ for Separated Twitter Employees.pdf

7.  FAQ for Separated Twitter Employees.docx

8.  A_C [POST CLOSE - DRAFT] Twitter acquisition_ Tweep FAQ - October 2022.pdf

9.  A_C [POST CLOSE - DRAFT] Twitter acquisition_ Tweep FAQ - October 2022.docx

10. VestingSchedule (3).xlsx

11. Client Attorney Privileged - France EE Listing.xlsx

12. CR - Compensation Detail Report_Compton 05222023 2023-05-22 09_18 CDT.xlsx

13. Go_COBRA FAQ .docx

14. Go_COBRA FAQ  (2).docx

15. Twitter Private Company Long-Term Incentive Programs and Strategy - October 2022 (1).pdf

16. TWTR_GrantActivity_20230518 (1).xlsx

17. TWTR_GrantActivity_20230518.xlsx

18. 2022 Annual Plan Legal Notice.pdf

19. Twitter_Inc-SMM 1-1-2022.pdf

20. 401(k) Plan Highlights 2021.pdf

21. 401(k) FAQs .docx

22. 401(k) FAQs .pdf

23. Twitter Inc SPD 1-1-2022.pdf

24. document (2).pdf

25. document (1).pdf

26. TWTR_LapseSchedule_20230517 (1).zip

4

27.   TWTR_LapseSchedule_20230517.zip

28.   VestingSchedule (2).xlsx

29.   VestingSchedule (2).xlsx

30.   Execs - PRSU - Waiver of Performance Metrics - Considered Achieved.docx

31.   US RIF & Opt Outs who have not Signed Sep Agreements.xlsx

32.   NEW_WFH Policy (Twitter 2.0).docx

33.   VestingSchedule (2).xlsx

34.   PBP_FAQs.docx

35.   PBP_Examples of Mechanics.docx

36.   Twitter 2.0 - Compensation + Equity.pptx

37.   Twitter 2.0 Compensation One Pager.docx

38.   Restricted Stock Units.html

39.   PBP.html

40.   Base Salary.html

41.   Compensation cycles.html

42.   Payout.html

43.   Target Quota Model.html

44.   Revenue Share Model.html

45.   Sales Incentive Plan.html

46.   How we think about compensation.html

47.   How we think about compensation.html

48.   Our global approach to pay.html

49.   Separation Agreement Request (Global) Responses (1).xlsx

50.   Q1-2023 Sales Incentive (go_q1salesincentive) (2).xlsx

51.   RGCD-Data-Validation-Report.pdf

52.   RGCD-Data-Validation-Report.pdf

53.   2023_RGCD_Job_Catalogue.pdf

54.   2023_RGCD_Job_Catalogue.pdf

55.   2022_Radford_GCD_Functional_Job_Matrix (1).xlsx

56.   2022_Radford_GCD_Functional_Job_Matrix (1).xlsx

57.    2022_Radford_GCD_YOY_Mapping (1).xlsx

58.    2022_Radford_GCD_YOY_Mapping (1).xlsx

59.    2022_Radford_GCD_YOY_Mapping.xlsx

60.    2022_Radford_GCD_YOY_Mapping.xlsx

61.    2022_Radford_GCD_Roll_Up_Jobs_Detailed_Definitions.xlsx

62.    2022_Radford_GCD_Roll_Up_Jobs_Detailed_Definitions.xlsx

63.    2022_Radford_GCD_Roll_Up_Jobs_Definitions (1).xlsx

64.    2022_Radford_GCD_Roll_Up_Jobs_Definitions (1).xlsx

65.    2022_Radford_GCD_JobList_and_Descriptions (1).xlsx

66.    2022_Radford_GCD_JobList_and_Descriptions (1).xlsx

67.    2022_Radford_GCD_Job_Family_Descriptions.docx

68.    2022_Radford_GCD_Job_Family_Descriptions.docx

69.    2022_Radford_GCD_Functional_Job_Matrix.xlsx

70.    2022_Radford_GCD_Functional_Job_Matrix.xlsx

71.    2023_Radford_GCD_YOY_Job_Mapping.xlsx

72.    2023_Radford_GCD_YOY_Job_Mapping.xlsx

73.    2023_Radford_GCD_Job_Family_Descriptions.docx

74.    2023_Radford_GCD_Job_Family_Descriptions.docx

75.    2023-Radford_GCD_Functional_Job_Matrix.xlsx

76.    2023-Radford_GCD_Functional_Job_Matrix.xlsx

77.    JobFamilyReport - 5_8_2023 18_36_28  PM.xlsx

78.    JobFamilyReport - 5_8_2023 18_36_28  PM.xlsx

79.    Phase Two_ Equity Planning Master [April 2023] (1).xlsx

80.    Phase Two_ Equity Planning Master [April 2023] (1).xlsx

81.    2022 Market Pricing Enhancement Tool Development (Bianco).xlsx

82.    2022 Market Pricing Enhancement Tool Development (Bianco).xlsx

83.    Salary adjustment  CCT 2023 - TWITTER.XLSX

84.    Salary adjustment  CCT 2023 - TWITTER.XLSX

85.    TWTR_LapseSchedule_20230505.xlsx

86.    TWTR_LapseSchedule_20230505.xlsx

87.    Phase Two_ Equity Planning Master [April 2023].xlsx

88.   Phase Two_ Equity Planning Master [April 2023].xlsx

89.   Q1-2023 Sales Incentive (go_q1salesincentive) (1).xlsx

90.   Q1-2023 Sales Incentive (go_q1salesincentive) (1).xlsx

91.   CR - Compensation Detail Report_Compton 05052023 2023-05-05 12_02 CDT.xlsx

92.   CR - Compensation Detail Report_Compton 05052023 2023-05-05 12_02 CDT.xlsx

## **EXHIBIT 2**
## **FOLDER NAMES**

1. 401k
2. Benchmarking
3. Comp Cmte Meetings
4. Finals
5. HR Transition 2022-2023
6. Playbooks
7. Projects
8. Reports

Filed 7/13/2023 12:40 PM
Lisa David, District Clerk
Williamson County, Texas
Jennifer Sims

## CAUSE NO. 23-1074-C395

| | | |
|---|---|---|
| X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC. | § | IN THE 395TH JUDICIAL |
| | § | |
| Plaintiff, | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| MARK SCHOBINGER | § | |
| Defendant. | § | WILLIAMSON COUNTY, TEXAS |

### AFFIDAVIT OF SERVICE

On this day personally appeared **Lonzo Kerr Jr.** who, being by me duly sworn, deposed and said:

"The following came to hand on **Jul 12, 2023, 7:35 pm**,

**ORDER, X CORP.'S MOTION FOR EXPEDITED DISCOVERY, & X CORP.'S VERIFIED ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION,**

and was executed at **3337 Catalina Cv, Round Rock, TX 78665** within the county of **Williamson** at **08:50 PM** on **Wed, Jul 12 2023**, by delivering a true copy to the within named

### MARK SCHOBINGER

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

_Lonzo Kerr. Jr._

**Lonzo Kerr Jr.**
**Certification Number: PSC-6425**
**Certification Expiration: 7/31/24**

**BEFORE ME,** a Notary Public, on this day personally appeared **Lonzo Kerr Jr.**, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are within his or her personal knowledge and are true and correct.

SUBSCRIBED AND SWORN TO ME ON _____7/13/23_____

**Notary Public, State of Texas**



Envelope# 77532636

Copy from re:SearchTX