# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

X CORP., SUCCESSOR IN INTEREST TO
TWITTER, INC.,

      *Plaintiff*,

v.

MARK SCHOBINGER,

      *Defendant*.

C.A. No. 1:23-cv-778-RP

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S AMENDED MOTION TO TRANSFER VENUE

Dated: July 19, 2023

Respectfully submitted,

*/s/ Stefanie R. Moll*
**Stefanie R. Moll**
State Bar No. 24002870
Email: stefanie.moll@morganlewis.com
**T. Cullen Wallace**
State Bar No. 24072412
Email: cullen.wallace@morganlewis.com
**John P. Bramble**
State Bar No. 24101544
Email: john.bramble@morganlewis.com
**Morgan A. McGreevy**
State Bar No. 24125317
Email: morgan.mcgreevy@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX  77002
T:  713.890.5000
F:  713.890.5001

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION.................................................................................................1

II.     BACKGROUND AND PROCEDURAL HISTORY ...........................................1

     A.    Twitter Hires Schobinger in Williamson County, Texas and Schobinger Signs an Employment Agreement Governed by Texas law. .............................................2

     B.    While Employed and Located in Williamson County, Texas, Schobinger Improperly Sends Himself and Uploads Twitter's Confidential Information. ........3

     C.    Seven Days Before the Filing of the California Lawsuit, Twitter's Head of Litigation, Located in Travis County, Texas, Sends Schobinger a Letter Regarding His Improper Conduct in Williamson County, Texas............................4

     D.    Due to His Breach of the Agreement, which Is Governed by Texas Law, Twitter Sues Schobinger and Seeks Injunctive Relief against Him in Williamson County, Texas—the County in which He Worked for Twitter and Resides. ..........5

     E.    To Avoid Entry of Injunctive Relief by the Texas Court, Schobinger Removes the Case to this Court and Seeks to Transfer it to California—1,750 Miles from His Texas Home..........................................................................................................6

III.    ARGUMENT AND AUTHORITY ....................................................................6

     A.    Schobinger Fails to Meet His Burden of Demonstrating that This Lawsuit Might Have Been Brought in the Northern District of California....................................7

     B.    Schobinger Fails to Meet His Burden of Demonstrating that Private and Public Interest Factors Weigh in Favor of Transferring this Lawsuit to the Northern District of California. ................................................................................................9

          1.    Private Interest Factors Weigh against Transfer.........................................9

          2.    Public Interest Factors Weigh against Transfer. .......................................14

     C.    Whether the California Class Action is Related is Not a Factor Courts Consider under the Present Circumstances and, in any Event, Does Not Support Transfer Because the Two Actions Are Unrelated..................................18

IV.  CONCLUSION .................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bobosky v. Adidas AG*
No. CV 10–630–PK, 2010 WL 4853295 (D. Or.  Oct. 8, 2010), *report and recommendation adopted*, 2010 WL 4828392 (D. Or. Nov. 18, 2010) ............................16, 17

*Bride Ministries, NFP v. DeMaster,*
No. 4:20-CV-00402, 2020 WL 6822836 (E.D. Tex. Nov. 20, 2020) ....................................13

*Cont'l Grain Co. v. The FBL-585,*
364 U.S. 19 (1960) ....................................................................................................................13

*DataTreasury Corp. v. First Data Corp.,*
243 F. Supp. 2d 591 (N.D. Tex. 2003) .....................................................................................18

*Def. Distributed v. Bruck,*
30 F.4th 414 (5th Cir. 2022) .....................................................................................................14

*Diem LLC v. BigCommerce, Inc.,*
No. 6:17-CV-00186-JRG, 2017 WL 6729907 (E.D. Tex. Dec. 28, 2017) ...............................8

*Frito-Lay N. Am. v. Medallion Foods, Inc.,*
867 F. Supp. 2d 859 (E.D. Tex. 2012) .....................................................................................12

*Gemalto S.A. v. HTC Corp.,*
No. 6:10-CV-561 LED-JDL, 2011 WL 5838212 (E.D. Tex. Nov. 18, 2011) ..........................8

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
564 U.S. 915 (2011) ...................................................................................................................8

*Greater Yellowstone Coal. v. Kempthorne,*
No. CIV.A. 07-2111 (EGS), 2008 WL 1862298 (D.D.C. Apr. 24, 2008) ...............................13

*Hills v. Brinks, Inc.,*
No. 07–4207, 2008 WL 243944 (E.D. La. Jan. 25, 2008) .........................................................9

*Hoffman v. Blaski,*
363 U.S. 335 (1960) ....................................................................................................................7

*In re Volkswagen AG,*
371 F.3d 201 (5th Cir. 2004) ......................................................................................................8

*In re Volkswagen of Am., Inc.,*
545 F.3d 304 (5th Cir. 2008) ..................................................................................................6, 9

*J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*,
     No. CIV A 6:08-CV-211, 2009 WL 440525 (E.D. Tex. Feb. 20, 2009) ...........................8, 10

*Johnson v. Am. Airlines, Inc.*,
     1981 U.S. Dist. LEXIS 13215 (N.D. Ill. June 2, 1981) ...........................................................18

*LED Sign Co. v. Hwee*,
     Civ. A. No. H–08–1463, 2008 WL 5114957 (S.D. Tex. Dec. 3, 2008) ..................................15

*Lopez v. Nat'l Freight, Inc.*,
     No. 3:22-CV-1844-S, 2023 WL 2290787 (N.D. Tex. Feb. 28, 2023).......................14, 15, 17

*Monkton Ins. Servs., Ltd. v. Ritter*,
     768 F.3d 429 (5th Cir. 2014) ..................................................................................................8

