**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> MARK SCHOBINGER, <br><br> *Defendant.* | No. 1:23-cv-00778 |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S EMERGENCY MOTION FOR REMAND**

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................... 1

II.  FACTUAL BACKGROUND ........................................................................................... 1

III.  ARGUMENT .................................................................................................................... 5

    A.    Mr. Schobinger Has Not Been Properly Served In The State Court Case.............. 5

        1.    Mr. Shobinger's counsel did not accept service under Rule 119................ 5

        2.    Mr. Schobinger did not enter a general appearance by attending the video chambers conference. ........................................................................ 6

    B.    Mr. Schobinger Satisfies The Requirements For Diversity Jurisdiction Because The Value Of Plaintiff's Requested Injunction Exceeds $75,000. ........... 9

IV.  CONCLUSION ............................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Baker v. Bell Textron, Inc.*,
  2020 WL 5513431 (N.D. Tex. Sept. 14, 2020) .................................................................. 5

*Carey v. State of Texas*,
  Case No. 04-09-00809-CV, 2010 WL 2838631 (Tex. App. Ct. Jul. 21, 2010) .................. 8

*Combustion Eng'g, Inc. v. Vukich*,
  Case No. 13-01-750-CV, 2002 WL 34231010 (Tex. App. Ct. Nov. 21, 2002) .................. 6

*Garcia v. Koch Oil Co. of Tex. Inc.*,
  351 F.3d 636 (5th Cir. 2003) ............................................................................................. 9

*Govea v. JPMorgan Chase Bank, N.A.*,
  Case No. H-10-3482, 2010 WL 5140064 (S.D. Tex. Jan. 27, 2010) ............................... 10

*Hunt v. Wash. St. Apple Adver. Comm'n*,
  432 U.S. 333 (1997) .......................................................................................................... 9

*Latex Constr. Co. v. Nexus Gas Transmission*, LLC,
  2020 WL 3962247 (S.D. Tex. July 13, 2020) ................................................................... 5

*Leininger v. Leininger*,
  705 F.2d 727 (5th Cir. 1983) ............................................................................................ 9

*Macs v. Lenahan*,
  Case No. 04-17-00033-CV, 2018 WL 280469 (Tex. App. Ct. Jan. 3, 2018) .................... 6

*Midwest Health Group, LLC v. eMDs, Inc.*,
  2020 WL 6580446 (W.D. Tex. Nov. 10, 2020) ............................................................ 1, 5

*Mirman Grp., LLC v. Michaels Stores Procurement Co.*,
  2020 WL 5645217 (N.D. Tex. Sept. 22, 2020) ................................................................. 5

*Perkola v. Koelling & Assocs., Inc.*,
  601 S.W.2d 110 (Tex. App. Ct. 1980) .............................................................................. 8

*Schobinger v. Twitter, Inc. et al.*,
  Civ. Act. No. 3:23-cv-03007 (N.D. Cal.) .......................................................................... 1

*Texas Brine Co. v. American Arbitration Assoc., Inc.*,
  955 F.3d 482 (5th Cir. 2020) ........................................................................................ 1, 5

*Travieso v. Travieso*,
  649 S.W.2d 818 (Tex. App. Ct. 1983) .............................................................................. 6

*Turner v. Turner*,
    Case No. 14-98-00510-CV, 1999 WL 33659 (Tex. App. Ct. Jan. 28, 1999) ...................... 8

*Webb v. Investacorp, Inc.*,
    89 F.3d 252 (5th Cir. 1996) ............................................................................................ 1, 9

**Statutes**

28 U.S.C. § 1332(a) ........................................................................................................... 5

28 U.S.C. § 1441(b) ........................................................................................................... 5

**Rules**

Tex. R. Civ. P. 119............................................................................................................ 1, 5, 6

Tex. R. Civ. P. 120............................................................................................................ 1, 7

