# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| X CORP., SUCCESSOR IN INTEREST TO TWITTER, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> MARK SCHOBINGER, <br> *Defendant*. | C.A. No. 1:23-cv-778-RP |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS
## EMERGENCY MOTION FOR REMAND

Dated: July 21, 2023

**MORGAN, LEWIS & BOCKIUS LLP**

**Stefanie R. Moll**
State Bar No. 24002870
Email: stefanie.moll@morganlewis.com
**T. Cullen Wallace**
State Bar No. 24072412
Email: cullen.wallace@morganlewis.com
**John P. Bramble**
State Bar No. 24101544
Email: john.bramble@morganlewis.com
**Morgan A. McGreevy**
State Bar No. 24125317
Email: morgan.mcgreevy@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T: 713.890.5000
F: 713.890.5001

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

| | | | |
|---|---|---|---:|
| A. | Introduction | ................................................................................................................ | 1 |
| B. | **Schobinger Fails to Establish the Amount in Controversy Exceeds $75,000.** | .............. | 1 |
| | 1. | The California Lawsuit is Not "Underlying Related Litigation" and Has No Bearing on the Amount in Controversy in this Breach of Contract Claim Seeking Only Non-Monetary Equitable Relief. ....................................................... | 2 |
| | 2. | The Cases Schobinger Cites in His Attempt to Support His Futile Amount in Controversy Argument are Inapposite and Readily Distinguishable. ................. | 4 |
| | 3. | Schobinger Fails to Establish By a Preponderance of the Evidence that the Amount in Controversy Exceeds $75,000. ............................................................... | 5 |
| C. | **Schobinger Made a General Appearance, Consented to the Texas Court's Jurisdiction, and Thereby Waived Service of Process**. ................................................ | | 6 |
| D. | **Conclusion** ........................................................................................................... | | 10 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acadian Properties of Austin, L.L.C v. Blakey*,
   2021 WL 2125536 (Tex. App.—Amarillo 2021, no pet.) ......................................................7

*Berniard v. Dow Chem. Co.*,
   481 Fed. Appx. 859 (5th Cir. 2010)..................................................................................2, 6

*In re D.M.B.*,
   467 S.W.3d 100 (Tex. App.—San Antonio 2015, pet. denied) ..............................................10

*Francis v. Wakefield*,
   646 S.W.2d 325 (Tex. App.—Dallas 1983, no writ) ................................................................8

*Garcia v. Koch Oil Co. of Tex., Inc.*,
   351 F. 3d 636 (5th Cir. 2003) ................................................................................................1

*Govea v. JPMorgan chase Bank, N.A.*,
   2010 WL 5140064 (S.D. Tex. Dec. 10, 2010) .....................................................................2, 5

*Hunt v. Wash. State Apple Adver. Comm'n*,
   431 U.S. 333 (1977)................................................................................................................1

*In re Jet HomeLoans Ventures, LLC*,
   2021 WL 5908901 (N.D. Tex. Dec. 14, 2021) .......................................................................5

*Kaufman v. AmeriHealth Laboratory, LLC*,
   2020 WL 6375336 (Tex. App.—Dallas Oct. 30, 2020, no pet.)........................................ 9, 10

*Leininger v. Leininger*,
   705 F. 2d 729 (5th Cir. 1983) ................................................................................................1

*Mays v. Perkins*,
   927 S.W.2d 222 (Tex. App.—Houston [1st Dist.] 1996, no writ)..........................................10

*Perkola v. Koelling & Assocs., Inc.*,
   601 S.W.2d 110 (Tex. App.—Dallas 1980, writ dism'd) .....................................................8, 9

*S&M Transp., LLC v. Interstate Fire & Cas. Co.*,
   2017 BL 482978 (S.D. Tex. July 7, 2017)..............................................................................6

*Schoendienst v. Haug*,
   399 S.W.3d 313 (Tex. App.—Austin 2013, no pet.) ..............................................................9

*TFHSP LLC Series 605 v. Lakeview Loan Servicing, LLC*,
    2014 WL 5786949 (N.D. Tex. Nov. 3, 2014) ................................................................. 2, 9

*Turner v. Turner*,
    1999 WL 33659 (Tex. App.—Houston, 1999) ............................................................ 7, 8, 9, 10

