IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| X CORP., Successor in Interest to Twitter, Inc., | § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | 1:23-CV-778-RP |
| MARK SCHOBINGER, | | |
| Defendant. | | |

## ORDER

Before the Court is Plaintiff X Corp.'s ("Twitter") Emergency Motion to Remand, (Dkt. 9), along with the parties' responsive briefing. Defendant Mark Schobinger filed a response, (Dkt. 16), and Twitter filed a reply, (Dkt. 18). Also before the Court is Schobinger's Amended Motion to Transfer, (Dkt. 11). After considering the parties' arguments and the relevant law, the Court will grant Twitter's motion to remand and dismiss as moot Schobinger's motion to transfer.

## I. BACKGROUND

Schobinger was employed as head of compensation and benefits at Twitter until his resignation on May 20, 2023. (Orig. Pet., Dkt. 1-1-, at 1). In this role, Schobinger had access to confidential Twitter information, including employee-compensation data. (*Id.*). At the start of his employment, he signed a confidentiality agreement ("the Agreement") with Twitter, agreeing to refrain from using or disclosing confidential information and return all Twitter information upon the company's request or his separation from the company. (*Id.*). Twitter alleges that Schobinger accessed confidential data shortly before his resignation and uploaded those documents to his personal email and Google Drive accounts. (*Id.* at 2).

1

Upon discovering this alleged violation of the Agreement, Twitter contacted Schobinger to arrange for a forensic analysis of his personal devices. (*Id.*). The parties discussed the forensic examination but could not reach an agreement. (*Id.*). Shortly after, on June 20, 2023, Schobinger filed a putative class-action complaint in the Northern District of California ("the California lawsuit"), alleging that Twitter failed to pay bonuses owed under its performance bonus plan to Schobinger and a class of other former employees. (*Id.* at 3). Twitter continued to contact Schobinger and his counsel to arrange for a forensic review of his devices. (*Id.* at 4). Twitter also proposed that Schobinger sign a declaration certifying that he has not used or shared Twitter's confidential information outside his employment with Twitter, which Schobinger rejected. (*Id.*).

After these continued talks proved unsuccessful, Twitter filed its state court petition and application for a temporary restraining order ("TRO") in the 395th Judicial District Court of Williamson County, Texas, on July 6, 2023. (Orig. Pet., Dkt. 1-1). In its petition, Twitter seeks injunctive relief preventing Schobinger from "directly or indirectly possessing, using, or disclosing the [confidential] documents and folders" listed in their suit. Beyond attorney's fees, Twitter's state court petition does not seek monetary relief.

The parties dispute exactly what happened next. On July 7, counsel for Twitter emailed counsel for Schobinger and asked if she would be willing to accept service on behalf of Schobinger, which his counsel agreed to on Monday, July 10. (Mot. Remand, Dkt. 9, at 2). His counsel noted that she was in the process of retaining local counsel in Texas and requested that the state court wait until the following week to hold a TRO hearing, if any. (*Id.* at 3). However, on July 11, the Texas court coordinator asked the parties if they were available that afternoon. (*Id.* at 4). The parties confirmed that representatives from their law firm would be available, and the state court held a conference that afternoon for approximately 25 minutes. (*Id.*). The state court judge indicated that

he was inclined to grant the TRO with slight revisions and began scheduling a hearing on whether to extend the TRO into a temporary injunction ("TI"). Twitter characterizes this as a preliminary hearing on the TRO, while Schobinger argues that it was an informal conference to discuss the case and set a schedule for formal arguments to take place. (Def.'s Resp., Dkt. 16, at 3–5).

At the close of the meeting, the judge indicated that he would grant the TRO once the parties submitted a revised proposed order consistent with their discussion. (*Id.* at 4). However, before the parties sent an updated TRO to be entered, Schobinger's counsel notified the Texas court coordinator via email that Schobinger would be filing a notice of removal and informed the state court that it no longer had jurisdiction over the case. (*Id.*). On July 11, Schobinger filed a notice of removal in this Court. (Dkt. 1). In his notice, Schobinger asserts that he had not yet been served with process in the state court action, and therefore could remove the case under the "snap-removal" rule despite residing in the forum state. (*Id.* at 1 (citing *Texas Brine Co. v. American Arb. Assoc., Inc.*, 955 F.3d 482 (5th Cir. 2020))). In addition, he notes that the parties are citizens of different states and that the amount-in-controversy exceeds $75,000 because the related class action in California involves claims exceeding $5 million. (*Id.*).