*Motion Games, LLC v. Nintendo Co., Ltd*,
     No. 6:12-CV-878-LED-JDL, 2014 WL 11621698 (E.D. Tex. Mar. 28, 2014).......................7

*Moto Photo, Inc. v. K.J. Broadhurst Enterprises, Inc.*,
     No. 301CV2282–L, 2003 WL 298799 (N.D. Tex. Feb. 10, 2003).  .......................................17

*Opticurrent, LLC v. Bitfenix Co. Ltd.*,
     No. 2:21-cv-00159-JRG-RSP, 2022 WL 599225 (E.D. Tex. Feb. 25, 2022).........................7

*Permian Basin Petroleum Ass'n v. Dep't of the Interior*,
     No. MO-14-CV-050, 2015 WL 11622492 (W.D. Tex. Feb. 26, 2015).................................15

*PersonalWeb Technologies, LLC v. NEC Corp. of Am., Inc.*,
     No. 6:11-CV-655, 2013 WL 9600333 (E.D. Tex. Mar. 21, 2013) ....................................9, 14

*Realtime Data, LLC v. Rackspace US, Inc.*,
     No. 6:16-CV-00961, 2017 WL 772653 (E.D. Tex. Feb. 28, 2017).......................................12

*SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
     No. 2:20-CV-00003-JRG, 2020 WL 6889173 (E.D. Tex. Nov. 24, 2020)..............................7

*Tegrity Contractors, Inc. v. Spectra Grp., Inc.*,
     No. CIV.A. 12-2555, 2013 WL 654924 (E.D. La. Feb. 21, 2013) ..........................................9

*Texas v. Google LLC*,
     No. 4:20-CV-957-SDJ, 2021 WL 2043184 (E.D. Tex. May 20, 2021)..................................11

*Time, Inc. v. Manning*,
     366 F.2d 690 (5th Cir. 1966) ..................................................................................................6

*Voxer, Inc. v. Facebook, Inc.*,
     No. 6:20-CV-00011-ADA, 2020 WL 3416012 (W.D. Tex. June 22, 2020) ..........................11

*Watson v. Fieldwood Energy Offshore, LLC,*
  181 F. Supp. 3d 402 (S.D. Tex. 2016) ...................................................................14

*Westberry v. Gustech Commc'ns, LLC,*
  No. 3:17-CV-3162-D, 2018 WL 3548869 (N.D. Tex. July 24, 2018) ...............................7, 17

**Statutes**

28 U.S.C. § 1404(a) ...........................................................................................1, 2, 6, 7

Plaintiff X Corp., successor in interest to Twitter, Inc. ("Twitter"), files this Response in Opposition to Defendant Mark Schobinger's Amended Motion to Transfer Venue ("Motion").[1]

## I.  INTRODUCTION

Schobinger's Motion fails from the outset because he cannot establish the threshold requirement under 42 U.S.C. § 1404(a) that the proposed transferee court in the Northern District of California would have personal jurisdiction over him or venue over this lawsuit.  Schobinger resides in and worked for Twitter in Williamson County, Texas, the employment agreement he breached is governed by Texas law, Twitter's claims against Schobinger arise under Texas law, all of Schobinger's wrongdoing occurred where he lived and worked in Williamson County, and not a single event or omission at issue in this lawsuit occurred in the Northern District of California. Schobinger's Motion should therefore be denied without further analysis.

Even setting aside these dispositive jurisdictional and venue deficiencies, Twitter's chosen venue must be respected because Schobinger fails to prove that San Francisco—which is over 1,750 miles from this district and division—is "clearly more convenient" than the present venue where Schobinger resides and worked.   Among other deficiencies in his Motion, Schobinger fails to: identify a single party or witness for whom it would be more convenient to litigate this case in California; identify any evidence that is more readily available in California than it is here (and instead argues that he will just take the laptop presumably containing Twitter's confidential information, which he should not possess, to San Francisco); or establish that any of the other

---

[1] Although Twitter argues in response to the Motion that venue is more convenient in this forum than in the Northern District of California, it does so without prejudice to its Emergency Motion to Remand.  ECF 9.  Twitter maintains that the removal of this action was improper and, as a result, this Court lacks subject matter jurisdiction.

public and private interest factors weigh in favor of transferring this case from Schobinger's home district to a court half way across the country.

Further, while Schobinger argues that the "genesis" of this lawsuit is the fact that he filed a separate class action lawsuit in California related to bonus payments, this argument is not only irrelevant to the 1404(a) analysis, it is also false.  Seven days before the California lawsuit was filed, Twitter's Head of Litigation based in Travis County, Texas communicated with Schobinger by letter and telephone regarding Twitter's concerns that Schobinger had uploaded and e-mailed himself confidential and sensitive information belonging to Twitter and trying to arrange a time for Twitter to come to Schobinger's home in Williamson County, Texas to remediate his electronic devices.  Because Schobinger refused to comply, Twitter sued him in Williamson County alleging that he breached his employment agreement, which is governed by Texas law, and seeking injunctive relief under the Texas Rules of Civil Procedure.

In short, this lawsuit involves a Texas defendant, who engaged in unlawful conduct in Texas, and who is being sued in Texas for violations of Texas law.  Schobinger cites to no authority involving facts similar to those at issue here where a court has transferred a case under 1404(a) away from a defendant's home district and division, and Twitter has found none.  Because Schobinger has failed at every step to carry his burden under Section 1404(a), the Court should deny his Motion.