I.  **INTRODUCTION**

Plaintiff X Corp., successor in interest to Twitter, Inc. ("Twitter") filed this case against Defendant Mark Schobinger seeking a temporary restraining order, temporary injunction, and permanent injunction that would bar him from disclosing certain confidential information that Twitter believes he possesses by virtue of his former role as Twitter's Head of Compensation and Benefits. On July 11, 2023, Defendant removed the case to this Court. Twitter contends that Mr. Schobinger and his counsel have acted improperly in doing so. However, Twitter's arguments lack merit. Specifically, Mr. Schobinger never accepted service of Twitter's Verified Original Petition pursuant to Tex. R. Civ. P. 119. Likewise, his counsel's attendance at a hastily called off-the-record video chambers conference does not constitute a general appearance under Tex. R. Civ. P. 120. Moreover, he satisfies the amount in controversy for diversity jurisdiction because the Fifth Circuit recognizes that the value of a party's claims in a separate underlying litigation may be used to value an injunction. *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 255 (5th Cir. 1996). As such, Mr. Schobinger has properly removed this case to this Court, and Twitter's Emergency Motion for Remand should be denied. *See e.g., Texas Brine Co. v. American Arbitration Assoc., Inc.*, 955 F.3d 482 (5th Cir. 2020); *Midwest Health Group, LLC v. eMDs, Inc.*, 2020 WL 6580446, at *3 (W.D. Tex. Nov. 10, 2020).

II.  **FACTUAL BACKGROUND**

Mr. Schobinger is Twitter's former Executive and Incentive Compensation Director. (Twitter's Petition ¶ 17, Dkt. 1-1.) Mr. Schobinger filed the California Class Action on June 20, 2023 (hereinafter referred to as "California Class Action Lawsuit"). *See Schobinger v. Twitter, Inc. et al.*, Civ. Act. No. 3:23-cv-03007 (N.D. Cal.). The California Class Action Lawsuit Complaint is attached as Exhibit 1 to Mr. Schobinger's Declaration (which is attached as Exhibit A). In that Complaint, he alleges that in the months leading up to Musk's acquisition of Twitter

1

in October 2022, its executives repeatedly promised Twitter's employees that 2022 bonuses would be paid out at fifty percent (50%) of target in accordance with Twitter's Performance Bonus Plan, to be paid out during the first quarter of 2023. (California Class Action Compl. ¶¶ 3, 14-23, Ex. A-1.) Twitter repeated this promise following its acquisition by Musk. (California Class Action Compl. ¶¶ 3, 20 Ex. A-1.)

Twitter made this promise in an effort to prevent employees from leaving Twitter for other companies during the transition to Musk's ownership. (California Class Action Compl. ¶ 18, Ex. A-1.) Mr. Schobinger alleges that he and other Twitter employees indeed relied on this promise when choosing to remain employed by Twitter following Musk's acquisition rather than looking for or accepting positions elsewhere. (California Class Action Compl. ¶¶ 3, 24-25, Ex. A-1.) However, Twitter broke its promise and refused to pay any 2022 bonus to its employees. (California Class Action Compl. ¶4, 26 Ex. A-1.) Because Twitter reneged on its various promises (including regarding its bonus payments), Schobinger left Twitter in May 2023 (California Class Action Compl. ¶ 27, Ex. A-1.) Mr. Schobinger also brought class claims of breach of contract and promissory estoppel against Twitter. (California Class Action Compl., Counts I and II, Ex. A-1.)

Following Mr. Schobinger's filing of the California Class Action, Twitter filed the Petition in the instant matter on July 6, 2023 before the District Court of Williamson County, Texas, 395th Judicial District Court. (Twitter's Petition, Dkt. 1-1.) In its Petition, Twitter sought a temporary restraining order, and a temporary and permanent injunction, to prevent Mr. Schobinger from disclosing certain documents that Twitter believes are in Mr. Schobinger's possession. (Twitter's Petition ¶¶ 40-42, Dkt. 1-1.) As Twitter repeatedly acknowledges in its Petition, Mr. Schobinger has represented to Twitter that he does not possess the documents in

question. (Twitter's Petition ¶¶ 28, 40, Dkt. 1-1.) Nevertheless, Twitter pursued this matter, as Mr. Schobinger "is the named plaintiff in a class action lawsuit where he and his counsel could use this information to their advantage and to Twitter's detriment . . . ." (Twitter's Petition ¶ 41, Dkt. 1-1.)