*Vertex Energy Operating, LLC v. Penthol LLC*,
    2021 WL 4538484 (S.D. Tex. Jan. 29, 2021) ................................................................. 7, 8

*W. Harris Cnty. Reg'l Water Auth. v. Union Pac. R.R. Co.*,
    2023 WL 2021807 (S.D. Tex. Feb. 15, 2023) .................................................................... 6

*Webb v. Investacorp, Inc.*,
    89 F.3d 252 (5th Cir. 1996) ............................................................................................... 4

**Statutes**

28 U.S.C. § 1447 ..................................................................................................................... 10

**Other Authorities**

Tex. R. Civ. P. 86 ...................................................................................................................... 8

Tex. R. Civ. P. 120a ............................................................................................................. 6, 7

Plaintiff X Corp., successor in interest to Twitter, Inc. ("Twitter"), files this Reply in support of its Emergency Motion for Remand (ECF 9) (the "Motion").

**A.     Introduction**

Plaintiff Mark Schobinger's Response (ECF 16) to Twitter's Motion focuses on the California Lawsuit, but this red herring only highlights the inadequacy of Schobinger's purported grounds for removal.  Here, Twitter seeks only non-monetary, equitable relief to enforce the Employee Invention Assignment and Confidentiality Agreement (the "Agreement") between Schobinger and Twitter.  *See* ECF 9-1 at 27–37.  Twitter filed a single breach of contract claim in Texas against a Texas resident to enforce the Agreement governed by Texas law, seeking to prevent Schobinger's improper use or disclosure of Twitter's confidential information.  Despite Schobinger's conclusory insistence otherwise, Twitter does **not** seek to enjoin or interfere with discovery in the California Lawsuit or any other litigation.

Schobinger improperly removed this case to federal court and it must be remanded because (a) Schobinger cannot prove that the amount in controversy exceeds $75,000 and (b) the forum-defendant rule applies because Schobinger waived service when he made a general appearance at the TRO Hearing.  Schobinger's failure to carry his burden on *either* of these points makes remand appropriate; as discussed below, he fails on both.  Twitter respectfully requests that this Court remand this case to the Texas Court.

**B.     Schobinger Fails to Establish the Amount in Controversy Exceeds $75,000.**

In an action for injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Garcia v. Koch Oil Co. of Tex., Inc.*, 351 F. 3d 636, 640 (5th Cir. 2003) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 431 U.S. 333 (1977).  "To put it another way, the amount in controversy […] is the value of the right to be protected or the extent of the injury to be prevented." *Leininger v. Leininger*, 705 F. 2d 729 (5th

1

Cir. 1983). Here, the true object of the litigation—Twitter's Texas lawsuit against a Texas resident seeking to enforce a contract governed by Texas law—is **to prevent Schobinger from the improper use or disclosure of Twitter's confidential and sensitive information**, the value of which Schobinger agreed "would be difficult to calculate in monetary terms and for which damages would be an inadequate remedy."[1] ECF 9-1 at 32, ¶ 16.

> 1. <u>The California Lawsuit is Not "Underlying Related Litigation" and Has No Bearing on the Amount in Controversy in this Breach of Contract Claim Seeking Only Non-Monetary Equitable Relief.</u>

Schobinger's attempt to characterize the California Lawsuit as "underlying related litigation" is misleading. The litigations are not actually "related" and thus the Court should not consider the California Lawsuit in determining the amount in controversy in the instant matter.

As set forth in Twitter's other filings in this matter, the California Lawsuit is a bonus claim asserting an alleged failure to pay Schobinger and other employees under Twitter's Performance Bonus Plan ("PBP"). The case before this Court consists of a single breach of contract claim in which Twitter seeks non-monetary equitable relief preventing a Texas resident from improperly using or disclosing Twitter's confidential and sensitive information in enforcement of Twitter's valid contractual rights. *See* ECF 9-1 at 6, ¶ 11 ("Twitter seeks only non-monetary relief."). Twitter's claim here does not turn on the existence or outcome of the California Lawsuit, and indeed, despite Schobinger's attempt to spin the timeline, Twitter sought to enforce its contractual rights under the Agreement (by sending a demand letter on June 13, 2023) to Schobinger before he even filed (and before Twitter had any awareness of) the California Lawsuit on June 20, 2023.