On July 14, Twitter filed an emergency motion to remand this action to state court. Twitter relies on two separate arguments: (1) Schobinger is ineligible for "snap removal" because he was served under the Texas Rules of Civil Procedure when his counsel appeared and participated in the state court's TRO conference; and (2) diversity jurisdiction is lacking because the amount-in-controversy does not exceed $75,000. (Mot. Remand, Dkt 9). Schobinger filed a response, contending that the informal conference was not a hearing under Texas law, and that the amount in controversy is sufficient because this action is related to Schobinger's class-action litigation whose claims well exceed $75,000. (Def.'s Resp., Dkt. 16).

3

Also on July 14, Schobinger filed a motion to transfer this case to the Northern District of California. (Mot. Transfer, Dkt. 11). His transfer motion argues that Twitter's request for the return of confidential information in this case is highly related to the California lawsuit because he may use that confidential information as evidence in that case. (*Id.* at 1–2). Therefore, Schobinger argues it would be more efficient to have the California court resolve both cases. (*Id.* at 1–2). Twitter opposes the transfer on the bases that Schobinger's breach of the Agreement took place in Williamson County and that venue is improper as a matter of law in California. (Pl.'s Resp., Dkt. 15).

## II. LEGAL STANDARD

A defendant may remove any civil action from state court to a district court of the United States that has original jurisdiction. 28 U.S.C. § 1441(a). District courts have original jurisdiction over all civil actions that are between citizens of different states and involve an amount in controversy in excess of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

The party seeking removal "bears the burden of establishing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). To determine the amount in controversy, "the plaintiff's claim remains presumptively correct unless the defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount. . . . The defendant must produce evidence that establishes that the actual amount in controversy exceeds $[75],000." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995). Only if the defendant meets its burden must it then "appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)).

The removal statute must "be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278,

281–82 (5th Cir. 2007); *see also Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 84 (5th Cir. 2013) ("Any ambiguities are construed against removal and in favor of remand to state court."). A district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject-matter jurisdiction. 28 U.S.C. § 1447(c).

## III. DISCUSSION

### A. Which Motion to Address First

At the outset, the Court must decide which motion to adjudicate first—Twitter's motion to remand or Schobinger's motion to transfer. "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citation omitted). Although the Court cannot decide a merits issue without first ensuring that it has jurisdiction, "[a] decision to transfer a case is not a decision on the merits." *Hardwick v. Factor*, No. CIV.A. H-10-5249, 2011 WL 1831706, at *2 (S.D. Tex. May 9, 2011). And, "[a]lthough district courts generally determine their own subject-matter jurisdiction before proceeding to a determination on the merits, such a strict sequencing of consideration is not required before a court orders dismissal on non-merits grounds." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018).

Here, because the motion to transfer is not on the merits, the Court has discretion to decide either motion first. However, even as a discretionary matter, the motion to remand takes priority. The Fifth Circuit has cautioned that there is a "general expectation that federal courts address subject-matter jurisdiction at the outset in the 'mine run of cases' and reach other issues first only where the jurisdictional issue is 'difficult to determine' and the other grounds are relatively 'less burdensome.'" *Sangha*, 882 F.3d at 100 (quoting *Sinochem*, 549 U.S. at 436). When deciding which

5

issue to resolve first, courts "should consider the complexity of subject-matter jurisdiction issues raised by the case, as well as concerns of federalism, and of judicial economy and restraint." *Sangha*, 882 F.3d at 100 (cleaned up).

Here, both federalism interests and judicial economy counsel in favor of first deciding remand. If the Court grants the motion to transfer, the motion to remand will remain pending, and must be decided by the California court to determine if subject-matter jurisdiction exists. In this case in particular, the California court would be forced to deal with complex and unfamiliar issues of Texas civil procedure regarding whether Schobinger was validly served. Moreover, just before this case was removed, the Texas state court was in the process of granting a temporary restraining order. Basic values of federalism suggest this Court should promptly determine whether federal jurisdiction exists so that the removal does not unduly delay the state court's issuance of any emergency relief. Finally, the issues of subject-matter jurisdiction are not particularly complex, as they turn principally on established methods of approximating the monetary value of equitable relief. Therefore, the Court will decide the motion to remand first. Finding that it should be granted, the Court will dismiss as moot the motion to transfer.

### B. Motion to Remand

Twitter's motion to remand raises two distinct issues: (1) whether Schobinger was validly served in the state court action, which would disqualify him from snap-removing the case, and (2) whether the amount-in-controversy exceeds $75,000 as required to support diversity jurisdiction. (Mot. Remand, Dkt. 9). Because the Court finds that Schobinger has not proven via a preponderance of the evidence that the amount-in-controversy exceeds $75,000, it does not address whether his counsel's attendance at the TRO conference constituted valid service of process under Texas law.