## II.     BACKGROUND AND PROCEDURAL HISTORY

### A.     Twitter Hires Schobinger in Williamson County, Texas and Schobinger Signs an Employment Agreement Governed by Texas law.

In February 2019, Twitter hired Schobinger as its Executive and Incentive Compensation Director and eventually transitioned him into the role of Twitter's Head of Compensation and Benefits.  ECF 9-1 ("Verified Pet.") at ¶¶ 1, 17.  Throughout his employment, Schobinger had

access to Twitter's most sensitive and confidential information concerning, among other things, its employees' compensation.  *Id*. at ¶¶ 1, 17–26.  To protect this information, Twitter required Schobinger to sign an Employee Invention Assignment and Confidentiality Agreement ("Agreement") at the outset of his employment.  Verified Pet. at Exhibit 1.

Under the Agreement, Schobinger agreed to, among other things, refrain from using or disclosing Twitter's confidential information and to hold that information in the strictest confidence, return all Twitter property (including documents and information) upon separating from Twitter or upon Twitter's request, prevent any unauthorized use or disclosure of Twitter's confidential information, and cooperate with Twitter, including by providing a sworn declaration, to confirm the return of Twitter property and information.  *Id*. at Exhibit 1, §§ 7–8.

The Agreement's Governing Law clause provides that it will be governed by the laws of the state in which Schobinger resided during the course of his employment with Twitter.  *Id*. at Exhibit 1, § 17.  Because it is undisputed that Schobinger was a resident of Williamson County, Texas at the time of his hire and throughout his employment with Twitter, the Agreement is governed by Texas law.

**B.     While Employed and Located in Williamson County, Texas, Schobinger Improperly Sends Himself and Uploads Twitter's Confidential Information.**

Despite his contractual and fiduciary obligations, both before and shortly after announcing his resignation, Schobinger accessed Twitter documents containing confidential and sensitive information and sent or uploaded certain such documents to his personal email and personal Google Drive accounts.  Verified Pet. at ¶¶ 23–26.  As one example, Schobinger emailed himself (to his personal email account) Twitter's Compensation Detail Report, which contains personal identifying and compensation information for 2,251 Twitter employees worldwide.  *Id*. at ¶ 24. Schobinger also downloaded the Compensation Detail Report on May 5 and then again on May

22—two days after he announced his resignation.  *Id*. at ¶¶ 24–26.  Schobinger sent another email to his personal email account, attaching a spreadsheet detailing information about restricted stock unit ("RSU") options for 401 Twitter employees worldwide.  *Id*. at ¶ 25.  Finally, Schobinger maintained a personal cloud-storage account on Google Drive to which he uploaded documents to a personal account folder entitled "Work."  *Id*. at ¶ 26.  All of this improper conduct occurred while Schobinger was employed by Twitter in Williamson County, Texas.

**C.    Seven Days Before the Filing of the California Lawsuit, Twitter's Head of Litigation, Located in Travis County, Texas, Sends Schobinger a Letter Regarding His Improper Conduct in Williamson County, Texas.**

On June 13, 2023, Twitter's Head of Litigation, Adam Mehes, who works and resides in Travis County, Texas, sent Schobinger a letter concerning his improper conduct and his post-employment obligations.  Verified Pet. at Exhibit 5 and Mehes Verification.  In particular, because Schobinger had absolutely no legal right to retain Twitter's highly sensitive and confidential information, and taking such information violated his Agreement and the privacy rights of Twitter employees, Twitter's letter reminded Schobinger of his nondisclosure obligations under the Agreement, requested that he identify all Twitter documents in his possession and the individuals and entities with whom he shared or disclosed any such documents, demanded the return of all such documents, and asked Schobinger to submit his personal devices to a forensic review to confirm that no further Twitter confidential information remains on those devices.  Verified Pet. at Exhibit 5.

Schobinger responded to Twitter's letter the day it was sent and the following day, June 14, he spoke to Mehes by phone.  Verified Pet. at ¶ 28.  During this conversation, Schobinger agreed to the forensic review requested in the letter and said that he would be "happy to have someone come to his house" and "pull up the file listing" and was "willing to sit there" with the information security team member conducting the forensic review.  *Id*.  On June 16—two days

after Schobinger agreed to the forensic review—Schobinger's counsel, Shannon Liss-Riordan, contacted Mehes, effectively informing him that Schobinger would not engage in any forensic review. *Id*. at ¶ 30.

On June 20—seven days after Twitter sent Schobinger the June 13 letter, Schobinger filed a class action lawsuit in the United States District Court for the Northern District of California, San Francisco Division (the "California Lawsuit"). ECF 11-1. In the California Lawsuit, Schobinger alleges that Twitter failed to properly pay him and a class of alleged similarly situated former and current employees bonuses under Twitter's Performance Bonus Plan ("PBP"). *Id*.

**D.   Due to His Breach of the Agreement, which Is Governed by Texas Law, Twitter Sues Schobinger and Seeks Injunctive Relief against Him in Williamson County, Texas— the County in which He Worked for Twitter and Resides.**

After multiple failed attempts to negotiate a resolution with Schobinger's counsel, on July 6, 2023, Twitter filed a Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction in the 395th Judicial District of Williamson County, Texas (the "Texas Court")—the county in which Schobinger worked for Twitter and resides. *See* Verified Pet. In its lawsuit, Twitter alleges a single breach of contract cause of action under the Agreement, which is governed by Texas law, and seeks injunctive relief against Schobinger under the Texas Rules of Civil Procedure. *Id*. On July 11, 2023, the Texas Court held a hearing during which it informed the parties that it intended to grant a temporary restraining order against Schobinger enjoining him from using or disclosing Twitter's highly sensitive confidential information within his possession and asked Twitter to submit a slightly revised proposed restraining order for the judge's signature.