On July 7, 2023, Twitter's counsel, Stefanie Moll, emailed Mr. Schobinger's counsel to ask whether they would accept service on Mr. Schobinger's behalf. (Emails between Moll and Liss-Riordan dated 7/7/2023 – 7/10/2023, Dkt. 9-2.) While Mr. Schobinger's lead counsel, Shannon Liss-Riordan, replied that counsel would accept service for Mr. Schobinger on July 10, 2023, Ms. Moll never sent a waiver of service to sign, and thus Ms. Liss-Riordan never signed any agreement under oath to accept service for Mr. Schobinger. (*See id.*) Additionally, Ms. Liss-Riordan advised Ms. Moll that she was out of the country with family, not in a position to respond to an emergency filing that week, and therefore asked that any hearing be scheduled for the following week. *Id.*

On July 10, 2023, the Texas Court's coordinator contacted Twitter's counsel to discuss the case. (Emails with Marrou dated July 10-11, 2023, attached as Exhibit B.) Ms. Moll responded to the email, copying Mr. Schobinger's counsel. *Id.* Ms. Liss-Riordan advised the Texas Court's coordinator that she was travelling in Europe, and that she was in the process of obtaining local counsel for the case, and requested that any hearing be scheduled for the following week. *Id.* The following morning, on July 11, 2023, the Texas Court's coordinator emailed counsel stating, "Judge Larson would like have chamber conference with the attorney's in this case. Can you both be available today at 3:30pm?" *Id.* No additional information was provided by the Texas Court's coordinator regarding the purpose of the chamber conference or what would be discussed during it. *See id.*

3

Throughout the day of July 11th, Ms. Liss-Riordan continued her efforts, despite being in Europe with her family, to finalize local counsel arrangements. Ultimately, later that afternoon, Drew Herrmann, an attorney located in the Ft. Worth area, agreed to act as local counsel in the matter.

At approximately 3:30 p.m., Ms. Liss-Riordan's partner, Bradley Manewith, joined the video conference for the chambers conference. (Decl. Manewith at ¶ 5; attached as Exhibit C.) The video chambers conference began approximately five minutes later. (*Id.*) The case was never called on the record, and a court reporter was not present for the conference. (*Id.* at ¶ 6.) At the outset of the conference, Judge Larson asked Mr. Manewith whether he was licensed to practice in the State of Texas, and Mr. Manewith confirmed that he was not. (*Id.* at ¶ 7.) During the conference Mr. Manewith asked that any hearing on Twitter's request for a temporary restraining order be scheduled for the following week. (*Id.* at ¶ 8.) Mr. Manewith also answered Judge Larson's questions, including how Mr. Manewith suggested Twitter's proposed Temporary Restraining Order (TRO) should be modified if it was entered, and how long he believed would be necessary for a temporary injunction hearing. (*Id.* at ¶ 9.) Judge Larson also remarked during the video chambers conference that he had left a hearing in the courtroom to speak with the attorneys. (*Id.* at 10.) At the conclusion of the video chambers conference, Judge Larson stated that Twitter should submit a revised Temporary Restraining Order consistent with what was discussed during the video chambers conference, and that he would sign it. (*Id.* at ¶ 10.) However, by that point, the Texas Court no longer had jurisdiction over the matter as Mr. Herrmann had already filed the Notice of Removal. (Dkt. 1.)[1]

---

[1] Recognizing that Mr. Schobinger had not been served previously, on July 12, 2023, Twitter served a copy of its Verified Original Petition on him. (Affidavit of Service, attached as Exhibit D.) However, Mr. Schobinger had already filed his Notice of Removal to this Court the