---

[1] Ambiguity "with respect to the amount in controversy […] must be resolved against federal jurisdiction and in favor of remanding the case to state court." *TFHSP LLC Series 605 v. Lakeview Loan Servicing, LLC*, 2014 WL 5786949, at *4 (N.D. Tex. Nov. 3, 2014); *Govea v. JPMorgan chase Bank, N.A.*, 2010 WL 5140064, at *1 (S.D. Tex. Dec. 10, 2010) ("Doubts about the propriety of removal are to be resolved in favor of remand."); *Berniard v. Dow Chem. Co.*, 481 Fed. Appx. 859, 862–63 (5th Cir. 2010) (same).

See ECF 9-1 at 11, ¶ 27; 15, ¶ 36.

Moreover, the information that Twitter seeks to protect from improper use or disclosure, while inclusive in small part of bonus payment information, involves material far beyond and completely unrelated to bonus payments, including, for example, personal identifying information of employees globally, critically implicating Twitter's international compliance requirements. Notably, Schobinger makes no attempt to argue that most of the information he took, such as confidential information related to employees' salaries, restricted stock unit ("RSU") purchases, and personal email addresses, bears any relevance to the California Lawsuit.

Additionally, Twitter is not concerned with and has never sought to prevent Schobinger from litigating the California Lawsuit, through the non-monetary equitable relief Twitter seeks in the instant matter or otherwise. As set forth in Twitter's Emergency Motion for Remand, the proposed temporary restraining order submitted to the Texas Court following the TRO Hearing states the following:

> For the avoidance of doubt, this Order **restrains neither Schobinger nor others acting in concert with Schobinger from seeking discovery from Twitter pursuant to the procedural rules of the court presiding over the putative class action lawsuit Schobinger filed against Twitter** in the US District Court for the Northern District of California – San Francisco Division (the 'Lawsuit'), or from using such discovery if obtained in the Lawsuit, nor does it restrain Twitter from asserting any objections to such discovery in the Lawsuit. **Nothing in this Order shall be construed as prohibiting Schobinger from asserting his claims or any defenses in this Lawsuit**.

ECF 9-1 at 82 (emphasis added).

The "object" of Twitter's lawsuit, therefore, has nothing to do with the California Lawsuit—in which Schobinger can properly attempt to obtain relevant information via discovery. Rather, the "object" of Twitter's lawsuit is **preventing Schobinger from improperly using or disclosing Twitter's confidential and sensitive information**, information that largely does not

3

even relate to bonuses. Twitter's complaint seeks only non-monetary relief to enforce that obligation, and Schobinger has not shown that the $75,000 amount in controversy requirement has been met.

        2.      <u>The Cases Schobinger Cites in His Attempt to Support His Futile Amount in Controversy Argument are Inapposite and Readily Distinguishable.</u>

Tellingly, Schobinger cites only two cases in ostensible support of his attempt to use the California Lawsuit as the basis for establishing the amount in controversy. Neither case applies.

The court's holding in *Webb v. Investacorp, Inc.* specifically concerned whether the claims at issue in an underlying arbitration should be considered when determining the amount in controversy in an action seeking to **enjoin or compel arbitration**. 89 F.3d 252 (5th Cir. 1996). The court limited its analysis and holding accordingly: "[T]he amount in controversy **in a motion to compel arbitration** is the amount of the potential award **in the underlying arbitration proceeding**." *Id.* at 256 (emphasis added) (holding that the same rule applied in the context of a motion to enjoin arbitration). Not only does the instant matter not concern a motion to compel or enjoin arbitration, it is not analogous because it does not seek to enjoin litigation at all. Unlike in *Webb*, where the plaintiff actively sought to stop a particular arbitration through a declaratory judgment, Twitter does not seek to enjoin Schobinger from litigating the California Lawsuit or from engaging in discovery in the California Lawsuit. To the contrary, the injunctive relief Twitter seeks here does **not** "**prohibit[] Schobinger from asserting his claims or any defenses in [the California] Lawsuit**" or "from seeking discovery from Twitter pursuant to the procedural rules of the court presiding over the putative class action lawsuit Schobinger filed against Twitter." ECF 9-1 at 82. Because Twitter does not seek relief enjoining or interfering with discovery in the California Lawsuit, and in fact expressly excludes the California Lawsuit from the TRO, the California Lawsuit has no bearing on the value of Twitter's Texas lawsuit.