The amount in controversy is determined based on the claims in the state court petition as they existed at the time of removal. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000). Upon removal, a defendant may meet her burden to prove the amount in controversy in two ways: (1) by demonstrating that it is facially apparent from the petition that the claim likely exceeds $75,000; or (2) by naming facts in controversy establishing that claims exceed $75,000. *Grant v. Chevron Phillips Chem. Co., L.P.*, 309 F.3d 864, 868 (5th Cir. 2002). If the complaint does not allege a specific damages amount, a removing defendant "must prove by a preponderance of the evidence that amount in controversy exceeds the jurisdictional amount." *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638–39 (5th Cir. 2003) (quotation marks and citation omitted). Then a plaintiff may be entitled to remand by showing that the claims do not exceed the jurisdictional threshold to a "legal certainty." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1411 (5th Cir. 1995).

The parties agree that Twitter's original petition filed in state court seeks only injunctive relief (and attorney's fees) and therefore does not specify the amount in controversy. The value of an equitable action is the value of the "true object" of the litigation, or the right protected or the extent of injury prevented. *Garcia v. Koch Oil Co.*, 351 F.3d 636, 640 (5th Cir. 2003); *Hartford Ins. Group v. Lou-Con, Inc.*, 293 F.3d 908, 911 (5th Cir. 2002).

In this case, it is not "facially apparent" that Twitter's state-court claims are worth more than $75,000. *Garcia*, 351 F.3d at 639. Instead, Schobinger must prove via a preponderance of the evidence that the facts of the case are worth more than $75,000. In this case, the value of the requested injunctive relief is difficult to precisely quantify. Schobinger argues that the injunction is worth at least $75,000 because Twitter "seeks an injunction to preclude [Schobinger] from using allegedly confidential information in connection with the federal class action lawsuit [which] exceeds $5 million." (Notice of Removal, Dkt. 1, at 2). In his response brief, Schobinger expands on this

argument, stating that the injury Twitter seeks to prevent is having him use the confidential information in his possession to his advantage. (Def.'s Resp., Dkt. 16, at 10). Because the California lawsuit involves claims for unpaid bonuses worth millions of dollars, Schobinger imputes the value of that lawsuit onto Twitter's request for the return of confidential information.

Twitter disputes this line of argument. First, Twitter notes that "the instant suit does not seek to adjudicate his class claims." (Mot. Remand, Dkt. 9, at 11). The value of this suit, in other words, is not identical to the value of the California suit simply because they are related. Twitter also points out that the value of its injunction cannot be the same as the value of the information as evidence in the related suit, because Twitter agreed to a TRO in Williamson County that explicitly carved out any restraint on Schobinger's use of the information in the California case. (*Id.*). Instead, Twitter argues that the true object of its injunction is to "prevent Schobinger from the improper use or disclosure of Twitter's confidential and sensitive information . . . ." (Pl.'s Reply, Dkt. 18, at 1–2).

Ultimately, the Court agrees with Twitter. The mere fact that the company seeks the return of its confidential information, which may prove relevant to the California lawsuit, does not mean that the value of such an injunction equals the total damages asserted in the class action suit. As the Fifth Circuit has long held, "[T]he amount in controversy . . . is the value of the right to be protected or the extent of the injury to be prevented." *Leininger v. Leininger*, 705 F. 2d 729 (5th Cir. 1983). The harm to be prevented by the injunction is the improper retention of confidential information by an ex-employee and the risk of that information's improper disclosure. (*See* Orig. Pet., Dkt. 1-1, at 4 ("The Threat that Schobinger may disclose Twitter's confidential information is too real and damaging to ignore.")). This is further evidenced by the state court petition itself, which notes that the "lawsuit is not a response to the California lawsuit" and that "Twitter actively sought the return of the highly sensitive and confidential information Schobinger took before he filed the California

8

lawsuit . . . ." (Orig. Pet., Dkt. 1-1, at 3 n.2) (emphasis removed). And it is reasonable to expect that Twitter would seek injunctive relief regarding the return of its confidential information even absent any pending lawsuit involving the information. Or put another way, while Schobinger may have only retained the information because of his lawsuit, the petition reflects that Twitter would seek its return regardless of any suit.

As the Agreement stipulates, it is essentially impossible to quantify the value of confidential information and its return. (Agreement, Dkt. 1-1, at 31). It is likely that the improper disclosure of the confidential information—especially to the public at large—would cause over $75,000 in damages. But it is not clear that Schobinger actually intends to disclose the information beyond limited use in the California lawsuit, nor has he stated any likelihood of doing so (and indeed, public release would appear to risk substantial liability under the Agreement). Rather, the object of Twitter's injunction is to remove the *possibility* of such disclosure. But because this possibility appears slim, it is not clear through a preponderance of the evidence that it is worth more than $75,000.