E.      **To Evade Entry of Injunctive Relief by the Texas Court, Schobinger Removes the Case to this Court and Seeks to Transfer it to California—1,750 Miles from His Texas Home.**

To evade the Texas Court entering the order enjoining him from using or disclosing Twitter's confidential information—and despite his counsel having agreed in writing to accept service and appearing and arguing at the July 11 hearing—Schobinger improperly removed the case to this Court shortly after the injunction hearing.  ECF 1.  Twitter filed an Emergency Motion to Remand three days later on July 14.  ECF 9.  Schobinger then filed the instant Motion to transfer the case out of the judicial district in which he resides to the purportedly more convenient Northern District of California, San Francisco Division—over 1,750 miles away.  ECF 11.

## III.   ARGUMENT AND AUTHORITY

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district or division where it might have been brought."  28 U.S.C. § 1404(a).  A court may transfer a lawsuit only when the transferee venue is "***clearly more convenient***" than the current venue.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("Volkswagen II").  "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."  *Id*.  The party seeking to transfer a lawsuit under § 1404(a) bears the burden of demonstrating that its requested transfer is appropriate.  *Id*. at n.10 (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)) ("At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the [venue] should be changed.").  Schobinger fails to carry his burden of demonstrating that (A) this lawsuit "might have been brought" in the Northern District of California, and (B) the public and private interests of justice weigh in favor of transferring this lawsuit to the Northern District of California.

A. **Schobinger Fails to Meet His Burden of Demonstrating that This Lawsuit Might Have Been Brought in the Northern District of California.**

As a threshold matter, Schobinger fails to satisfy the statutory requirement under §1404(a) that this lawsuit "might have been brought" by Twitter against him—a Texas resident whose alleged unlawful conduct occurred entirely in Texas—in the Northern District of California.

As explained by the United States Supreme Court, "[i]f when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant, it is a district 'where (the action) might have been brought.' If he does not have that right, independently of the wishes of defendant, it is not a district 'where it might have been brought,' and it is immaterial that the defendant subsequently []makes himself subject[—]by consent, waiver of venue and personal jurisdiction defenses or otherwise[—]to the jurisdiction of some other forum[]." *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) (internal citations omitted).

"The question of whether a suit 'might have been brought' in the transferee forum encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue." *Opticurrent, LLC v. Bitfenix Co. Ltd.*, No. 2:21-cv-00159-JRG-RSP, 2022 WL 599225, at *2 (E.D. Tex. Feb. 25, 2022) (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). And "the burden to prove that a case could have been brought in the transferee forum falls on the party seeking transfer." *Opticurrent*, 2022 WL 599225, at *2 (citing *Volkswagen II*, 545 F.3d at 315).

Here, Schobinger does not carry his burden of showing that the transferee court in the Northern District of California could have exercised personal jurisdiction over him. In fact, Schobinger does not address the transferee court's exercise of personal jurisdiction at all in his Motion, much less submit a declaration or any form of evidence as required to prevail on his Motion. *See, e.g.*, *Motion Games, LLC v. Nintendo Co., Ltd*, No. 6:12-CV-878-LED-JDL, 2014 WL 11621698, at *3 (E.D. Tex. Mar. 28, 2014) (denying the defendants' motion to transfer venue

where the defendants "provide[d] no evidence and cite[d] no declaration to support their position" that the matter "could have been brought in [the Western District of Washington]"); *Gemalto S.A. v. HTC Corp.*, No. 6:10-CV-561 LED-JDL, 2011 WL 5838212, at *3 (E.D. Tex. Nov. 18, 2011) (denying the defendants' motion to transfer venue where, even though the defendants submitted a declaration, the declaration failed to establish that all defendants would have been subject to the jurisdiction of the California court to which they sought transfer).

Schobinger's failure to address this threshold jurisdictional question is perhaps not surprising considering Twitter asserts a single Texas state law breach of contract claim under an agreement governed by Texas law against a Texas resident based on conduct occurring entirely in Texas. Under these circumstances, the Northern District of California would have neither general nor specific personal jurisdiction over Schobinger as it relates to the single claim Twitter asserts against him in this lawsuit. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]"); *see Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (observing that specific personal jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation").

Schobinger further fails to carry his burden of showing that the Northern District of California would be an appropriate venue for this lawsuit. Pursuant to 28 U.S.C. § 1391(b)(1)–(2), venue is appropriate in (1) "a judicial district in which any defendant resides[,]" or (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" Here, the access, improper retention, and threatened use of the Twitter documents all occurred by Schobinger from Williamson County, Texas, where he resides, not in the Northern District of California. Therefore, venue would not be proper in the Northern District of California.

Because Schobinger fails to satisfy the threshold requirement under §1404(a) of proving that Twitter could have brought this lawsuit against him in the Northern District of California, the Court should deny his Motion without further analysis.

**B.**      **Schobinger Fails to Meet His Burden of Demonstrating that Private and Public Interest Factors Weigh in Favor of Transferring this Lawsuit to the Northern District of California.**

Only if the threshold determination is satisfied should the Court "determine whether transfer is convenient, turning on private and public interest factors." *SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, No. 2:20-CV-00003-JRG, 2020 WL 6889173, at \*2 (E.D. Tex. Nov. 24, 2020) (citing *Volkswagen I*, 371 F.3d at 203). The private interest factors include the following: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Volkswagen I*, 371 F.3d at 203. The public interest factors include the following: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Schobinger fails to meet his burden of demonstrating that private interest and public interest factors weigh in favor of transferring this lawsuit to the Northern District of California.

1.      Private Interest Factors Weigh against Transfer.

**Factor 1 – The Relative Ease of Access to Sources of Proof Weighs against Transfer.**

"A movant must identify sources of proof with enough specificity that a court can determine whether transfer will increase the convenience of the parties." *J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*, No. CIV A 6:08-CV-211, 2009 WL 440525, at \*2 (E.D. Tex. Feb. 20, 2009). "[A] failure to identify documents with specificity as to the documents and the location of

the documents is a failure of the moving party to meet its burden on transfer." *Diem LLC v. BigCommerce, Inc.*, No. 6:17-CV-00186-JRG, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017) (denying a motion to transfer venue to the Northern District of California because movant's "failure to sufficiently identify relevant sources of proof and considerations of convenience impeded the Court's ability to properly weigh the relevant factors, and ultimately resulted in a failure to demonstrate the Northern District of California was a clearly more convenient forum").

Not only does Schobinger fail to identify the sources of proof with sufficient "specificity," he fails to identify any sources of proof at all. Without identifying a single source of proof or a single, relevant document that is in California and not Texas, Schobinger merely states, in a conclusory fashion, that "Twitter's headquarters are in San Francisco, where the documents are maintained, meaning the first factor supports transfer." ECF 11 at p. 9. Such a conclusory statement is woefully inadequate and ignores that the devices through which Schobinger accessed, improperly retained, and threatened to use Twitter documents are located at Schobinger's home in this District. Moreover, any hard copies of the Twitter documents that remain in Schobinger's possession would also be located at Schobinger's home in this District. Accordingly, the first private interest factor weighs heavily against transferring this matter to the Northern District of California.[2]

---

[2] Footnote four in the sources of proof section of the Motion is not only telling (Schobinger certainly seems to entertain the possibility—despite his prior, vehement denials—that the relevant documents could be on his computer in Texas), but the argument made therein was rejected in the very case Schobinger cites. ECF 11 at p. 9, FN 4. (citing *PersonalWeb Technologies, LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at *3, *22 (E.D. Tex. Mar. 21, 2013)). Although Schobinger suggests in footnote four that he can simply take his computer to San Francisco, "documents that have been moved to a particular venue in anticipation of a venue dispute should not be considered [in the motion to transfer venue analysis]." *PersonalWeb Technologies,* 2013 WL 9600333, at *3 (transferring only those defendants who have "no relevant ties to the Eastern District of Texas *and* have significant ties to the Northern District of California).

**Factors 2 and 3 – The Availability of Compulsory Process to Secure the Attendance of Witnesses and the Cost of Attendance for Willing Witnesses Weigh Against Transfer**.

In evaluating the second private interest factor—securing the attendance of the witnesses— "the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Volkswagen II*, 545 F.3d at 316. "[T]he party moving for transfer must do more than 'make a general allegation that certain key witnesses are needed.'" *Tegrity Contractors, Inc. v. Spectra Grp., Inc.*, No. CIV.A. 12-2555, 2013 WL 654924, at *4 (E.D. La. Feb. 21, 2013) (quoting *Hills v. Brinks, Inc.,* No. 07–4207, 2008 WL 243944, at *5 (E.D. La. Jan. 25, 2008). "Rather, the moving party must 'specifically identify the key witnesses and outline the substance of their testimony.'" *Id*. (quoting *Hills,* 2008 WL 243944 at *5 (finding that defendants failed to carry their burden to show that the transferee forum was more convenient because they "summarily assert that 'all witnesses' are located in Memphis or Dallas, and deduce that convenience necessitates a transfer to Tennessee" and because they "provide no details whatsoever concerning the names of the key witnesses or their likely testimony"). In evaluating the third private interest factor—the cost of attendance for a willing witness—courts "consider the convenience of party fact witnesses." *J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*, No. CIV A 6:08-CV-211, 2009 WL 440525, at *3 (E.D. Tex. Feb. 20, 2009).

In conclusory fashion, without identifying a single witness or setting forth the substance of any witnesses' testimony, Schobinger boldly proclaims that "presumably all of the witnesses (other than [Schobinger] himself) are located in San Francisco," while failing to identify a single witness who is. ECF 11 at p. 9. Only Twitter has identified any witnesses in support of its lawsuit, and none of them is in California. It is undisputed that Schobinger, the primary witness in this litigation, resides in Georgetown, Texas, which is in Williamson County. Verified Pet. at ¶ 3.

Twitter also supports its pleading with verifications from Adam Mehes, Head of Litigation for Twitter (resident in Austin, Texas), Bruce Applin, Director of Information Security, (resident in Flagstaff, Arizona), and Stefanie Moll (resident in Houston, Texas).[3] *Id.* at ¶¶ 27–29; Verified Pet. at Adam Mehes Verification, Bruce Applin Verification, & Stefanie Moll Verification. Although Twitter is headquartered in San Francisco, it is entirely unclear whether any witness with knowledge of the lawsuit—i.e., what information and documents Schobinger took and what he did, if anything, with what he took—resides in California. In any event, Schobinger, the party with the burden of proof on a motion to transfer venue, identifies none. Private factors two and three also weigh against transfer.

### Factor 4 – All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive Weigh against Transfer.

"This 'all-other-practical-problems' factor is a 'Catch-All Factor' . . . comprising all practical considerations 'rationally based on judicial economy,' *i.e.*, the efficient application of judicial resources." *Texas v. Google LLC*, No. 4:20-CV-957-SDJ, 2021 WL 2043184, at *6 (E.D. Tex. May 20, 2021) (internal citations omitted). "But considerations of judicial economy and the existence of co-pending litigation are not dispositive in the transfer analysis." *Voxer, Inc. v. Facebook, Inc.*, No. 6:20-CV-00011-ADA, 2020 WL 3416012, at *5 (W.D. Tex. June 22, 2020) (denying a motion to transfer to the Northern District of Texas).

The crux of Schobinger's fourth private interest argument is that the California Lawsuit and the Verified Petition involve "the same issues," "the same documents," and are "related," creating "practical problems" that weigh in favor of transfer. ECF 11 at p. 9. As set forth below, the two actions are unrelated. While both lawsuits obviously concern Twitter and Schobinger, the

---

[3] Ms. Moll has knowledge of her interactions with opposing counsel in an effort to avoid the filing of the lawsuit and opposing counsel's refusal to engage in negotiations with respect to the forensic protocol or otherwise allow her client to participate in such protocol.

California Lawsuit concerns Schobinger's allegations that Twitter failed to pay PBP bonuses, and this lawsuit concerns Twitter's allegations that Schobinger accessed, improperly retained, and threatened to use multiple Twitter documents.   While one of those documents is Twitter's Compensation Detail Report, and two of the forty-six columns on the Compensation Detail Report relate to the PBP for certain potential class members, the majority of the Compensation Detail Report contains other highly sensitive and confidential information that in no way relates to the PBP or Schobinger's claims concerning same, and Schobinger's breach of his agreement with Twitter by exilfiltrating the Compensation Detail Report does not turn on the existence of the subsequently filed California Lawsuit.   In addition, Schobinger took other documents, yet makes no attempt to argue that the other documents he took—either the RSU spreadsheet or the multiple documents uploaded to his personal Google Drive—bear any relevance to the California Lawsuit.

In support of his argument that "practical problems" and principles of "judicial economy" weigh in favor of transfer, Schobinger cites *Realtime Data, LLC v. Rackspace US, Inc.*, No. 6:16-CV-00961, 2017 WL 772653, at *11 (E.D. Tex. Feb. 28, 2017).   *Realtime*, however, supports Twitter's position that the Court should **not** transfer this lawsuit to the Northern District of California.   The court in *Realtime* was unconvinced that multiple lawsuits necessitated transfer, finding instead that this factor was "neutral" because, at the time the motion to transfer was filed, the Northern District of California to which the defendants sought to transfer the matter "did not have substantial experience with respect to any of Realtime's patents, including family members of the patents-in-suit." *Realtime Data,* 2017 WL 772653, at *11.   Similarly, here, the Northern District of California has no experience—let alone substantial experience—with the claim and request for injunctive relief that Twitter asserts against Schobinger.   Therefore, at best, this private interest factor is neutral and does nothing to demonstrate that the Northern District of California

13

is "clearly more convenient" than this forum.

          2.   Public Interest Factors Weigh against Transfer.

**Factor 1 – The Administrative Difficulties Flowing from Court Congestion Weigh against Transfer**.

"Generally, this factor favors a district that can bring a case to trial faster." *Frito-Lay N. Am. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 871 (E.D. Tex. 2012). The Western District of Texas can bring this matter to trial faster. The Northern District of California is among the busiest district courts in the United States. The most recent data from the US District Courts – National Judicial Caseload Profile reflects the median time from filing to trial in civil cases in the Northern District of California is 37.1 months. By contrast, the median time from filing to trial in civil cases in the Western District of Texas is 28.2 months.[4] Accordingly, this factor weighs in favor of remaining in the Western District of Texas. *See, e.g.*, *Bride Ministries, NFP v. DeMaster*, No. 4:20-CV-00402, 2020 WL 6822836, at *10 (E.D. Tex. Nov. 20, 2020) (denying the defendant's motion to transfer where, among other things, the time between filing and trial in the Eastern District of Wisconsin (31.5 months) was greater than that in the Eastern District of Texas (17.7 months)).

Moreover, Schobinger's argument that the existence of "related pending" litigation and principles of comity support the first public interest factor is misplaced. ECF 11 at p. 10. First, whether related or similar cases are pending in different courts is not a determinative factor on which courts rely when deciding whether to transfer. *See supra* § III(C). Second, as set forth below, there is no "related" litigation. Twitter's lawsuit and the California Lawsuit are unrelated actions. *Supra* § III(C). In support of his argument that litigating "related" matters in different

---

[4] *See* United States District Courts – National Judicial Caseload, available at
https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2023.pdf.

courts leads to wastefulness, Schobinger cites a case analyzing "two cases involving **precisely the same issues**" (which is not the case here) and a case where the court **denies** the motion to transfer venue.  ECF 11 at p. 10 (citing *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)) (emphasis added) (affirming judgement of a district court transferring "for trial" an action involving the same tort arising from the sinking of the same barge to another court because "crucial issues about fault and damages suffered were identical"); *see also Greater Yellowstone Coal. v. Kempthorne*, No. CIV.A. 07-2111 (EGS), 2008 WL 1862298, at *8 (D.D.C. Apr. 24, 2008)) (denying a motion to transfer venue and noting that the court "has no reason to believe that the District of Wyoming would not observe the same principles of comity upheld in both the D.C. and Tenth Circuits").  Such arguments cannot carry the day to establish this factor.

**Factor 2 – The Local Interest in Having Localized Interests Decided at Home Weighs against Transfer**.

"The local interest in having localized interests decided at home does not merely encompass the parties' connections to each forum, but 'the **significant** connections between a particular venue and the events that gave rise to a suit.'"  *Lopez v. Nat'l Freight, Inc.*, No. 3:22-CV-1844-S, 2023 WL 2290787, at *7 (N.D. Tex. Feb. 28, 2023) (emphasis added) (quoting *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022)).  "Important considerations include the location of the injury, witnesses, and the Plaintiff's residence."  *Def. Distributed*, 30 F.4th at 435.  Indeed, "[t]he **place of the alleged wrong is one of the most important factors in venue determinations**."  *Id.* (quoting *Watson v. Fieldwood Energy Offshore, LLC*, 181 F. Supp. 3d 402, 412 (S.D. Tex. 2016)) (emphasis added).

It is undisputed that Schobinger "lived and worked remotely in Texas" and emailed Twitter's confidential information to himself and also uploaded this information to his personal cloud storage platforms in Texas.  ECF 11 at p. 11; Verified Pet. at ¶¶ 32, 39, 43.  There is also no

dispute that the injury is continuing to occur in Texas because Schobinger remains in possession of his personal computer in Texas.  ECF 11 at p. 9, n.4.  Because the injury occurred and continues to occur in Texas, this factor weighs against transfer.[5]

Twitter has connections in California and Arizona because those are the locations of its headquarters and its state of incorporation.  When a defendant has multiple connections, this factor is neutral.  *See Permian Basin Petroleum Ass'n v. Dep't of the Interior*, No. MO-14-CV-050, 2015 WL 11622492, at *3 (W.D. Tex. Feb. 26, 2015) (finding this factor neutral where there were connections to multiple states).  Where the injury occurred in Texas, the plaintiff is a resident of Texas, and the law governing the dispute is Texas law, the location of Twitter's headquarters is irrelevant to Texas's strong local interest in resolving this dispute.

### Factor 3 – The Familiarity of the Forum with the Law that Will Govern the Case Weighs against Transfer.

This factor unambiguously weighs against transfer because this matter concerns (1) a Texas resident, (2) a Texas common law breach of contract claim, and (3) a contract that is governed by Texas law.  "Texas district courts, naturally, will be the most familiar with Texas statutes and common law."  *LED Sign Co. v. Hwee*, Civ. A. No. H–08–1463, 2008 WL 5114957, at *6 (S.D. Tex. Dec. 3, 2008) (denying motion to transfer venue).  The Agreement at issue states that it will be governed by the "laws of the State in which [Schobinger] reside[s] during the course of [his] employment."  Verified Pet. at Exhibit 1 § 17.  Because Schobinger is a resident of Texas, the Agreement is governed by Texas law.

---

[5] Schobinger's contention that transfer is appropriate simply because Twitter is headquartered in California is unavailing.  *PersonalWeb Technologies, LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at *11 (E.D. Tex. Mar. 21, 2013) (denying transfer as to defendant where both plaintiff and defendant were headquartered in Texas).

Contrary to Schobinger's claims, the Northern District of California is not "in a better position" to adjudicate this matter concerning Texas interests and a court gives no weight to an individual judge's preference or expertise. *See Lopez v. Nat'l Freight, Inc.*, No. 3:22-CV-1844-S, 2023 WL 2290787, at *8 (N.D. Tex. Feb. 28, 2023) (denying a motion to transfer venue and noting that "this Court [in Texas] is likely more familiar with Texas law" and that there is no precedent that "weigh[s] the expertise of individual judges with a particular body of law" under this factor). This factor weighs against transfer. In addition, and as set forth above, the documents in question here are not, or at least should not be, within "the scope of discovery" in the California Lawsuit. ECF 11 at p. 12.

### Factor 4 – The Avoidance of Unnecessary Problems of Conflict of Laws in the Application of Foreign Law Weigh against Transfer.

Lastly, the final public factor weighs against transfer. As stated above, this dispute concerns a Texas common law breach of contract claim governed by Texas law concerning a Texas resident. Schobinger offers no evidence or support for his conclusory statement that there is substantial overlap between the actions such that there could be any risk that this Court would enter conflicting orders that may contradict "[Judge] Chhabria's view of the course of discovery." *See* ECF 11 at p. 12. Indeed, this factor also weighs against transfer. The issues present in Twitter's lawsuit (whether Schobinger has and is disclosing Twitter's confidential information) and the issues present in the California Lawsuit (whether the PBP was improperly denied) are too dissimilar to result in contradictory decisions or discovery rulings.

Because Schobinger has failed to show that **any**, let alone all, of the private and public factors weigh in favor of transfer, he has not met his burden of establishing that the proposed forum is ***clearly more convenient*** than this forum. The Motion should be denied.

**C.     Whether the California Class Action Is Related Is Not a Factor Courts Consider under the Present Circumstances and, in any Event, Does Not Support Transfer Because the Two Actions Are Unrelated.**

Finally, Schobinger's argument that the Court should transfer this case because the California Lawsuit purportedly involves similar issues to Twitter's lawsuit is unavailing for at least two reasons.  First, the litigations are not actually "similar."  The California Litigation is a bonus claim asserting failure to pay Schobinger and other employees under Twitter's PBP.  The case before this Court consists of a single breach of contract claim in which Twitter seeks equitable relief preventing a Texas resident from improperly using or disclosing Twitter's confidential and sensitive information in enforcement of Twitter's valid contractual rights—expressly governed by Texas law.  The information at issue here that Twitter seeks to protect from improper use or disclosure, while inclusive of bonus information, involves material far beyond and completely unrelated to bonus payments, including, for example, personal identifying information of employees globally, critically implicating Twitter's global regulatory compliance requirements.  It further involves confidential information related to the RSU spreadsheet that Schobinger emailed to his personal email address and the multiple, non-personal documents that Schobinger uploaded to his "Work" file on his personal Google Drive.  In short, the determination of whether Twitter failed to pay bonuses has nothing to do with Twitter's right to enforce a Texas resident's compliance with a valid contract expressly governed by Texas law.  Despite Schobinger's conclusory insistence otherwise, the two matters do not involve similar issues and in fact are unrelated.

Second, "similar litigation" is not one of the established factors courts consider in the transfer analysis in any event, and the circumstances in which some courts *may* consider the relationship with an action pending in another district do not exist here.  The cases Schobinger cites in ostensible support—including unpublished magistrate judge decisions from the District of

Oregon and the Northern District of Illinois—are readily distinguishable and inapposite.

For example, in *Bobosky v. Adidas AG*, the first case Schobinger cites on this point (ECF 11 at p. 5), the court **denied** the motion to transfer venue.  *See* 2010 WL 4853295, at *6–7 (D. Or. Oct. 8, 2010), *report and recommendation adopted*, 2010 WL 4828392 (D. Or. Nov. 18, 2010). Moreover, Schobinger's reliance on *Bobosky* is misplaced because in that case, the **plaintiffs** sought to transfer venue, but Schobinger is the defendant in the instant action.  Importantly, "**courts hold plaintiffs to a different standard than defendants who move to transfer**." *Bobosky*, 2010 WL 4853295, at *5 (D. Or. Nov. 18, 2010) (emphasis added).  Accordingly, none of the cases cited by Schobinger in which the **plaintiff** moved for transfer have any relevance here. In any event, the *Bobosky* court denied the plaintiffs' motion in part because "plaintiffs' motion to transfer appears motivated by forum shopping, not by any changed circumstances warranting a transfer.  Plaintiffs' initial choice to file this action in Texas indicates a strong preference of that forum over all other possible venues."  2010 WL 4853295 at *7.[6]

*Westberry v. Gustech Commc'ns, LLC*, another case that Schobinger relies on, is also distinguishable.  ECF 11 at 9; 2018 WL 3548869 (N.D. Tex. July 24, 2018).  In that case, different plaintiffs in separate states each separately filed claims for violations of the FLSA against the same defendant in different federal district courts.  2018 WL 3548869 at *1.  The court granted the motion to transfer venue in part so that the identical claims against the same defendant could be heard in the same forum.  None of those facts exists here: the claims at issue are entirely different

---

[6] Schobinger also inexplicably relies on *Moto Photo, Inc. v. K.J. Broadhurst Enterprises, Inc.*, but the court in that case **denied** the motion to transfer venue.  2003 WL 298799 (N.D. Tex. Feb. 10, 2003).  In *Moto Photo*, the plaintiff sued for trademark infringement, trademark dilution, unfair competition, breach of contract, and unjust enrichment. *Id*. at *2.  The **plaintiff** then wanted to transfer the matter to another district in which **the same plaintiff** had subsequently filed a Chapter 11 bankruptcy.  *Id*.  This case is further inapplicable because the standard for a plaintiff moving to transfer venue is different than for a defendant; Schobinger is not the plaintiff here.  *See Bobosky*, 2010 WL 4828392, at *5.

and unrelated as discussed below, and although the parties are the same in both actions, their roles are reversed; Twitter is the plaintiff in the instant action asserting a breach of contract claim, but Twitter is the defendant in the California Class Action, defending a bonus claim.[7]

Likewise, Schobinger's reliance on *DataTreasury Corp. v. First Data Corp.* is misplaced. ECF 11 at p. 5.  Although the court in that case ultimately transferred the matter, the court noted that it involved "the complex and technical area of patent and trademark law."  243 F. Supp. 2d 591, 594 (N.D. Tex. 2003).  And, the court granted the transfer specifically so that it could be heard by the same judge "presiding over two other cases **filed by plaintiff involving the same patents**."  *Id*. at 597 (emphasis added).  This case, by contrast, involves a solitary breach of contract claim in which the parties to each lawsuit are in different roles, asserting and defending completely different and unrelated claims.

In sum, *none* of the cases cited by Schobinger support his assertion that this case should be transferred to the Northern District of California because Schobinger has separately filed an unrelated class action in that district.

## IV.  CONCLUSION

For the foregoing reasons, Twitter respectfully asks that the Court deny Schobinger's Motion.

---

[7] Schobinger's reliance on *Johnson v. Am. Airlines, Inc.* is misplaced for the same reason.  ECF 11 at p. 9.  In *Johnson,* the court granted the transfer also because different plaintiffs in separate states each separately filed claims for age discrimination against the same defendant.  1981 U.S. Dist. LEXIS 13215 (N.D. Ill. June 2, 1981).  This case is further inapposite because the **plaintiff** moved for transfer, which involves a different standard, as discussed above.

Dated: July 19, 2023

Respectfully submitted,

*/s/ Stefanie R. Moll*
**Stefanie R. Moll**
State Bar No. 24002870
Email: stefanie.moll@morganlewis.com
**T. Cullen Wallace**
State Bar No. 24072412
Email: cullen.wallace@morganlewis.com
**John P. Bramble**
State Bar No. 24101544
Email: john.bramble@morganlewis.com
**Morgan A. McGreevy**
State Bar No. 24125317
Email: morgan.mcgreevy@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX  77002
T:  713.890.5000
F:  713.890.5001

21

## **CERTIFICATE OF SERVICE**

     I hereby certify that, on July 19, 2023, I served this document on Defendant Mark Schobinger's counsel via CM/ECF.

 

                                                        */s/ John P. Bramble*
                                                        John P. Bramble