4

**III.     ARGUMENT**

A defendant may generally remove a case originally filed in state court to federal court if diversity jurisdiction exists under 28 U.S.C. § 1332(a). 28 U.S.C. § 1441(b). Moreover, as the Fifth Circuit, and numerous district courts within the Fifth Circuit, have recognized, the forum-defendant rule set forth in 28 U.S.C. § 1441(b)(2) does not preclude snap removals by in-state defendants before they have been properly served. *Texas Brine Co.*, 955 F.3d 482 (5th Cir. 2020); *Midwest Health Group, LLC*, 2020 WL 6580446, at *3 (*citing Mirman Grp., LLC v. Michaels Stores Procurement Co.*, 2020 WL 5645217, at *1 (N.D. Tex. Sept. 22, 2020)); *Baker v. Bell Textron, Inc.*, 2020 WL 5513431, at *7 (N.D. Tex. Sept. 14, 2020); *Latex Constr. Co. v. Nexus Gas Transmission*, LLC, 2020 WL 3962247, at *6 (S.D. Tex. July 13, 2020). Here, Plaintiff concedes that an in-state defendant may properly remove a case prior to being served. Yet, it contends that Mr. Schobinger waived service when his counsel sent an email agreeing to accept service and appeared at a hastily scheduled off-the-record video chambers conference with the state court judge. Twitter also argues that Mr. Schobinger cannot satisfy the $75,000 jurisdictional amount required for diversity jurisdiction under 28 U.S.C. § 1332(a). Plaintiff is wrong on all accounts, and therefore its motion to remand should be denied.

**A.     Mr. Schobinger Has Not Been Properly Served In The State Court Case.**

**1.     Mr. Shobinger's counsel did not accept service under Rule 119.**

Plaintiff first argues that Mr. Schobinger waived service, and therefore cannot remove this case, because his counsel stated in an email that "we will accept service for Mr. Schobinger." (Dkt. No. 9 at 7.) Under Tex. R. Civ. P. 119 a defendant may accept service

> by a written memorandum signed by him, or by his duly authorized agent or attorney, after suit is brought, sworn to before a proper officer other than an attorney

---

prior day. (Dkt. 1.) Thus, because the Texas State Court no longer had jurisdiction, Twitter's attempt to serve Mr. Schobinger was too late.

>  in the case . . . . [Additionally] [t]he party signing such memorandum shall be delivered a copy of plaintiff's petition, and the receipt of the same shall be acknowledged in such memorandum.

Courts have routinely required strict compliance with the requirements of Rule 119. *See e.g.*, *Macs v. Lenahan*, Case No. 04-17-00033-CV, 2018 WL 280469, at *2 (Tex. App. Ct. Jan. 3, 2018); *Combustion Eng'g, Inc. v. Vukich*, Case No. 13-01-750-CV, 2002 WL 34231010, at *4 (Tex. App. Ct. Nov. 21, 2002) (not designated for publication); *Travieso v. Travieso*, 649 S.W.2d 818, 820 (Tex. App. Ct. 1983). For example, in *Macs*, 2018 WL 280469, at *2, the defendant's attorney signed a letter explicitly confirming that he agreed to accept service on behalf of the defendant, and that the letter would constitute an agreement on the issue of service. However, because the letter did not comply with Rule 119's requirement that it be sworn, the court held that it could not serve as a valid waiver of service, and therefore the defendant had not been properly served. *Id. See also Vukich*, 2002 WL 34231010, at *4 (holding that unsworn agreement was not in compliance with Rule 119, and could not serve as valid waiver of service); *Travieso*, 649 S.W.2d at 820 (finding the alleged waiver of service was defective in part because it did not acknowledge receipt of plaintiff's petition).

Here, the alleged waiver of service likewise fails to meet the strict requirements of Rule 119. Mr. Schobinger's counsel's email was not sworn and did not explicitly acknowledge receipt of Plaintiff's petition. (Dkt. 9, Ex. B.) As such, it cannot serve as a valid waiver of service.

### 2. Mr. Schobinger did not enter a general appearance by attending the video chambers conference.

Recognizing the fatal flaws in its waiver of service argument based on counsel's email, Plaintiff also argues that Mr. Schobinger waived service by generally appearing at the July 11th video chambers conference. This argument is similarly doomed.

6

Plaintiff premises its entire argument that Mr. Schobinger has generally appeared before the Texas State Court on Mr. Schobinger's counsel attending the July 11th video chambers conference. However, Plaintiff's characterization of the conference as a "TRO Hearing" is a red herring and belies the reality of the situation. To that end, Texas Rule of Civil Procedure 120 provides:

> The defendant may, in person, or by attorney, or by his duly authorized agent, enter an appearance in **open court**. Such appearance shall be noted by the judge upon his docket and entered in the minutes, and shall have the same force and effect as if the citation had been duly issued and served as provided by law.

(emphasis added). In arguing that Mr. Schobinger appeared in Texas State Court, Plaintiff once again glosses over the plain language and basic requirements of the Texas Rules of Civil Procedure – here Rule 120. Specifically, as Plaintiff concedes, the July 11th hearing was held in the judge's chambers. (Dkt. 9 at 1.) Thus, by its very definition, the hearing was not in open court. Not surprisingly, because the conference occurred in chambers, and not open court, it does not appear anywhere on the state court's docket. (Dkt. 12.01 at 1.) Nor is Mr. Manewith's appearance noted on the docket or entered in the minutes (as the conference occurred off the record and without any court reporter). *Id.* In short, nothing about the July 11th video chambers conference meets the requirements outlined by Rule 120 for entering a general appearance. As such, counsel's attendance at the video chambers conference cannot be used by Plaintiff as evidence that Mr. Schobinger could be deemed served in this matter.

The above notwithstanding, even assuming the July 11th video chambers conference otherwise met the requirements of Rule 120 for a general appearance, which it does not, Mr. Manewith's attendance at the conference does not constitute a general appearance by Mr. Schobinger. Texas courts recognize that appearing in matters ancillary and prior to the main suit does not constitute a general appearance. *See e.g.*, *Perkola v. Koelling & Assocs., Inc.*, 601

7

S.W.2d 110, 112 (Tex. App. Ct. 1980); *Carey v. State of Texas*, Case No. 04-09-00809-CV, 2010 WL 2838631, at *3 (Tex. App. Ct. Jul. 21, 2010); *Turner v. Turner*, Case No. 14-98-00510-CV, 1999 WL 33659, at *2-3 (Tex. App. Ct. Jan. 28, 1999) (not designated for publication). For example, in *Perkola*, 601 S.W.2d at 112, the court found that the plaintiff's appearance at a temporary injunction hearing did not constitute a general appearance because "[t]he main suit, for a permanent injunction and damages, [would] be litigated subsequently, and this temporary injunction hearing did not resolve any issues of law or fact in the main case." Similarly, in *Turner*, 1999 WL 33659, at *2-3, the court found that an attorney's appearance and argument at a temporary restraining order hearing does not constitute a general appearance because the TRO hearing was ancillary and did not resolve any issues of law or fact in the underlying suit.

     Likewise, here, even if the July 11th video chambers conference was to be considered a TRO hearing, it was ancillary to the underlying suit. While Plaintiff distorts and mischaracterizes Mr. Manewith's actions during the conference, ultimately it is irrelevant. Like the attorneys in *Perkola* and *Turner*, Mr. Manewith attended the video chambers conference (upon the request / invitation of the State Court) to advise the court about Mr. Schobinger's position on Plaintiff's request for a temporary restraining order. To that end, Mr. Manewith informed the Court at the outset of the conference that lead counsel was out of the country, and that he was not licensed to practice law in the State of Texas. He also requested that any TRO hearing be scheduled for the following week, and responded to the Court's questions (including whether he had any proposed changes to the language of Plaintiff's proposed TRO if it should be entered, and how much time to allot for the temporary injunctive hearing). While the State Court ultimately announced that it would enter a temporary restraining order, consistent with certain changes based upon discussions during the video chambers conference, the Court did not resolve any issues of law or

8

fact. Rather, those were to be litigated subsequently as part of the main case (as evidenced by the Court's stated intention to schedule a temporary injunction hearing). As such, the video chambers conference was an ancillary matter, and Mr. Manewith's participation does not constitute a general appearance by Mr. Schobinger.

> **B.       Mr. Schobinger Satisfies The Requirements For Diversity Jurisdiction Because The Value Of Plaintiff's Requested Injunction Exceeds $75,000.**

In an action for injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 640 (5th Cir. 2003) (quoting *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333 (1997)). Stated otherwise, the amount is controversy "is the value of the right to be protected or the extent of the injury to be prevented." *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983).

Plaintiff contends that the value of Mr. Schobinger's claims and the California Class Action Lawsuit cannot satisfy the amount in controversy. (Dkt. 9 at 10-12.) However, the Fifth Circuit has held it is appropriate for courts to look at the value of an underlying related litigation when determining the amount in controversy. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 255 (5th Cir. 1996); *Leininger*, 705 F.2d at 729. For example, in *Webb*, 89 F.3d at 255, the plaintiff moved for an injunction and declaratory judgment restricting defendant's ability to pursue its claims against them in arbitration. The Fifth Circuit found that the district court "properly looked to the amount of [the defendant's] claim in the underlying arbitration to determine the amount in controversy." *Id.* at 257. Similarly, in *Leininger*, 705 F.2d at 729, the Fifth Circuit held that the amount in controversy for the plaintiff's request to enjoin enforcement of his ex-wife's divorce judgement was the amount of the underlying judgment. In short, in both *Webb* and *Leininger* "the 'value of the extent of the injury to be prevented' was the amount plaintiffs stood to lose if

their requests for injunctions were denied." *Govea v. JPMorgan Chase Bank, N.A.*, Case No. H-10-3482, 2010 WL 5140064, at *3 (S.D. Tex. Jan. 27, 2010).

Here, it is clear from Plaintiff's Verified Original Petition that one of Plaintiff's primary goals in seeking an injunction is to limit Mr. Schobinger's ability to use the confidential information he allegedly possesses to support the California Class Action Lawsuit. Specifically, in paragraph 41 of the Verified Petition, Plaintiff alleges:

> Schobinger has or soon will improperly disclose and use the confidential and sensitive information contained in the documents he downloaded, emailed, and uploaded before separating from Twitter, particularly the compensation information in the Compensation Detail Report, by filing the California Lawsuit. Because Schobinger transmitted this confidential and sensitive information to himself, refused to provide Twitter with any meaningful assurances that he no longer possesses the information and has not shared it, and is the named plaintiff in a class action lawsuit where he and his counsel could use this information to their advantage and to Twitter's detriment, Schobinger is threatening to use this information in further breach of the Agreement.

(Twitter's Petition ¶ 41, Dkt. 1-1.) Plaintiff also alleges in paragraph 45 of the Verified Petition that "Schobinger has since brought the California Lawsuit and can benefit, and is threatening to benefit from the information he took from Twitter, by not providing the assurances required by the Agreement and that he promised to provide." (Twitter's Petition ¶ 45, Dkt. 1-1.) As such, the injury Plaintiff seeks to prevent is having Mr. Schobinger use the confidential information allegedly in his possession to his advantage, and to Plaintiff's detriment, in the California Class Action Lawsuit. Thus, the proper value of the injunction for purposes of determining the amount in controversy is the value of the claims at issue in the underlying California Class Action Lawsuit.

To that end, as part of the California Class Action Lawsuit, Mr. Schobinger alleges that he and Twitter's other current and former employees are owed their 2022 annual bonus. (California Class Action Compl. ¶¶ 4-5, Ex. A-1.) Specifically, Mr. Schobinger and thousands of

10

other employees were not paid their 2022 annual bonus. (*See* California Class Action Compl., Ex. A-1.) The value of the unpaid 2022 bonuses exceeds $5 million. (California Class Action Compl. ¶¶ 11, Ex. A-1.) As such, Mr. Schobinger easily satisfies the amount in controversy for purposes of diversity jurisdiction, and Twitter's motion to remand should be denied.

## IV.  CONCLUSION

For the foregoing reasons, Defendant Mark Schobinger respectfully requests that this Honorable Court deny Plaintiff's Emergency Motion for Remand and award his such other relief as it deems just and proper.

Dated: July 19, 2023                    Respectfully submitted,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan (*pro hac vice*)
Bradley Manewith (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com
bmanewith@llrlaw.com

*-and-*

Drew N. Herrmann
Texas Bar No. 24086523
HERRMANN LAW, PLLC
801 Cherry St., Suite 2365
Fort Worth, Texas 76102
(817) 479-9229
drew@herrmannlaw.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2023, a true and accurate copy of theforegoing document was served on counsel for Plaintiff via filing on the Court's CM/ECF system.

>  */s/ Shannon Liss-Riordan*
>  Shannon Liss-Riordan (*pro hac vice*)