*Govea v. JPMorgan Chase Bank, N.A.* is inapplicable for the same reason: the plaintiff in *Govea* sought declaratory relief to enjoin separate litigation (a foreclosure). 2010 WL 5140064 (S.D. Tex. Dec. 10, 2010). The issue before the *Govea* court was whether the amount in controversy was the full value of the property at issue or the smaller amount remaining owed on the mortgage of the foreclosed property. *Id*. at *2–4. The instant case is not analogous because Twitter does not seek to enjoin the California Lawsuit and therefore the Court need not and should not consider its value in determining the amount in controversy here.

In analyzing cases involving the valuation of claims seeking equitable relief, the *Govea* court noted that "the value of the extent of the injury to be prevented was the amount the plaintiffs stood to lose if their requests for injunctions were denied." *Id*. at *3 (quotations omitted). In *Govea* and the cases cited therein, the plaintiffs "stood to lose" objects or other damages capable of monetary valuation such as real property and alimony. Here, if Twitter's request for equitable relief is denied, Twitter stands to sustain injury whose monetary value "would be difficult to calculate," as agreed by the parties in the Agreement Twitter seeks to enforce. ECF 9-1 at 32, ¶ 16. Accordingly, not only does *Govea* **not** stand for the proposition that this Court should look to the California Lawsuit in determining the amount in controversy here, it further underscores Twitter's argument that the amount in controversy requirement is not satisfied here.

>   3.   <u>Schobinger Fails to Establish By a Preponderance of the Evidence that the Amount in Controversy Exceeds $75,000.</u>

Even if the California Lawsuit were relevant to Twitter's lawsuit (it is not, as discussed above), Schobinger has still failed to carry his burden to "prove by a preponderance of the evidence that the amount in controversy requirement has been satisfied." *In re Jet HomeLoans Ventures, LLC*, 2021 WL 5908901, at *4 (N.D. Tex. Dec. 14, 2021). Schobinger's declaration containing one conclusory sentence that he personally calculates the damages in the unrelated California

Lawsuit "would exceed the jurisdictional threshold of $5 million" is woefully inadequate. *See Berniard*, 481 Fed. Appx. at 862–63 ("Moreover, as the district court aptly noted, . . . removal cannot be based simply upon conclusory allegations") (quotations omitted); *see also W. Harris Cnty. Reg'l Water Auth. v. Union Pac. R.R. Co.*, 2023 WL 2021807, at *2 (S.D. Tex. Feb. 15, 2023) (recommending remand and noting that an appraiser's declaration was "too conclusory to constitute competent, summary judgment-type proof that the amount in controversy is met" because the declarant "offer[ed] no insight as to how he reached [his] conclusion and . . . ma[de] no effort to tie his opinion to the information he reviewed") (internal quotations omitted); *S&M Transp., LLC v. Interstate Fire & Cas. Co.*, 2017 BL 482978, at *2 (S.D. Tex. July 7, 2017) ("IFCC's conclusory allegations, without more, are insufficient to justify removal in the present case. IFCC provides no evidence and asserts no facts to support said estimates. IFCC's failure to provide evidence invalidates removal; as such, remand is warranted.").

In sum, the California Lawsuit regarding Twitter's PBP has nothing to do with Twitter's right to enforce a Texas resident's compliance with a valid contract expressly governed by Texas law concerning information far beyond bonus payments, and cannot be considered in determining the value of equitable relief preventing Schobinger from improperly using or disclosing Twitter's confidential and sensitive information. Moreover, Schobinger has failed to carry his burden of demonstrating by a preponderance of the evidence that the amount in controversy in *this action* exceeds $75,000. Accordingly, remand is appropriate here.

### C.  Schobinger Made a General Appearance, Consented to the Texas Court's Jurisdiction, and Thereby Waived Service of Process.

Under Rule 120a(1), "[e]very appearance, prior to judgment, not in compliance with [the special appearance] rule is a general appearance." Tex. R. Civ. P. 120a(1). "Even a non-resident defendant is subject to personal jurisdiction in Texas via a general appearance if he does not strictly

6

comply with Rule 120a of the Texas Rules of Civil Procedure for entering a special appearance." *Acadian Properties of Austin, L.L.C v. Blakey*, 2021 WL 2125536, at *3 (Tex. App.—Amarillo 2021, no pet.); *Turner v. Turner*, 1999 WL 33659, at *2 (Tex. App.—Houston, 1999) ("A party must strictly comply with rule 120a to avoid making a general appearance."); *see also* ECF 9 at 9 (". . . courts view unfavorably parties failing to file a special appearance and seeking a continuance."). "A party enters a general appearance and waives a special appearance when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, *or* (3) seeks affirmative action from the court." *Id*. (quotation marks omitted). By making a general appearance, the party consents to the personal jurisdiction of the court, and thereby "dispenses with the need for the issuance and service of citation." *Id*.

Here, Schobinger did just that: Schobinger did not enter a special appearance pursuant to Rule 120a and, at a minimum, Schobinger "recognize[d] by [his] acts that an action is properly pending" when his counsel participated at the TRO Hearing (even if characterized as a "chambers conference")[2] before Judge Larson, failed to assert any objection to jurisdiction, requested a continuance to the following week, affirmatively opposed the TRO, and actively argued to modify the language of the TRO. *See* ECF 9 at 3–4. Accordingly, this appearance constituted a general appearance and Schobinger thereby waived service. *See Vertex Energy Operating, LLC v. Penthol LLC,* 2021 WL 4538484, at *2 (S.D. Tex. Jan. 29, 2021) ("By actively participating in the TRO hearing and convincing the state court to modify the TRO, Defendant recognized through its acts that it was subject to [the] court's authority and that the case was properly pending before that

---

[2] While Schobinger seeks to minimize the importance of the TRO Hearing, it was an official and formal post-COVID Zoom proceeding. Judge Larson appeared wearing his black robe and sitting in front of the State Seal of Texas, next to an American flag. The three lawyers in attendance likewise were dressed in formal business attire as one would for any court hearing. "Chambers conference" or "hearing"—"[a] rose by any other name would smell as sweet."

7

court.  Therefore, Defendant waive[d] service by making a general appearance before the court.") (internal quotations and citations omitted).  Schobinger cannot have it both ways and now assert that he was never properly served for purposes of diversity jurisdiction and removal.

Schobinger fails to cite any applicable authority to the contrary.  The issue in *Perkola v. Koelling & Assocs., Inc.* concerned whether an appearance at a temporary injunction hearing that did not go to the merits of the case constituted waiver of a privilege plea—not a waiver of service.[3] 601 S.W.2d 110 (Tex. App.—Dallas 1980, writ dism'd).  Similarly, in *Turner v. Turner*, the temporary injunction hearing concerned enjoining a party from making distributions from a trust, which the court characterized as "ancillary" to the merits of the "main" lawsuit which sought relief in addition to, and other than, the injunction of disbursements.  1999 WL 33659, at *1–3.  The court held the defendant did not make a general appearance by attending the hearing. *Id*. at *3.

Schobinger asserts that these cases stand for the proposition that appearance at an "ancillary" proceeding cannot constitute a general appearance.  But "[n]either the Texas Supreme Court nor the Fifth Circuit have endorsed Defendant's claim that a party can never make a general appearance at an ancillary proceeding and multiple Texas Courts of Appeals have explicitly rejected it." *Vertex*, 2021 WL 4538484, at *2. Moreover, here, the TRO Hearing went *directly* to the merits of the case because the TRO (and the pending temporary injunction) is precisely the relief—and the only relief—Twitter seeks.  In other words, unlike *Perkola* and *Turner*, there is no "main case" and "ancillary case" here.  The issues discussed at the TRO Hearing and the issues to be determined in the "main" lawsuit are one and the same.  The TRO Hearing simply cannot be

---

[3] Ironically, a plea of privilege (replaced by current Tex. R. Civ. P. 86) asserts a "privilege to be sued in the county of one's residence." *Francis v. Wakefield*, 646 S.W.2d 325, 326 (Tex. App.—Dallas 1983, no writ).  This, of course, is precisely what Twitter did when it instituted this action in Williamson County, Texas, Schobinger's county of residence.

8

characterized as "interlocutory" or "ancillary" to the merits under the present facts.[4]

*Kaufman v. AmeriHealth Laboratory, LLC* provides a more analogous set of circumstances and supports the assertion that Schobinger made a general appearance (thereby waiving service) at the TRO Hearing. 2020 WL 6375336 (Tex. App.—Dallas Oct. 30, 2020, no pet.). The *Kaufman* court considered both the *Perkola* and *Turner* cases and found them inapplicable to similar circumstances as exist here. "The missing piece from each of these cases is the extent of counsel's participation in the hearing and counsel seeking and receiving affirmative relief from the trial court." *Id*. at *5. Specifically, the *Kaufman* court noted that "[Defendant] voluntarily appeared through counsel at the TRO hearing, succeeded in modifying the TRO based on counsel's arguments, and argued he was not a signatory to the consulting agreement thereby challenging [Plaintiff's] breach of contract claim. By stepping outside the role of observer or silent figurehead and participating in the hearing, counsel's actions were inconsistent with the assertion that the trial court lacked jurisdiction over [Defendant]." *Id*. at *4. The *Kaufman* court held that "a categorical rule that appearing in matters 'ancillary and prior to the main suit,' including agreeing to temporary injunctive relief, does not constitute a general appearance that waives a special appearance" is "an overbroad oversimplification." *Id*. at *5 (quotations omitted).[5] The court held that the defendant's conduct during the TRO hearing "amounted to a general appearance," even despite part of the hearing not occurring on the record. *Id*. at *5.

---

[4] *Turner* is further distinguishable for another reason: the *Turner* court made no findings of fact or conclusions of law at the temporary injunction hearing; here, had Schobinger not improperly removed to federal court minutes after the TRO Hearing, Judge Larson would have made at least eight preliminary factual findings and the legal conclusion that "Twitter will suffer probable, imminent, and irreparable harm" as demonstrated by the TRO he was prepared to enter, which included language and limitations affirmatively argued for by Schobinger's counsel. *See* ECF 9-1 at 81–83.

[5] *See also Schoendienst v. Haug*, 399 S.W.3d 313, 321 n.8 (Tex. App.—Austin 2013, no pet.) (describing "a categorical rule that appearing in matters 'ancillary and prior to the main suit,' including agreeing to temporary injunctive relief, does not constitute a general appearance" as "an overbroad oversimplification" and describing *Perkola* and *Turner* as "two cases involving an attorney's mere physical presence at a temporary injunction hearing"—circumstances materially different from the ones present here in which Schobinger's counsel actively participated).

Here, as in *Kaufman*, Schobinger voluntarily appeared through counsel before Judge Larson, argued the entry of the TRO, and even procured a modification of the TRO. In so doing, "counsel not only actively participated in the hearing but also sought and received affirmative relief from the trial court." *Id*. at *4; *see also Mays v. Perkins*, 927 S.W.2d 222, 225 (Tex. App.—Houston [1st Dist.] 1996, no writ); *In re D.M.B.*, 467 S.W.3d 100, 103–04 (Tex. App.—San Antonio 2015, pet. denied). Schobinger's conduct amounted to a general appearance, thereby waiving service. Accordingly, he cannot now argue that he is not a properly served defendant for purposes of diversity jurisdiction and the forum-state defendant rule applies, precluding removal to federal court.

### D.  Conclusion

Twitter respectfully requests that the Court grant its Emergency Motion for Remand and remand this case to the Texas Court and order Schobinger to pay Twitter's costs, expenses, and attorneys' fees associated with this Emergency Motion to Remand. 28 U.S.C. § 1447.

Dated: July 21, 2023

Respectfully submitted,

*/s/ Stefanie R. Moll*
**Stefanie R. Moll**
State Bar No. 24002870
Email: stefanie.moll@morganlewis.com
**T. Cullen Wallace**
State Bar No. 24072412
Email: cullen.wallace@morganlewis.com
**John P. Bramble**
State Bar No. 24101544
Email: john.bramble@morganlewis.com
**Morgan A. McGreevy**
State Bar No. 24125317
Email: morgan.mcgreevy@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX  77002
T:  713.890.5000
F:  713.890.5001

## CERTIFICATE OF SERVICE

I hereby certify that, on July 21, 2023, I served this document on Defendant Mark Schobinger's counsel via CM/ECF.

*/s/ Stefanie R. Moll*
Stefanie R. Moll