In particular, the indeterminate value of Twitter's requested injunction weighs against jurisdiction because ambiguity "with respect to the amount in controversy . . . must be resolved against federal jurisdiction and in favor of remanding the case to state court." *TFHSP LLC Series 605 v. Lakeview Loan Servicing, LLC*, 2014 WL 5786949, at *4 (N.D. Tex. Nov. 3, 2014) (citing *Acuna v. Brown & Root Inc.*, 200 F.3d 335 (5th Cir. 2000)); *Govea v. JPMorgan chase Bank, N.A.*, 2010 WL 5140064, at *1 (S.D. Tex. Dec. 10, 2010) ("Doubts about the propriety of removal are to be resolved in favor of remand."); *Berniard v. Dow Chem. Co.*, 481 Fed. Appx. 859, 862–63 (5th Cir. 2010) (same). At most, Schobinger has demonstrated the *possibility* that Twitter will suffer more than $75,000 in harm absent its requested injunction. But he has not shown via a preponderance of the evidence that this amount is *likely* to be incurred without injunctive relief. Because the mere possibility of harm

above $75,000 is insufficient to vest this Court with jurisdiction, the Court will resolve the doubt in favor of Twitter and grant remand.

Schobinger's remaining arguments do not convince the Court otherwise. Schobinger argues that "the proper value of the injunction for purposes of determining the amount in controversy is the value of the claims at issue in the underlying" California lawsuit. (Def.'s Resp., Dkt. 16, at 10). He argues that courts within the Fifth Circuit should look "at the value of an underlying related litigation when determining the amount in controversy." (*Id.* at 9 (citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 255 (5th Cir. 1996); *Leininger*, 705 F.2d at 729)). This argument proceeds from a faulty premise that the California lawsuit is "underlying" this case. But *Webb* and *Leininger* discuss "underlying" lawsuits in a much different context than the instant case. In *Webb*, the plaintiff moved for an injunction restricting the ability to pursue claims in arbitration, and the Fifth Circuit determined that the injunction was worth the value of the claims at issue in arbitration. *Webb*, 89 F.3d at 257. Similarly, in *Leininger*, the plaintiff sought to enjoin enforcement of a declaratory judgment, and the Fifth Circuit held that the amount in controversy was the value of the underlying judgment. *Leininger*, 705 F.2d at 729. Those facts are easily distinguishable from this case. Twitter does not seek equitable relief stopping Schobinger from pursuing his California claim. Nor does Twitter even seek an injunction that stops the use of its confidential information in that suit. Rather, all Twitter seeks is the return of confidential information that might be relevant to the California suit. The pending lawsuit is related to—not underlying—Twitter's claim for equitable relief. Because Twitter's injunction will not affect Schobinger's ability to pursue his California claim (nor vice versa), that lawsuit's value has virtually no effect on the amount-in-controversy here.

Finally, the use of the confidential materials in the California lawsuit does not affect the valuation of Twitter's injunction because it appears to be the sort of information typically exchanged

10

during normal discovery. If the California suit proceeds, Schobinger will presumably be able to seek discovery of Twitter's information on the payments of bonuses. Subject to protective orders, parties regularly exchange precisely this sort of information, and there is no reason to believe that Schobinger will only have access to the confidential information if he personally retains it. Therefore, Schobinger's personal possession of the information involves little value because he will presumably obtain it regardless during discovery.

In sum, the object of the injunction is the return of confidential information to Twitter to protect from improper or inadvertent disclosure. Because Schobinger has not shown facts that demonstrate this injunction is worth more than $75,000, the Court lacks subject-matter jurisdiction. Accordingly, the Court will grant the motion to remand.

### C. Fees for Remand

Finally, the Court addresses Twitter's request for fees related to its motion for remand. Twitter contends that Schobinger's "inappropriate conduct" and "improperly seeking removal in a transparent attempt" to evade the state court TRO warrant the payment fees related to the remand motion. (Mot. Remand, Dkt. 9, at 13). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). The Court does not believe that Schobinger acted in an objectively unreasonable manner. Even though his removal prevented the state court from issuing a TRO, that does not make his action unreasonable—parties are entitled to seek removal when available, even if emergency relief is pending in state court. Nor was Schobinger's removal legally frivolous. The monetary value of Twitter's state court claims is debatable, and while Schobinger has not met his burden of establishing the threshold amount, it was not unreasonable of him to believe the amount to exceed $75,000. While the Court does not address

the service argument, it appears at least reasonable to argue that attendance at an informal emergency conference does not constitute service under Texas Rule of Civil Procedure 120. Because Schobinger had a reasonable basis to remove the case, the Court will decline to award fees to Twitter.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Twitter's motion to remand, (Dkt. 9), is **GRANTED**. Schobinger's motion to transfer, (Dkt. 11), is **DISMISSED AS MOOT**.

**IT IS FINALLY ORDERED** that this action is **REMANDED** to the 395th Judicial District Court of Williamson County, Texas. The Clerk of the Court is directed to **CLOSE** this action.

**SIGNED** on July 25, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE